JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Richard H. Engman
Ross. S. Barr

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox
Ryan T. Routh

Proposed Attorneys for Debtors
 and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11
                                          :
Metaldyne Corporation, et al.,            :    Case No. 09-13412 (___)
                                          :
                     Debtors.             :    (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

### MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM AND FINAL ORDERS AUTHORIZING THEM TO (A) PAY INSTALLMENTS UNDER THE INSURANCE PREMIUM FINANCE AGREEMENTS AND (B) ENTER INTO NEW PREMIUM FINANCE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

TO THE HONORABLE
UNITED STATES BANKRUPTCY JUDGE:

Metaldyne Corporation and 30 of its domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent as follows:

## Background

1. On May 27, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases through the filing of voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Metaldyne Corporation ("Metaldyne") is a wholly-owned subsidiary of Metaldyne Holdings LLC ("Metaldyne Holdings"). On January 11, 2007, in connection with a plan of merger, Asahi Tec Corporation ("Asahi Tec"), a Japanese corporation, acquired the shares of Metaldyne. On the same date, Asahi Tec contributed those shares to Metaldyne Holdings, and Asahi Tec thereby became the indirect parent of Metaldyne and the other Debtors. RHJ International S.A. ("RHJI"), a corporation formed under the laws of Belgium and listed on the Euronext exchange, presently holds approximately 60.1% of the outstanding capital stock of Asahi Tec.

4. Debtor MD Products Corp. ("MD Products") is a New York corporation. Metaldyne is the direct or indirect parent of MD Products, each of the other Debtors and each of the Debtors' nondebtor subsidiaries (collectively, the "Metaldyne Companies"). Metaldyne maintains its corporate headquarters in Plymouth, Michigan. The Debtors own or lease

23 different properties, including 14 domestic manufacturing facilities in six states, and also have manufacturing and business operations in more than 10 foreign countries in North America, Europe, South America and Asia.

5.       The Metaldyne Companies are leading global manufacturers of highly engineered metal components for the global light vehicle market, are market leaders for many of the products they sell and are among the 50 largest auto parts suppliers in North America. The Metaldyne Companies operate through two business units, the Powertrain segment and the Chassis segment. The Powertrain segment manufactures a range of products for engine and transmission applications, including sintered powder metal engine connecting rods and engine bearing caps, aluminum transmission valve bodies, transmission clutch modules, engine balance shaft modules, transmission differential assemblies, engine crankshaft dampers, engine tubular fabricated exhaust manifolds, front engine cover assemblies and transmission end cover assemblies. The Chassis segment manufactures components, modules and systems, including wheel-ends, knuckles and mini-corner assemblies, and utilizes a variety of machining and assembly processes.

6.       The Metaldyne Companies' products are used in cars, vans, sport-utility vehicles, light trucks, heavy trucks and other vehicles and provide content for the majority of the light vehicles manufactured in North America. The majority of the products manufactured by the Metaldyne Companies are sold directly to original equipment manufacturers ("OEMs"), but the Metaldyne Companies also make substantial amounts of sales to the OEMs' Tier I suppliers. The Metaldyne Companies' largest customers are Ford, Chrysler and General Motors (collectively, the "North American OEMs"), which accounted for approximately 43% of the Metaldyne Companies' 2008 direct sales. If "indirect sales" — the sales of parts that are made to

Tier I suppliers that are incorporated into products and assemblies that are then sold to the North American OEMs — were added to the direct sales made to the North American OEMs, these entities ultimately would have accounted for well over 60% of the Metaldyne Companies' 2008 sales.

7.     The Metaldyne Companies went into and emerged from their merger transaction with Asahi Tec as highly-leveraged entities. To ameliorate the effects of such continuing leverage, in early 2008 the Debtors developed and began to implement an internal restructuring that was designed to excise costs, increase revenues and enhance operational efficiencies. Prior to the Petition Date, the Debtors had implemented several phases of that plan, which resulted in cost savings of approximately $60 million per year (in addition to $40 million in annual interest savings obtained through the Tender Offer transaction described below).

8.     Due to the precipitous reduction in production levels by the North American OEMs in 2008 and the tightening of consumer and wholesale financing for the OEMs' vehicles, the Debtors experienced liquidity pressures in the Summer and Fall of 2008. These problems were exacerbated by the constraints placed upon the Debtors by their own debt service obligations. After reaching a series of agreements with Asahi Tec, RHJI and the North American OEMs, among other parties, on October 29, 2008, the Debtors launched a cash tender offer (the "Tender Offer") for the outstanding 11% senior subordinated notes due 2012 and 10% senior notes due 2013 (collectively, the "Notes"). The Tender Offer consideration to be paid by the Debtors was significantly less than the par value of the Notes. The Tender Offer, which was accepted by over 90% of the eligible noteholders, was completed on November 28, 2008 and resulted in the retirement of over $350 million in debt, or approximately 40% of the aggregate long-term debt of the Debtors that was outstanding at the time. Cash for the Tender

Offer was received from Asahi Tec (after Asahi Tec received such cash through an equity investment by RHJI) and from the North American OEMs in exchange for the issuance of $60 million in new notes to the North American OEMs by Metaldyne. In addition, as part of the Tender Offer, the Notes, which had been secured, became unsecured obligations of the Debtors.

9. While the completion of the Tender Offer provided the Debtors with a brief respite from liquidity pressures, the extended holiday shutdowns of the Debtors' North American OEM customers and the continued historic difficulties in the North American automotive industry quickly eroded the Debtors' liquidity in December 2008 and early 2009. As has been widely reported, North American vehicle production has dropped nearly in half, with over 15 million units produced in each year between 2004 and 2007, with approximately 12.6 million units produced in 2008 and only 1.7 million units produced in the first quarter of 2009. Key industry analysts are projecting production of approximately 8 million units for 2009.

10. Reacting to these unprecedented figures, in early 2009, the Metaldyne Companies implemented a new round of internal restructuring initiatives and began exploring options to further refinance and/or de-lever the Metaldyne Companies. Specifically, the Debtors sought additional capital from various sources, including private equity firms, RHJI and the Debtors' senior secured lenders. While various entities explored options for making a capital investment into the Debtors, ultimately none of the entities approached by the Metaldyne Companies were willing to make a direct investment in the companies or enter into a re-financing transaction; however, certain such entities expressed a desire to purchase certain assets or businesses from the Debtors pursuant to a sale under section 363 of the Bankruptcy Code. The Debtors' efforts, thus, were refocused upon negotiating with potential purchasers in

an effort to arrange a sale of the company as a whole or a sale of one or more business units on a going concern basis.

11. The Debtors received interest from various parties in a purchase of certain of the assets of their Chassis segment and interest from other parties in a purchase of the majority of the assets of their Powertrain segment. The Debtors have entered into or are finalizing letters of intent to sell these two groups of assets and are negotiating the terms of asset purchase agreements for the sale of one of these businesses and will commence negotiations for the other business once the indications of interest are resolved. The Debtors anticipate that they shortly will file one or more motions to approve the establishment of an auction process or processes and bid procedures to consummate these sales (collectively, the "Sale Processes").

12. In addition, the Debtors have negotiated the terms of a debtor in possession financing facility that will be provided by Deutsche Bank AG, New York, and funded through economic participations purchased by certain of the Debtors' customers, which facility has the support of the lenders under the Debtors' prepetition asset-backed revolving credit facility. The Debtors expect this postpetition financing facility will provide them with sufficient funding to complete expedited Sales Processes in these cases notwithstanding current industry turmoil and the recent commencement of chapter 11 cases by Chrysler LLC. The Debtors believe that the institution of these chapter 11 cases and the consummation of the Sale Processes for the majority of their operating assets will allow the vast majority of their business operations to continue, thus preserving jobs, maximizing value to stakeholders and preventing additional turmoil in a sector of the economy that can ill afford it at this time.

13. For the fiscal year ended March 29, 2009, the Metaldyne Companies recorded annual revenue of approximately $1.32 billion, of which approximately $782 million

was from sales of the Debtors.  As of March 29, 2009, utilizing book values, the Metaldyne Companies had assets of approximately $977 million and liabilities of approximately $927 million.  As of the Petition Date, the Metaldyne Companies have approximately 4,450 employees, of which approximately 2,500 are employees of the Debtors.

## Jurisdiction

14.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

15.     Pursuant to sections 105(c), 363 and 364 of the Bankruptcy Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors hereby seek entry of an interim order (the "Interim Order") pursuant to Bankruptcy Rule 6003(b), authorizing them to make all postpetition installment payments under Premium Finance Agreements come due in the 20-day period following the Petition Date and such period thereafter until a final hearing on the Motion.  The Debtors also seek the entry of a final order (the "Final Order"):  (a) authorizing them to pay all continuing postpetition installment payments under prepetition insurance premium finance agreements and (b) continue current agreements and enter into new postpetition premium finance agreements, as necessary and appropriate, in the ordinary course of business.

## The Insurance Premium Finance Obligations

16.     In connection with the day-to-day operations of their businesses, the Debtors are either required by law, their prepetition loan agreements or by sound business judgment to maintain various forms of insurance.  To maintain this insurance coverage, the Debtors are often required to prepay the applicable insurance company the full premiums for the

applicable coverage period. With respect to some coverage, paying the full premiums in advance in this manner would impose a significant financial burden on the Debtors.

17.     To avoid such burdens, prior to the Petition Date, the Debtors financed the premiums for certain insurance coverage by entering into a number of agreements permitting them to finance their insurance premiums and thus paid them over time. Specifically, the Debtors entered into: (a) the Commercial Insurance Premium Finance and Security Agreement with AON Premium Finance, LLC ("AON"), dated October 2, 2008 (the "First AON Agreement"), which agreement was subsequently acquired by AFCO Credit Corp. ("AFCO Credit"); (b) the Commercial Insurance Premium Finance and Security Agreement with AON, dated January 14, 2009 (the "Second AON Agreement"), which agreement was subsequently acquired by AFCO Credit; (c) the Commercial Premium Finance Agreement with AFCO Premium Credit LLC ("AFCO"), dated October 8, 2008 (the "First AFCO Agreement"); and (d) the Commercial Premium Finance Agreement with AFCO, dated November 13, 2008 (the "Second AFCO Agreement" and, collectively, with the First AON Agreement, the Second AON Agreement and the First AFCO Agreement, the "Premium Finance Agreements"), respectively. The Premium Finance Agreements permit the Debtors to finance the premiums for various types of insurance including foreign liability, ocean cargo, general liability, property, umbrella, excess liability as well as various forms of professional liability insurance (such as director and officer, fiduciary and crime liability) (collectively, the "Insurance Policies").[1]

18.     Under the Premium Finance Agreements, AON and AFCO (collectively, the "Financiers") agreed to pay the premiums due under the Insurance Policies, and the Debtors

---

[1]     Copies of the Premium Finance Agreements are attached hereto collectively as Exhibit A and incorporated herein by reference.

agreed to repay the amounts financed under the Premium Finance Agreements in installment payments over the term of the Premium Finance Agreements.

19. Specifically, the Debtors executed the First AON Agreement through their insurance agent, AON Risk Services Central, Inc. ("AON Risk Services"), on October 2, 2008. The agreement is effective from that date through and including August 30, 2009 when the final installment payment is to be made thereunder. The First AON Agreement provides for a total cash payment of $675,027.00 to be made to the issuers of the applicable Insurance Policies, of which $617,356.91 was financed by AON. The financed amount is scheduled to be paid by the Debtors to AFCO Credit over 11 months at an APR of 5.470%, with monthly installments of $57,670.09. The term of the Insurance Policies financed by the First AON Agreement are from September 30, 2008 to September 30, 2009.

20. The Debtors executed the Second AON Agreement, through their insurance agent, AON Risk Services, on January 14, 2009. The agreement is effective from that date through and including October 9, 2009 when the final installment payment is to be made thereunder. The Second AON Agreement provides for a total cash payment of $624,832.00 to be made to the issuers of the applicable Insurance Policies, of which $468,624.00 was financed by AON. The financed amount is scheduled to be paid by the Debtors to AFCO Credit over nine months at an APR of 4.581%, with monthly installments of $53,068.33. The terms of the Insurance Policies financed by the Second AON Agreement are from various dates in January 2009 to various dates in January 2010.

21. The Debtors executed the First AFCO Agreement through their insurance agent, Marsh USA Inc. ("Marsh"), on October 8, 2008. The agreement is effective from that date through and including September 1, 2009 when the final installment payment is to be made

thereunder. The First AFCO Agreement provides for a total cash payment of $57,317.00 to be made to the issuers of the applicable Insurance Policies, of which $52,438.07 was financed by AFCO. The financed amount is scheduled to be paid by the Debtors to AFCO over 11 months at an APR of 4.662%, with monthly installments of $4,878.93. The term of the Insurance Policies financed by the First AFCO Agreement are from October 1, 2008 to October 1, 2009.

22.     The Debtors executed the Second AFCO Agreement through their insurance agent, Marsh, on November 13, 2008. The Agreement is effective from that date through and including August 1, 2009, when the final installment payment is to be made thereunder. The Second AFCO Agreement provides for a total cash payment of $612,899.00 to be made to the issuers of the applicable Insurance Policies, of which $387,899.00 was financed by AFCO. The financed amount is scheduled to be paid by the Debtors to AFCO over nine months at an APR of 4.545%, with monthly installments of $43,920.27. The term of the Insurance Policies financed by the Second AFCO Agreement are from November 1, 2008 to November 1, 2009.

23.     The Premium Finance Agreements contain a limited power of attorney granted to the Financiers by the Debtors.[2] Pursuant to this limited power of attorney, if the Debtors default on their payment obligations under the Premium Finance Agreements, the Financiers may cancel the applicable Insurance Policies.[3] Upon such a cancellation, the Financiers are entitled to receive any unearned premiums refunded by the issuers of the Insurance Policies (collectively, the "Insurers") under the cancelled Insurance Policies and to

---

[2]     The limited power of attorney is found in paragraph 3 of each Premium Finance Agreement.

[3]     From and after the Petition Date, the Financiers' ability to utilize this remedy is limited by and subject to the terms of the automatic stay imposed by section 362 of the Bankruptcy Code.

apply the refunds to reduce the Debtors' outstanding obligations under the Premium Finance Agreements.

24.     As of the Petition Date, the Debtors were current on all of their obligations to Financiers.  Payments under all four of the Premium Finance Agreements are anticipated to come due in the first 20 days of the Debtors' chapter 11 cases.

**Request for Authority to Continue to**
**Perform Obligations Under the Premium Finance**
**Agreements and Enter into New Premium Finance Agreements**

25.     By this Motion, the Debtors request an order providing them with authority, pursuant to sections 105(a), 363(b), 363(e) and 364 of the Bankruptcy Code, in their sole discretion, to (a) pay prepetition obligations under the Premium Finance Agreements as such obligations become due in the ordinary course of business, (b) continue the Premium Finance Agreements, enter into new premium finance agreements and renew the Premium Finance Agreements in the ordinary course of business without the need for further approval or authority of the Court and (c) provide adequate protection to the Financiers with respect to their interests in the Insurance Policies.

26.     The Insurance Policies for which premiums are financed under the Premium Finance Agreements provide the Debtors with essential insurance coverage.  Any interruption in such coverage would expose the Debtors to a variety of risks, including (a) the possible incurrence of direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies, (b) the possible incurrence of material costs and other losses that otherwise would have been reimbursed under the Insurance Policies (including attorneys' fees for active litigation that presently are being paid by the insurers), (c) the possible inability to obtain similar types and levels of insurance coverage and (d) the possible incurrence of higher

costs for re-establishing lapsed policies or obtaining new insurance coverage. Moreover, paragraph 7 of the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees for the U.S. Department of Justice, Office of the United States Trustee, Region 2 requires that certain insurance be maintained by a debtor in possession.

27.     If postpetition installment payments under the Premium Finance Agreements are not paid as they come due, the Financiers could seek relief from the automatic stay to terminate the Insurance Policies.[4] If the Financiers succeed in such a request, the Debtors would be forced to seek replacement insurance coverage, which potentially could not be in place in time to prevent a lapse in coverage. Even if the Debtors were able to swiftly procure replacement insurance coverage, it is uncertain whether the Debtors would be able to do so on terms and conditions and with premiums as favorable as those presently in place under the Insurance Policies (particularly in light of the fact that the Debtors are engaged in the Sale Processes, replacement insurance may be in place for only a matter of weeks or months in some instances). Moreover, if the Debtors sought to finance this replacement coverage, it is highly unlikely that, as chapter 11 debtors, they would be able to obtain interest rates (each of which is less than 5.5%) and terms as favorable as those offered under the existing Premium Finance Agreements. To avoid these outcomes, the Debtors desire to continue to perform their obligations under the Premium Finance Agreements.

28.     Moreover, upon cancellation of the Premium Finance Agreements, the Financiers are entitled to collect any unearned premiums or other amounts payable under the Insurance Policies and to apply the refunds to reduce the Debtors' outstanding obligations under

---

[4]     The Financiers may be entitled to adequate protection of their interests in the Insurance Policies pursuant to section 363(e) of the Bankruptcy Code. The Debtors' failure to provide such adequate protection — for example, by paying the ongoing installments due under the Premium Finance Agreements, as requested herein — may constitute cause, under section 362(d) of the Bankruptcy Code, for the Financiers to obtain relief from the Automatic Stay to permit them to cancel the Insurance Policies.

the Premium Finance Agreements. In fact, such amounts have been assigned and serve as security under the Premium Finance Agreements; thus giving the Financiers adequate protection rights under the applicable sections of the Bankruptcy Code.

29.     For these reasons, the Debtors believe that maintaining continued and uninterrupted insurance coverage under the favorable terms and conditions provided by the Insurance Policies clearly is in the best interests of the Debtors, their estates and their creditors. Accordingly, the Debtors seek authority to pay, in their sole discretion, all of the postpetition installment payments under the Premium Finance Agreements as they come due in the ordinary course of their businesses.

30.     Additionally, the Debtors seek authority to renew their existing Premium Finance Agreements or enter into new premium finance agreements on competitive terms and conditions in order to continue their insurance coverage throughout the duration of their chapter 11 cases.[5] The insurance coverages that are presently financed by the Debtors expire at various times between September 2009 and January 2010. While many of the present insurance coverages likely will be unnecessary after the closing of the anticipated Sales Processes, some insurance coverage may need to be maintained. The Debtors respectfully suggest that the renewal or negotiation of other premium finance agreements falls squarely within the ordinary course of their business operations and, but for the constraints of section 364 of the Bankruptcy Code, the Debtors would not need the Court's prior approval to enter into new premium financing agreements. To reduce the administrative burdens on the Debtors, as well as the expenses of operating as debtors in possession, the Debtors seek the Court's authority now to

---

[5]     The Debtors anticipate that the need for certain types of insurance will terminate with the closing of the Sales Processes. The Debtors expect to terminate or reduce various types of their existing insurance coverages at that time.

renew their existing Premium Finance Agreements and to enter into any new premium finance agreements, as necessary, without further Court order.

**Basis for the Relief Requested**

### *Section 363(e) of the Bankruptcy Code Provides a Basis for the Requested Relief*

31.     Section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . ." 11 U.S.C. § 363(e).  Under the terms of the Premium Finance Agreements, the Financiers have an interest in the Insurance Policies.  Where an entity is entitled to adequate protection of its interest, such adequate protection may be provided through "cash payment or periodic cash payments to such entity." 11 U.S.C § 361(1).  Therefore, the Debtors respectfully request the authority to provide the Financiers with adequate protection of their interests by honoring the Debtors' payment and other obligations under the Premium Finance Agreements.

### *The Doctrine of Necessity Provides a Basis for Granting the Requested Relief*

32.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment, that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

33.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also, In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); In re Eagle-Picher Ind., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over a century ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286 (1882). This doctrine is consistent with the paramount goal of Chapter 11: "facilitating the continued operation and rehabilitation of the debtor." In re Ionosphere, 98 B.R. at 176; see also, Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945).

34.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See In re Ionosphere, 98 B.R. at 175-76 (citing In re Lehigh & New England Rwy Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'"). The Debtors submit that the maintenance of insurance is necessary to the continued operation of their businesses, and they believe that payments under the Premium Finance Agreements should be authorized under the doctrine of necessity.

35.     Relief similar to that requested herein has been granted by courts in this and other districts in numerous cases. See In re Quebecor World (USA) Inc., No. 08-10152

(JMP) (Bankr. S.D.N.Y. Feb. 21, 2008); In re Bally Total Fitness of Greater New York, Inc., No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 1, 2007); In re Curative Health Servs., Inc., No. 06-10552 (SMB) (Bankr. S.D.N.Y. Mar. 27, 2006); In re Calpine Corp., No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 25, 2006); In re Delta Air Lines, Inc., No. 05-17923 (ASH) (Bankr. S.D.N.Y. Sept. 15, 2005); In re Atkins Nutritionals, Inc., No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005); In re Tower Auto., Inc., No. 05-10578 (ALG) (Bankr. S.D.N.Y. Feb. 3, 2005); see also, In re PPI Holdings, Inc., No. 08-13289 (KG) (Bankr. D. Del. Dec. 15, 2008) (allowing debtors to continue making payments under insurance premium financing agreements and enter into new insurance agreements as necessary).

***Section 364 of the Bankruptcy Code Provides the Basis for the Postpetition Relief Requested Herein***

36.     Section 364(a) of the Bankruptcy Code authorizes a debtor to incur and pay unsecured debt in the ordinary course of business. Premiums financed by premium finance agreements could be viewed as unsecured debt that a debtor could pay in the ordinary course of business under section 364(a) of the Bankruptcy Code. Alternatively, section 364(b) of the Bankruptcy Code enables the court to authorize a debtor to incur unsecured credit "allowable under section 503(b)(1) of this title as an administrative expense" after notice and a hearing. Out of an abundance of caution, the Debtors request authority to incur postpetition unsecured debt to pay the premiums under any new premium finance on a postpetition basis under postpetition agreements under section 364(b) of the Bankruptcy Code.

**Request for Authority for Banks to Honor and Pay Checks
and Funds Transfers Related to the Premium Finance Agreements**

37.     In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor and pay any and all checks presented for

payment of, and to honor all fund transfer requests made by the Debtors related to the Premium Financing Agreements whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Premium Financing Agreements. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

38.     The Debtors have obtained a commitment for debtor in possession financing from Deutsche Bank AG, New York Branch, in which financing certain of the Debtors' customers will purchase subordinated participations, and the Debtors are seeking Court approval that would permit use of cash collateral and borrowings under such facility. If such relief is granted, the Debtors will have access to funds to, among other things, pay premium finance agreements to the extent described herein that the Debtors, in their sole discretion, determine should be paid.

### Requests for Immediate Relief and Waiver of Stay

39.     Pursuant to Rules 6003(b) and 6004(h) of the Bankruptcy Rules, the Debtors seek (a) immediate entry of an order authorizing them to make all postpetition installment payments under Premium Finance Agreements that were outstanding as of the Petition Date or come due in the 20-day period following the Petition Date (the "Interim Relief") and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the

petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."

40. The Debtors anticipate that payments due under all four of the Premium Finance Agreements will come due and payable in the first 20 days of their chapter 11 cases. As discussed above, if the Debtors are unable to pay obligations under the Premium Finance Agreements, the Debtors could be exposed to a variety of risks, including cancellation of the Insurance Policies and direct liability ordinarily covered by the Insurance Policies. Accordingly, the Debtors submit that ample cause exists to justify: (a) the immediate entry of an interim order annexed hereto as Exhibit B granting the Interim Relief sought herein pursuant to Bankruptcy Rule 6003(b); and (b) a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Notice

41. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to The Bank of New York Mellon and JPMorgan Chase Bank, N.A., as agents for the Debtors' prepetition senior secured credit facility; (c) counsel to Deutsche Bank, A.G., New York, as agent for the Debtors' prepetition asset-backed secured revolving credit facility and as agent and lender under the Debtors' postpetition financing facility; (d) counsel to The Bank of New York Trust Company, N.A., in its capacity as the indenture trustee for the remaining outstanding Notes; (e) counsel to the North American OEMs; (f) counsel to Asahi Tec; (g) counsel to RHJI; and (h) those

creditors holding the 50 largest unsecured claims against the Debtors' estates.  The Debtors

submit that no other or further notice need be provided.

## **No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this

or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (a) enter an interim order substantially in the form annexed hereto as <u>Exhibit B</u>, granting the relief requested herein; (b) enter a final order substantially in the form annexed hereto as <u>Exhibit C</u>, granting the relief requested herein; and (c) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: May 28, 2009
       New York, New York

                              Respectfully submitted,

                              /s/ Ross S. Barr
                              Richard H. Engman
                              Ross S. Barr
                              JONES DAY
                              222 East 41st Street
                              New York, New York  10017
                              Telephone:  (212) 326-3939
                              Facsimile:  (212) 755-7306

                              - and -

                              Heather Lennox
                              Ryan T. Routh
                              JONES DAY
                              North Point
                              901 Lakeside Avenue
                              Cleveland, Ohio  44114
                              Telephone:  (216) 586-3939
                              Facsimile:  (216) 579-0212

                              PROPOSED ATTORNEYS FOR DEBTORS
                              AND DEBTORS IN POSSESSION

CLI-1651340v31

**EXHIBIT A**

# Commercial Premium Finance Agreement

**AFCO PREMIUM CREDIT LLC**

A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

1 South 443 Summit Ave, Suite 304A, Oakbrook Terrace, IL 60181

TEL. NO. 630-953-2833  800-288-8214

| Agent (Name and Address) | 10051435 | Insured (Name and Address as shown on the policy) |
|---|---|---|
| Marsh USA Inc<br>Attn : Jennifer Vizina<br>600 Renaissance Center Suite 2100<br>Detroit, MI 48243<br>313-393-6800 | | Metaldyne Corporation<br>Attn : Kim Guest<br>47659 Halyard Drive<br>Plymouth, MI 48170 |

| A) Total Premiums | B) Down Payment | C) Amount Financed | D) Finance Charge | E) Total Payments |
|---|---|---|---|---|
| $57,317.00 | $4,878.93 | $52,438.07 | $1,230.16 | $53,668.23 |

| F) Annual Percentage Rate | No. of Payments | Amount of Payments | First Installment Due | Installment Due Dates |
|---|---|---|---|---|
| 4.662 % | 11 (Monthly) | $4,878.93 | 11/01/2008 | 1st |

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| US000007072 LI08A | 10/01/2008 | XL INSURANCE AMERICA INC | PRLB | 12 | 25,000.00 |
| N0221751A | 10/01/2008 | INDEMNITY INS CO OF NO AMERICA | MAR | 12 | 32,317.00 |

**(1) DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. "Insurance company" or "company", "insurance policy" or "policy" and "premium" refer to those items listed under the "Schedule of Policies". Singular words mean plural and vice-versa as may be required in order to give the agreement meaning. For New York insureds, services for which any charge pursuant to Insurance Law, Section 2119, is imposed, are in connection with obtaining and servicing the policies listed herein. **NOTICE: 1.** Do not sign this agreement before you read it or if it contains any blank space. **2.** You are entitled to a completely filled in copy of this agreement. **3.** Under the law you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge.

**INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**

| Mark Brkljacic | X _____ | Ass. Treasurer | 10/8/08 |
|---|---|---|---|
| INSURED'S NAME | SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

## AGENT OR BROKER REPRESENTATIONS

The undersigned warrants and agrees: 1. The policies are in full force and effect and the information in the Schedule of Policies and the premiums are correct. 2. The insured has authorized this transaction and recognizes the security interest assigned herein and has received a copy of this agreement. 3. To hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the insured. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to AFCO's lien or security interest therein. 4. The policies comply with AFCO's eligibility requirements. 5. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. The policies can be cancelled by the insured and the unearned premiums will be computed on the standard short-rate or pro-rata table. 7. The undersigned represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured.

**IF THERE ARE ANY EXCEPTIONS TO THE ABOVE STATEMENTS PLEASE LIST BELOW:**

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

| AGENT OR BROKER | X | | |
|---|---|---|---|
| ZZJV (10/00-win) c. 2000 Afco Premium Credit LLC | SIGNATURE OF AGENT OR BROKER<br>QIV# 100000193007.001 | TITLE | DATE |

**(2) ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.

**(3) LIMITED POWER OF ATTORNEY:** The insured irrevocably appoints AFCO as its attorney in fact with full authority to cancel the insurance policies for the reasons stated in paragraph (15), and to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. The insured may execute and deliver on the insured's behalf all documents, instruments of payment, forms, and notices of any kind relating to the insurance policies in furtherance of this agreement.

**(4) PROMISE OF PAYMENT:** The insured requests that AFCO pay the premiums in the Schedule of Policies. The insured promises to pay to AFCO the amount stated in Block E above according to the payment schedule, subject to the remaining terms of this agreement.

**(5) SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this agreement any and all unearned premiums and dividends which may become payable under the insurance policies for whatever reason and loss payments which reduce the unearned premiums subject to any mortgagee or loss payee interests. The insured gives to AFCO a security interest in all items mentioned in this paragraph. The insured further grants to AFCO its interest which may arise under any state insurance guarantee fund relating to any policy shown in the Schedule of Policies.

**(6) WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the Schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The insured authorizes AFCO to insert or correct on this agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment. AFCO is permitted to correct any obvious errors. In the event of any change or insertion, AFCO will give the insured written notice of those changes or corrections made in accordance with this provision.

**(7) REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.

**(8) ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**(9) SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or is subject to retrospective rating, then the insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**(10) NAMED INSURED:** If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds with respect to any actions relating to the policy, then the same shall apply to this agreement. If such is not the case, then all insureds' names must be shown on this agreement unless a separate agreement specifies one insured to act in all matters for the others.

**(11) FINANCE CHARGE:** The finance charge shown in Block D begins to accrue as of the earliest policy effective date unless otherwise indicated in the Schedule of Policies.

**(12) AGREEMENT BECOMES A CONTRACT:** This agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**(13) DEFAULT CHARGES:** If the insured is late in making an installment payment to AFCO by more than the number of days specified by law the insured will pay to AFCO a delinquency charge not to exceed the maximum charge permitted by law.

**(14) DISHONORED CHECK:** If an insured's check is dishonored for any reason and if permitted by law, the insured will pay to AFCO a fee for expenses in processing that check not to exceed the amount permitted by law.

**(15) CANCELLATION:** AFCO may cancel the insurance policies after giving any required statutory notice and the unpaid balance due to AFCO shall be immediately payable by the insured if the insured does not pay any installment according to the terms of this agreement. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. If cancellation occurs, the borrower agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as required by law.

**(16) CANCELLATION CHARGES:** If AFCO cancels any insurance policy in accordance with the terms of this agreement, then the insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.

**(17) MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's notice of cancellation of the insurance policy has been mailed may be credited to the insured's account without affecting the acceleration of this agreement and without any liability or obligation on AFCO's part to request reinstatement of a cancelled insurance policy. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to whomever is entitled to the money. No refund of less than $1.00 shall be made. In the event that AFCO does request, on the insured's behalf, a reinstatement of the policy, such request does not guarantee that coverage under the policy will be reinstated or continued.

**(18) ATTORNEY FEES - COLLECTION EXPENSE:** If, for collection, this agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay reasonable attorney fees and costs including those in the course of appeal as well as other expenses, as permitted by law or granted by the court.

**(19) REFUND CREDITS:** The insured will receive a refund credit of the finance charge if the account is voluntarily prepaid in full prior to the last installment due date as required or permitted by law. Any minimum or fully earned fees will be deducted as permitted by law.

**(20) INSURANCE AGENT OR BROKER:** The insurance agent or broker named in this agreement is the insured's agent, not AFCO's, and AFCO is not legally bound by anything the agent or broker represents to the insured orally or in writing.

**(21) NOT A CONDITION OF OBTAINING INSURANCE:** This agreement is not required as a condition of the insured obtaining insurance coverage.

**(22) SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured will not assign the policies without AFCO's written consent except for the interest of mortgagees and loss payees.

**(23) LIMITATION OF LIABILITY:** The insured agrees that AFCO's liability for breach of any of the terms of this agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding except in the event of gross negligence or willful misconduct.

**(24) ENTIRE DOCUMENT - GOVERNING LAW:** This document is the entire agreement between AFCO and the insured and can only be changed in writing and signed by both parties except as stated in paragraph (6). The laws of the state indicated in the insured's address as set forth in the Schedule will govern this agreement unless stated in that Schedule.

ZZJV (10/00-win) c. 2000 Afco Premium Credit LLC

INSURED'S INITIALS

**AFCO** 4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901

| REFER TO THIS ACCOUNT NO. |
| IN ALL CORRESPONDENCE |
| 30-10-103313-2 |

## NOTICE OF ACCEPTANCE

| TOTAL PREMIUMS | DOWN PAYMENT | AMOUNT FINANCED | **FINANCE CHARGE** | TOTAL OF PAYMENTS | **ANNUAL PERCENTAGE RATE** |
|---|---|---|---|---|---|
| 612,899.00 | 225,000.00 | 387,899.00 | 7,383.43 | 395,282.43 | 4.545 % |

| INSURED (NAME AND ADDRESS) | AGENT OR BROKER SUBMITTING AGREEMENT (NAME AND ADDRESS) | |
|---|---|---|
| Metaldyne Corporation<br>ATTN : Kim Guest<br>47603 Halyard Drive<br>Plymouth, MI 48170<br>US | Marsh USA Inc<br>ATTN : Jennifer Vizina<br>600 Renaissance Center Suite 2100<br>Detroit, MI 48243<br>US | |
| | AMOUNT OF INSTALLMENT<br>43,920.27 | |

| DATE OF NOTICE & ACCEPT | | FINAL PAYMENT DUE<br>MO. 09  YR. 09 | DAY DUE<br>1 | NO. & FREQ. OF INSTS.<br>9 (MTH) |
|---|---|---|---|---|
| 11/26/2008 | | | | |

### SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | FULL NAME OF INSURER AND GENERAL AGENT(S) * OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE<br>FIRE, AUTO MAR., I.M., CAS | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| 26465014 | 11/01/2008 | NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH PA | PROP | 12 | 179,851.00 |
| MJ2L9L447467018 | 11/01/2008 | LIBERTY MUTUAL FIRE INS CO | PROP | 12 | 77,079.00 |
| PPR3480080-08 | 11/01/2008 | Zurich American Ins Co | PROP | 12 | 254,469.00 |
| | | Engineering Fee | FEE | NRef | 101,500.00 |

**TO THE INSURED:  YOUR PREMIUM FINANCE AGREEMENT HAS BEEN ACQUIRED BY AFCO CREDIT CORP.**

We are pleased to notify you that we have accepted your premium finance agreement subject to verification by the insurance companies. We have credited the down payment to your account.

[ ] If this is a regular monthly payment plan, your coupons are enclosed.

[x] If your payment is other than monthly or on a special monthly advance billing, we will remind you of your installment payments.

**We urge you to read your premium finance agreement so that you are aware of your rights and duties under that agreement as well as possible penalties that might be assessed against you in the event that the terms of the agreement are not complied with.**

PLEASE SEND THE PROPER NOTICE AND WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK OR MONEY ORDER TO INSURE PROMPT CREDITING OF THE PAYMENT TO YOUR ACCOUNT.

If you have any questions, please contact our processing center for assistance

4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901

**PLEASE NOTE:**    IF THE PREMIUMS BEING FINANCED ARE FOR THE PURCHASE OF INSURANCE PERSONAL, FAMILY OR HOUSEHOLD PURPOSES (NOT BUSINESS) YOUR INSURANCE AGENT SHOULD HAVE GIVEN YOU A NOTICE TITLED " REQUIRED FEDERAL TRUTH-IN-LENDING DISCLOSURES FOR PERSONAL LINES INSURANCE ". IF YOU DID NOT RECEIVE THIS NOTICE, PLEASE CONTACT AFCO AT ONCE SO THAT WE CAN GIVE YOU THE REQUIRED NOTICE.

AFCO Credit Corporation
08 BBjv(9/04) c. 2004

**AVOID JEOPARDIZING YOUR INSURANCE PROTECTION BY MAILING  ALL PAYMENTS IN TIME TO REACH AFCO ON OR BEFORE THE DUE DATE OF YOUR INSTALLMENTS.**

# Commercial Premium Finance Agreement
## AFCO PREMIUM CREDIT LLC
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

1 South 443 Summit Ave, Suite 304A, Oakbrook Terrace, IL 60181

TEL. NO. 630-953-2833  800-288-8214

| Agent (Name and Address)          10051435 | Insured (Name and Address as shown on the policy) |
|---|---|
| Marsh USA Inc<br>Attn : Pam Targosz<br>600 Renaissance Center Suite 2100<br>Detroit, MI 48243<br>313-393-6800 | Metaldyne Corporation<br>Attn : Kim Guest<br>47603 Halyard Drive<br>Plymouth, MI 48170 |

| A) Total Premiums | B) Down Payment | C) Amount Financed | D) Finance Charge | E) Total Payments |
|---|---|---|---|---|
| $612,899.00 | $225,000.00 | $387,899.00 | $7,383.43 | $395,282.43 |

| F) Annual Percentage Rate | No. of Payments | Amount of Payments | First Installment Due | Installment Due Dates |
|---|---|---|---|---|
| 4.545 % | 9 (Monthly) | $43,920.27 | 12/01/2008 | 1st |

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| PPR3480080-08 | 11/01/2008 | Zurich American Ins Co | PROP | 12 | 254,469.00 |
|  |  | Engineering Fee | FEE | NRef | 101,500.00 |
| 26465014 | 11/01/2008 | NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH PA | PROP | 12 | 179,851.00 |
| MJ2L9L44746 7018 | 11/01/2008 | LIBERTY MUTUAL FIRE INS CO | PROP | 12 | 77,079.00 |

**(1) DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. "Insurance company" or "company", "insurance policy" or "policy" and "premium" refer to those items listed under the "Schedule of Policies". Singular words mean plural and vice-versa as may be required in order to give the agreement meaning. For New York insureds, services for which any charge pursuant to Insurance Law, Section 2119, is imposed, are in connection with obtaining and servicing the policies listed herein.
**NOTICE: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this agreement. 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge.**

**INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**

Metaldyne                    X _____ Asst Treasurer  11/13/08
INSURED'S NAME          SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE    TITLE          DATE

## AGENT OR BROKER REPRESENTATIONS

The undersigned warrants and agrees: 1. The policies are in full force and effect and the information in the Schedule of Policies and the premiums are correct. 2. The insured has authorized this transaction and recognizes the security interest assigned herein and has received a copy of this agreement. 3. To hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the insured. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to AFCO's lien or security interest therein. 4. The policies comply with AFCO's eligibility requirements. 5. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. The policies can be cancelled by the insured and the unearned premiums will be computed on the standard short-rate or pro-rata table. 7. The undersigned represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured.
**IF THERE ARE ANY EXCEPTIONS TO THE ABOVE STATEMENTS PLEASE LIST BELOW:**

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

X
_____          _____          _____    _____
AGENT OR BROKER          SIGNATURE OF AGENT OR BROKER          TITLE          DATE
ZZJV (10/00-win) c. 2000 Afco Premium Credit LLC          QIV# 10000198149.001

**(2) ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.
**(3) LIMITED POWER OF ATTORNEY:** The insured irrevocably appoints AFCO as its attorney in fact with full authority to cancel the insurance policies for the reasons stated in paragraph (15), and to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. AFCO may execute and deliver on the insured's behalf all documents, instruments of payment, forms, and notices of any kind relating to the insurance policies in furtherance of this agreement.
**(4) PROMISE OF PAYMENT:** The insured requests that AFCO pay the premiums in the Schedule of Policies. The insured promises to pay to AFCO the amount stated in Block E above according to the payment schedule, subject to the remaining terms of this agreement.
**(5) SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this agreement any and all unearned premiums and dividends which may become payable under the insurance policies for whatever reason and loss payments which reduce the unearned premiums subject to any mortgagee or loss payee interests. The insured gives to AFCO a security interest in all items mentioned in this paragraph. The insured further grants to AFCO its interest which may arise under any state insurance guarantee fund relating to any policy shown in the Schedule of Policies.
**(6) WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the Schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The insured authorizes AFCO to insert or correct on this agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment. AFCO is permitted to correct any obvious errors. In the event of any change or insertion, AFCO will give the insured written notice of those changes or corrections made in accordance with this provision.
**(7) REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.
**(8) ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.
**(9) SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or is subject to retrospective rating, then the insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.
**(10) NAMED INSURED:** If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds with respect to any actions relating to the policy, then the same shall apply to this agreement. If such is not the case, then all insureds' names must be shown on this agreement unless a separate agreement specifies one insured to act in all matters for the others.
**(11) FINANCE CHARGE:** The finance charge shown in Block D begins to accrue as of the earliest policy effective date unless otherwise indicated in the Schedule of Policies.
**(12) AGREEMENT BECOMES A CONTRACT:** This agreement becomes a binding contract when AFCO mails a written acceptance to the insured.
**(13) DEFAULT CHARGES:** If the insured is late in making an installment payment to AFCO by more than the number of days specified by law the insured will pay to AFCO a delinquency charge not to exceed the maximum charge permitted by law.
**(14) DISHONORED CHECK:** If an insured's check is dishonored for any reason and if permitted by law, the insured will pay to AFCO a fee for expenses in processing that check not to exceed the amount permitted by law.
**(15) CANCELLATION:** AFCO may cancel the insurance policies after giving any required statutory notice and the unpaid balance due to AFCO shall be immediately payable by the insured if the insured does not pay any installment according to the terms of this agreement. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. If cancellation occurs, the borrower agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as required by law.
**(16) CANCELLATION CHARGES:** If AFCO cancels any insurance policy in accordance with the terms of this agreement, then the insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.
**(17) MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's notice of cancellation of the insurance policy has been mailed be credited to the insured's account without affecting the acceleration of this agreement and without any liability or obligation on AFCO's part to request reinstatement of a cancelled insurance policy. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to whomever is entitled to the money. No refund of less than $1.00 shall be made. In the event that AFCO does request, on the insured's behalf, a reinstatement of the policy, such request does not guarantee that coverage under the policy will be reinstated or continued.
**(18) ATTORNEY FEES - COLLECTION EXPENSE:** If, for collection, this agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay reasonable attorney fees and costs including those in the course of appeal as well as other expenses, as permitted by law or granted by the court.
**(19) REFUND CREDITS:** The insured will receive a refund credit of the finance charge if the account is voluntarily prepaid in full prior to the last installment due date as required or permitted by law. Any minimum or fully earned fees will be deducted as permitted by law.
**(20) INSURANCE AGENT OR BROKER:** The insurance agent or broker named in this agreement is the insured's agent, not AFCO's, and AFCO is not legally bound by anything the agent or broker represents to the insured orally or in writing.
**(21) NOT A CONDITION OF OBTAINING INSURANCE:** This agreement is not required as a condition of the insured obtaining insurance coverage.
**(22) SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured will not assign the policies without AFCO's written consent except for the interest of mortgagees and loss payees.
**(23) LIMITATION OF LIABILITY:** The insured agrees that AFCO's liability for breach of any of the terms of this agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding except in the event of gross negligence or willful misconduct.
**(24) ENTIRE DOCUMENT - GOVERNING LAW:** This document is the entire agreement between AFCO and the insured and can only be changed in writing and signed by both parties except as stated in paragraph (6). The laws of the state indicated in the insured's address as set forth in the Schedule will govern this agreement unless stated in that Schedule.

INSURED'S INITIALS



| | REFER TO THIS ACCOUNT NO. IN ALL CORRESPONDENCE |
|---|---|
| | 30-10-103303-5 |

## NOTICE OF ACCEPTANCE

| TOTAL PREMIUMS | DOWN PAYMENT | AMOUNT FINANCED | FINANCE CHARGE | TOTAL OF PAYMENTS | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|
| 675,027.00 | 57,670.09 | 617,356.91 | 17,014.08 | 634,370.99 | 5.470 % |

| INSURED (NAME AND ADDRESS) | AGENT OR BROKER SUBMITTING AGREEMENT (NAME AND ADDRESS) | |
|---|---|---|
| Metaldyne Corporation<br>ATTN : Kim Guest<br>47603 Halyard Drive<br>Plymouth, MI 48170<br>US | Aon Risk Services Central, Inc.<br>3000 Town Center Suite 3000<br>Southfield, MI 48075<br>US | AMOUNT OF INSTALLMENT<br><br>57,670.09 |

| DATE OF NOTICE & ACCEPT | | FINAL PAYMENT DUE | | DAY DUE | NO. & FREQ. OF INSTS. |
|---|---|---|---|---|---|
| 10/17/2008 | | MO. 08 YR. 09 | | 30 | 11 (MTH) |

### SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | FULL NAME OF INSURER AND GENERAL AGENT(S) * OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR., I.M., CAR | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| 9835253 | 09/30/2008 | NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH PA | UMB | 12 | 375,000.00 |
| AEC6652227-16 | 09/30/2008 | AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY | XSLB | 12 | 56,055.00 |
| DOG23745550 | 09/30/2008 | ACE AMERICAN INSURANCE CO | GL | 12 | 35,137.00 |
| HDOG2374559 | 09/30/2008 | ACE AMERICAN INSURANCE CO | PROD | 12 | 91,670.00 |
| Q1B7120438804 | 09/30/2008 | LIBERTY INS CO OF AMERICA | XSLB | 12 | 45,063.00 |
| | 09/30/2008 | ACE AMERICAN INSURANCE CO | XSLB | 12 | 72,102.00 |
| | | Policy Details Continued... | | | |

**TO THE INSURED: YOUR PREMIUM FINANCE AGREEMENT HAS BEEN ACQUIRED BY AFCO CREDIT CORP.**

We are pleased to notify you that we have accepted your premium finance agreement subject to verification by the insurance companies. We have credited the down payment to your account.

[ ] If this is a regular monthly payment plan, your coupons are enclosed.

[X] If your payment is other than monthly or on a special monthly advance billing, we will remind you of your installment payments.

**We urge you to read your premium finance agreement so that you are aware of your rights and duties under that agreement as well as possible penalties that might be assessed against you in the event that the terms of the agreement are not complied with.**

PLEASE SEND THE PROPER NOTICE AND WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK OR MONEY ORDER TO INSURE PROMPT CREDITING OF THE PAYMENT TO YOUR ACCOUNT.

If you have any questions, please contact our processing center for assistance

4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901

**PLEASE NOTE:** IF THE PREMIUMS BEING FINANCED ARE FOR THE PURCHASE OF INSURANCE PERSONAL, FAMILY OR HOUSEHOLD PURPOSES (NOT BUSINESS) YOUR INSURANCE AGENT SHOULD HAVE GIVEN YOU A NOTICE TITLED " REQUIRED FEDERAL TRUTH-IN-LENDING DISCLOSURES FOR PERSONAL LINES INSURANCE ". IF YOU DID NOT RECEIVE THIS NOTICE, PLEASE CONTACT AFCO AT ONCE SO THAT WE CAN GIVE YOU THE REQUIRED NOTICE.

AFCO Credit Corporation
08 BBjv(9/04) c. 2004

**AVOID JEOPARDIZING YOUR INSURANCE PROTECTION BY MAILING ALL PAYMENTS IN TIME TO REACH AFCO ON OR BEFORE THE DUE DATE OF YOUR INSTALLMENTS.**

# AON PRE...JM FINANCE, LLC
## 200 E. RANDOLPH STREET, CHICAGO, IL 60601 (312)381-4628
### COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT

| Contract Number | To Be Assigned |
|---|---|

| NC LIC. | SC LIC. | 167019 | | Agent Number | 10051431 | Quote Number | 100000191594 |
|---|---|---|---|---|---|---|---|

**Name and address of Insured(s) (as shown in the policy) and co-obligor if any**
Metaldyne Corporation
Attn : Kim Guest
47603 Halyard Drive
Plymouth, MI 48170

Telephone Number:

**Name and Address of Insured's Agent ("Agent")**
Aon Risk Services Central, Inc.
3000 Town Center Suite 3000
Southfield, MI 48075

Telephone Number:  248-936-5519

**Policyholder Designation (Check One):**
N/A
( ) Partnership
( ) Proprietorship
( ) Corporation

**Type of Agreement (Check One):**
( X ) New
( ) Additional Premium

Indicate contract number of current policy being financed: N/A

## SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSURANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|
| | DOG23745550 | ACE AMERICAN INSURANCE CO | GL | 12 | 09/30/2008 | 35,137.00 |
| | HDOG2374559 | ACE AMERICAN INSURANCE CO | PROD | 12 | 09/30/2008 | 91,670.00 |

Policy Detail Continued...

| NY: Charge under §2119 of New York Insurance Law for obtaining and servicing these policies.If none, state "None". $   None | FLORIDA DOCUMENTARY STAMP TAX | $ |
|---|---|---|

## APF

### DISCLOSURE STATEMENT - PAYMENT SCHEDULE

Payment Plan:  (X) Monthly  ( ) Quarterly  ( ) Annually

| CASH PRICE (Total Premiums) | 675,027.00 |
|---|---|

Number of Payments  11   First Payment Due   On the 30 of each month,Beginning October 30, 2008

Subsequent payments are due on the same day of each succeeding period.

| CASH PRICE | ⊖ | CASH DOWN PAYMENT | ⊖ | AMOUNT FINANCED The amount of credit provided on your behalf. | ⊕ | FINANCE CHARGE The dollar amount the credit will cost you. | ⊖ | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | AMOUNT OF EACH PAYMENT | ANNUAL PERCENTAGE RATE The cost of your credit as yearly rate. |
|---|---|---|---|---|---|---|---|---|---|---|
| 675,027.00 | | 57,670.09 | | 617,356.91 | | 17,014.08 | | 634,370.99 | 57,670.09 | 5.470% |

**AON PREMIUM FINANCE, LLC (HEREIN AFTER CALLED APF)**
**200 E. Randolph Street, Chicago, IL 60601 (312)381-4628**

**Prepayment:** The Insured may prepay in full at any time and receive a refund of the unearned finance charge, calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, MA, MO, NJ, OR, PA, VT; short rate method in SC), and subject to a nonrefundable charge stated on page two. Minimum refund is $1.00 (except AK, where there is no minimum refund).

**Security Interest:** The Insured assigns to APF as security for payment of this agreement all sums payable to the Insured with reference to the policies listed above, including, among other things, any gross return premiums and any payment on account of loss which results in reduction of unearned premium in accordance with the term of said policies.

**Delinquency charge:** The Insured agrees that upon default in payment of any installment five days or more ( more than 5 days in IL, MS, OH ) to pay a

Delinquency Charge of 5% of the delinquent installment. In AK, CA, DE, MI, MN,ND, NJ, OR, TN, TX, the Delinquency Charge is not due until installment is in default for ten days or more, more than 10 days in MA, NM 7 days in VA. Maximum delinquency charge is $5 in DE, MT, ND; $100 in MD; $500 in NM; 1 1/2% of the installment in NJ with a minimum of $25. In AK, OR: for delinquent payments of less than $250, the delinquency charge is the lesser of 5% of the payment or $5, otherwise the delinquency charge is 2% of the payment. KS: Delinquency charge is $5 plus 2% of the installment in default.

**Cancellation Charge:** The Insured agrees that if a default results in cancellation of the policy(ies) to pay a Cancellation Charge in the amount stated on page two.(Not applicable in AK, KY,TX, NC.)

See the provisions on page two for additional information about nonpayment,default, and any repayment in full before the scheduled date and any prepayment refunds or penalties.

**NOTICE TO INSURED:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, INCLUDING THE WRITING ON PAGE TWO, OR IF IT CONTAINS ANY BLANKS. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE PAGE TWO FOR IMPORTANT INFORMATION.

When used in this Agreement, "Insured" means the Insured and any co-obligor named above and all insureds covered by the Policies listed in the Schedule of Policies. Each Insured jointly and severally agrees to make all payments required by this Agreement and to be bound by all of its provisions including those on page two. The person signing represents and warrants that he or she is authorized to enter into this Agreement on behalf of each Insured and to bind each Insured to this Agreement. Each Insured agrees that APF may send all notices under this Agreement as a condition to the purchase of any insurance policy.

By _____   Date  10 2 2008
(Signature of Insured)
Mark Birkholic   Assistant Treasurer
(Typed Name and Title)

**AGENT'S REPRESENTATIONS AND WARRANTIES**
The undersigned Agent has read the Insurance Agent's Representations and Warranties on page two and makes all such representations and warranties recited therein and agrees to be bound by the terms of this Agreement.

By _____   Date _____
(Signature of Agent)

_____
(Typed Name and Title)

## AON PREMIUM FINANCE, LLC
### 200 E. RANDOLPH STREET, CHICAGO, IL 60601 (312)381-4628
### COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix    Number | SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | Agent Number 10051431 TYPE OF INSURANCE | Quote Number100000191594 TERM IN MONTHS | POLICY EFFECTIVE DATE Mo.  Day  Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|
|  | 9835253 | NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH PA | UMB | 12 | 09/30/2008 | 375,000.00 |
|  |  | ACE AMERICAN INSURANCE CO | XSLB | 12* | 09/30/2008 | 72,102.00 |
|  | AEC6652227-16 | AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY | XSLB | 12 | 09/30/2008 | 56,055.00 |
|  | Q1B7120438804 | LIBERTY INS CO OF AMERICA | XSLB | 12 | 09/30/2008 | 45,063.00 |

**The Insured (jointly and severally if more than one) agrees as follows:**

1. In consideration of the payment by APF of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance company(ies) listed in the Schedule of Policies, and to pay APF the Total of Payments in accordance with the terms of this Agreement. Interest is computed on an annual basis of 12 months of 30 days each.

2. Insured assigns to APF as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies, including, among other things, any gross unearned premiums and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies.

3. Insured hereby irrevocably appoints APF as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to APF authority to effect cancellation of policy(ies) listed in the Schedule of Policies ("Policies"), and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued therein in Insured's name and to direct the insurance companies to make said check or draft payable to APF. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

4. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate APF to request reinstatement of such insurance Policy(ies), and Insured acknowledges that APF has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

5. Insured agrees not to assign the Policy(ies) except for the interest of mortgagees or loss payees, without the written consent of APF. APF may assign this Agreement without Insured's consent, and all rights conferred upon APF shall inure to APF's successors and assigns.

6. Except in KS, KY and VT, Insured agrees to pay a fee of $15.00 in the event of a dishonored check. ( $5.00 in CA; $10 in AZ, MA, MD, OH, VI; $7.50 in NV, not to exceed APF's cost in NJ).

7. An Event of Default occurs when the Insured does not pay any installment according to the terms of this Agreement (or (except in MD) fails to comply with any of the terms of the Agreement or (except in MD) if any of the Policies are cancelled for any reason. If an Event of Default occurs and after giving notice as required by law, all amounts due under this Agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums. If an Event of Default occurs, APF may at its option pursue the following remedies:

- After proper notice has been given as required by law, APF may immediately cancel the Policy(ies) and collect any unearned premiums or (except in KY) other amounts payable under said Policies. Unearned premiums shall be payable to APF only.

- APF may take all necessary actions to enforce payment of this debt. To the extent not prohibited or limited by applicable law, APF is entitled to collection costs and expenses incurred (except in KS) while enforcing its rights under this Agreement and to reasonable attorney's fees if this Agreement is referred to an attorney who is not a salaried employee of APF for collection or enforcement (not permitted in KY, NC ; total of collection costs and attorney's fees is limited to 20% of the unpaid balance in AZ, FL, MO, MS, NH, NV ,NY, VI; 15% of unpaid balance in TN; 25% of unpaid balance in VT).

- Except in AK, KY, NI, NC, VT and the other states listed herein, after cancellation, Insured agrees to pay interest on the unpaid balance (calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, NJ, OR, PA; short rate method in SC) as of the scheduled due date of the first delinquent payment leading to cancellation of the Policies) at the rate of 1% per month (in AR, NM, TX, at the Annual Percentage Rate stated on the front), or at the highest rate permitted by law, whichever is less, until the entire balance of this loan is paid in full. In MA, Insured agrees to pay interest at the rate of 1% per month on the difference between the unpaid balance on the date of cancellation (computed according to the actuarial method) and the unearned premiums received by APF on the cancelled Policies, for the period from the date of cancellation until the balance is paid in full.

- In ALL, DC, DE, IL, KS, NY and WA, after cancellation, Insured agrees that APF may recompute the total finance charge due under this Agreement on the original amount financed, at the rate and in the manner described in this paragraph from the first effective date of the Policies through the last originally scheduled installment date, and Insured agrees to pay this amount, subject to the provisions on prepayment in full. That rate, stated as a dollar amount per year for each $100 of amount financed is as follows: $9 in AL, DE; $10 in DC, IL, WA; $12 in KS; $14 in NY.

- APF may offset and deduct from any amounts APF owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to APF under this or (except in KY, MD, NC and TX) any other agreement.

8. Insured agrees to pay a non-refundable service fee of $10 in AK, AZ, CT, DE, KS, LA, MO, NY, PA, WA, WI; $12 in NJ; $12.50 in MT; $15 in AL, KY, NC, RI, SC, TN, VA; $16 in MA; $18 in MI; $20 in DC, FL, GA, MD, MN, OH; $25 in CO, HI, IA, ID, IN, ME, NE, ND, NV, OK, SD, UT, VI, WV, WY; the lesser of $50 or 10% of the amount financed in OR. In CA, the minimum finance charge is $25. In IL, the non-refundable service charge is $20 if the amount financed is less than $500, $30 if the amount financed is $500 or more but less than $1,000, or $40 if the amount financed is over $1,000. In NJ, if this loan is prepaid in full, Insured agrees to pay an additional charge of $20 for any loan of $2,000 or less, 1% of the loan for loans over $2,000 up to and including $5,000 and $100 on loans over $5,000.

9. Insured agrees to pay a cancellation charge of $5 in TN, VI; $10 in MN, ND;OH; $15 in AL, AZ, GA, MO, MS, RI WI; $25 in CO, HI, IA, ID, IN, LA, ME, NE, OK, SD, UT, WV, WY; the greater of 2% of the unpaid balance or $5 in MA; the difference between the delinquency charge assessed and; $5 in DE, MI, MT, NJ, NY, OR, WA; $10 in DC; $15 in NH; $100 in MD.

10. Insured agrees to pay promptly to the insurer any additional premiums due on the Policies.

11. The Agent is not the agent of APF and the Agent cannot bind APF. APF is not the Agent of any insurer and is not liable for any acts or omissions of any insurer. Insured acknowledges that it has chosen to do business with the Agent and the insurance companies issuing the Policies, and that the insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to APF hereunder.

12. Except in KY and MD, and if not prohibited by applicable law, APF may insert the name of the insurer, policy numbers and first installment due date if omitted and if policy has not been issued at the time of signature.

13. This Agreement shall have no force or effect until accepted by APF. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. Neither APF nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by APF or its assignee of the rights conferred herein. This Agreement constitutes the entire Agreement between APF and Insured and may not be modified except as agreed upon in writing. APF's acceptance of late or partial payments shall not be deemed a waiver by APF of any provisions of this Agreement, and APF is entitled to require Insured to strictly comply with the terms hereof. Except in AR, this Agreement is governed by the law of the state of the Insured's address shown on the front of this Agreement. In AR, this Agreement is governed by the law of the state where this Agreement is accepted by APF. If any amount contracted for or received by APF is determined to violate any law or regulation APF may return such prohibited amount to insured without any further liability therefor (waiver of liability not applicable in KY).

14. Insured represents and warrants that the proceeds of this loan are to be used to purchase insurance for other than personal, family or household purposes and that all information provided herein or in connection with this Agreement is true, correct, complete and not misleading.

**15. CALIFORNIA RESIDENTS ONLY:**

**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS , STATE OF CALIFORNIA.**

Insured agrees that, in accordance with Section 18608 of the California Financial Code, APF's liability to Insured upon the exercise of APF's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of APF's willful failure to mail the notice of cancellation required under California law.

In connection with the Policies scheduled on page one, the Agent represents and warrants to APF, its successors and assigns that:

1. Deposit premiums are not less than the anticipated premiums to be earned for the full terms of the Policies.

2. All of the scheduled Policies or bonds in this Agreement are cancellable by standard short rate or pro-rata tables.

3. When cancellation is requested by Insured or by APF, none of the Policies require advance notice of cancellation to any party, other than any notice required to be given by APF, and there are no audit or reporting form policies, Policies subject to retrospective rating or to minimum earned premiums except as indicated in the Schedule of Policies.

4. We are the authorized policy issuing Agent of the insurance companies or the broker placing the coverage directly with the insurance company on all Policies except as indicated in the Schedule of Policies.

5. The Insured(s) signature(s) on both pages one and two hereof are genuine, the Insured has not paid for the scheduled Policies other than as described herein, the Insured(s) have received a copy of this Agreement, this Agreement is valid and enforceable and there are no defenses to it. The scheduled Policies are in full force and effect and the premiums indicated are correct for the term of the Policies, and all other information relating to the Policies and the Insured is complete and correct. None of the Policies have been financed on an installment payment plan provided by the insurance company(ies), or are noncancellable policy(ies), or policies written for a term of less than one year. The Agent recognizes the Insured's assignment of the unearned premiums and upon cancellation of any of the scheduled Policies agrees to pay promptly any unearned commissions to APF and to pay to APF the unearned premiums immediately upon receipt. Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to APF hereunder. The Policies are not for personal, family or household purposes. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the Insured or if the Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which the Insured's name and address is placed.

7. If the Agreement has been signed by the Agent on behalf of the insured, the Agent has the authority to act in this capacity and the Agent has provided the Insured with a complete copy of this Agreement.

8. There are no exceptions to the Policies financed other than those indicated, and the Policy(ies) comply with APF's eligibility requirements.

9. The Cash Down Payment, and any installments due from the Insured which Agent has agreed to collect, have been collected from the Insured.

10. Agent is not an agent of APF and is not authorized to bind APF and has not made any representation to the contrary.

The Agent agrees to promptly remit all funds received from APF and the Insured for the financed Policies and due to the insurance company(ies) issuing such Policies. Agent shall be liable to APF for any losses, costs, damages or other expenses (including attorney's fees) incurred by APF or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, or otherwise arising out of the breach by Agent of this Agreement. Agent shall promptly notify APF of any unpaid increased premiums for the Policies.

CWI QMS (Ed. 01-03)   **Quote Version Number   001**

**AFCO**  4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901

# NOTICE OF ACCEPTANCE

| TOTAL PREMIUMS | DOWN PAYMENT | AMOUNT FINANCED | FINANCE CHARGE | TOTAL OF PAYMENTS | ANNUAL PER-CENTAGE RATE |
|---|---|---|---|---|---|
| 624,832.00 | 156,208.00 | 468,624.00 | 8,990.97 | 477,614.97 | 4.581 % |

INSURED (NAME AND ADDRESS)
Metaldyne Corporation
ATTN : Kim Guest
47603 Halyard Drive
Plymouth, MI 48170
US

AGENT OR BROKER SUBMITTING AGREEMENT (NAME AND ADDRESS)
Aon Risk Services Central, Inc.
3000 Town Center Suite 3000
Southfield, MI 48075
US

AMOUNT OF INSTALLMENT
53,068.33

| DATE OF NOTICE & ACCEPT | | FINAL PAYMENT DUE | DAY DUE | NO. & FREQ. OF INSTS. |
|---|---|---|---|---|
| 02/03/2009 | | MO. 10  YR.  09 | 11 | 9 (MTH) |

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | FULL NAME OF INSURER AND GENERAL AGENT(S) * OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR., LM., CAS | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| 005511250 | 01/11/2009 | ILLINOIS NATIONAL INS CO | FDLB | 12 | 20,000.00 |
| 014743587 | 01/11/2009 | ILLINOIS NATIONAL INS CO | DO | 12 | 130,500.00 |
| 51515489 | 01/11/2009 | FEDERAL INS CO | CRIM | 12 | 56,832.00 |
| 68018890 | 01/11/2009 | FEDERAL INS CO | FDLB | 12 | 50,000.00 |
| ABX003144000 | 01/11/2009 | ARCH INS COMPANY | DO | 12 | 30,000.00 |
| CO11194/001 | 01/11/2009 | Allied World Assurance Company (U.S.) Inc | DO | 12 | 100,000.00 |
| ECO9002210 | 01/11/2009 | ST PAUL MERCURY INSURANCE COMPANY | DO | 12 | 72,500.00 |
|  |  | Policy Details Continued... |  |  |  |

**TO THE INSURED:  YOUR PREMIUM FINANCE AGREEMENT HAS BEEN ACQUIRED BY AFCO CREDIT CORP.**

We are pleased to notify you that we have accepted your premium finance agreement subject to verification by the insurance companies. We have credited the down payment to your account.

☐  If this is a regular monthly payment plan, your coupons are enclosed.

☒  If your payment is other than monthly or on a special monthly advance billing, we will remind you of your installment payments.

**We urge you to read your premium finance agreement so that you are aware of your rights and duties under that agreement as well as possible penalties that might be assessed against you in the event that the terms of the agreement are not complied with.**

PLEASE SEND THE PROPER NOTICE AND WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK OR MONEY ORDER TO INSURE PROMPT CREDITING OF THE PAYMENT TO YOUR ACCOUNT.

If you have any questions, please contact our processing center for assistance

4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901

PLEASE NOTE:  IF THE PREMIUMS BEING FINANCED ARE FOR THE PURCHASE OF INSURANCE PERSONAL, FAMILY OR HOUSEHOLD PURPOSES (NOT BUSINESS) YOUR INSURANCE AGENT SHOULD HAVE GIVEN YOU A NOTICE TITLED " REQUIRED FEDERAL TRUTH-IN-LENDING DISCLOSURES FOR PERSONAL LINES INSURANCE ".  IF YOU DID NOT RECEIVE THIS NOTICE, PLEASE CONTACT AFCO AT ONCE SO THAT WE CAN GIVE YOU THE REQUIRED NOTICE.

AFCO Credit Corporation
08 BBjv(9/04) c. 2004

AVOID JEOPARDIZING YOUR INSURANCE PROTECTION BY MAILING ALL PAYMENTS IN TIME TO REACH AFCO ON OR BEFORE THE DUE DATE OF YOUR INSTALLMENTS.

# NOTICE OF ACCEPTANCE

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | FULL NAME OF INSURER AND GENERAL AGENT(S) * OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR., I.M., CAS. | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| ELU10932208 | 01/11/2009 | XL SPECIALTY INS CO | DO | 12 | 60,000.00 ✓ |
| MNN7305580120 | 01/11/2009 | AXIS Insurance Company | DO | 12 | 105,000.00 ✓ |

AFCO Credit Corporation
08 BBjv(9/04) c. 2004

## AON PREMIUM FINANCE, LLC
### 200 E. RANDOLPH STREET, CHICAGO, IL 60601 (312)381-4628
### COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT

| | | |
|---|---|---|
| | Contract Number | To Be Assigned |

| NC LIC. | SC LIC. 167019 | Agent Number 10051431 | Quote Number 100000206734 |
|---|---|---|---|

| Name and address of Insured(s) (as shown in the policy) and co-obligor if any | Name and Address of Insured's Agent ("Agent") |
|---|---|
| Metaldyne Corporation<br>Attn : Kim Guest<br>47603 Halyard Drive<br>Plymouth, MI 48170<br><br>Telephone Number: | Aon Risk Services Central, Inc.<br>3000 Town Center Suite 3000<br>Southfield, MI 48075<br><br>Telephone Number: 248-936-5519 |

| Policyholder Designation (Check One): | Type of Agreement (Check One): | |
|---|---|---|
| N/A<br>( ) Partnership | ( ) Proprietorship<br>( ) Corporation | (X) New<br>( ) Additional Premium | Indicate contract number of current policy being financed  N/A |

### SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix    Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSURANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo.  Day  Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|
| | | ST PAUL MERCURY INSURANCE COMPANY | DO | 12 | 01/11/2009 | 72,500.00 |
| | | AXIS Insurance Company | DO | 12 | 01/11/2009 | 105,000.00 |
| | | Policy Detail Continued... | | | | |

| NY: Charge under §2119 of New York Insurance Law for obtaining and servicing these policies. If none, state "None". $    None | FLORIDA DOCUMENTARY STAMP TAX | $ |
|---|---|---|

**APF**

### DISCLOSURE STATEMENT - PAYMENT SCHEDULE

| Payment Plan: (X) Monthly   ( ) Quarterly   ( ) Annually | CASH PRICE (Total Premiums) | 624,832.00 |
|---|---|---|

| Number of Payments | 9 | First Payment Due | On the 09 of each month, Beginning February 9, 2009 |
|---|---|---|---|

Subsequent payments are due on the same day of each succeeding period.

| CASH PRICE | ⊖ CASH DOWN PAYMENT | = AMOUNT FINANCED<br>The amount of credit provided on your behalf. | + FINANCE CHARGE<br>The dollar amount the credit will cost you. | = TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | AMOUNT OF EACH PAYMENT | ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. |
|---|---|---|---|---|---|---|
| 624,832.00 | 156,208.00 | 468,624.00 | 8,990.97 | 477,614.97 | 53,068.33 | 4.581% |

**AON PREMIUM FINANCE, LLC (HEREIN AFTER CALLED APF)**
209 E. Randolph Street, Chicago, IL 60601 (312)381-4628

**Prepayment:** The Insured may prepay in full at any time and receive a refund of the unearned finance charge, calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, MA, MO, NJ, OR, PA, VT; short rate method in SC), and subject to a nonrefundable charge stated on page two. Minimum refund is $1.00 (except AK, where there is no minimum refund).

**Security Interest:** The Insured assigns to APF as security for payment of this agreement all sums payable to the Insured with reference to the policies listed above, including, among other things, any gross return premiums and any payment on account of loss which results in reduction of unearned premium in accordance with the term of said policies.

**Delinquency charge:** The Insured agrees that upon default in payment of any installment five days or more ( more than 5 days in IL, MS, OH ) to pay a

**Delinquency Charge** of 5% of the delinquent installment. In AK, CA, DE, MI, MN, ND, NJ, OR, TN, TX, the Delinquency Charge is not due until installment is in default for ten days or more, more than 10 days in MA, NM 7 days in VA. Maximum delinquency charge is $5 in DE, MT, ND; $100 in MD; $500 in NM. 1 1/2% of the delinquent installment in NJ with a minimum of $25. In AK, OR: for delinquent payments of less than $250, the delinquency charge is the lesser of 5% of the payment or $5, otherwise the delinquency charge is 2% of the amount in default. KS: Delinquency charge is $5 plus 2% of the installment in default.

**Cancellation Charge:** The Insured agrees that if a default results in cancellation of the policy(ies) to pay a Cancellation Charge in the amount stated on page two. (Not applicable in AK, KY, TX, NC.)

See the provisions on page two for additional information about nonpayment, default, and any repayment in full before the scheduled date and any prepayment refunds or penalties.

| NOTICE TO INSURED: | 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, INCLUDING THE WRITING ON PAGE TWO, OR IF IT CONTAINS ANY BLANKS. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE PAGE TWO FOR IMPORTANT INFORMATION. |
|---|---|

When used in this Agreement, "Insured" means the Insured and any co-obligor named above and all insureds covered by the Policies listed in the Schedule of Policies. Each Insured jointly and severally agrees to make all payments required by this Agreement and to be bound by all of its provisions including those on page two. The person signing represents and warrants that he or she is authorized to enter into this Agreement on behalf of each Insured and to bind each Insured to this Agreement. Each Insured agrees that APF may send all notices under this Agreement to the Insured's address shown above. You are not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

| By _____ | Date 1/14/09 |
|---|---|
| (Signature of Insured) | |
| David M Gann   Director of Corporate Development | |
| (Typed Name and Title) | |

### AGENT'S REPRESENTATIONS AND WARRANTIES

The undersigned Agent has read the Insurance Agent's Representations and Warranties on page two and makes all such representations and warranties recited therein and agrees to be bound by the terms of this Agreement.

| By _____ | Date _____ |
|---|---|
| (Signature of Agent) | |
| _____ | |
| (Typed Name and Title) | |

CWI QMS (Ed. 01-03)

Quote Version Number   003

**AON PREMIUM FINANCE, LLC**
**200 E. RANDOLPH STREET, CHICAGO, IL 60601 (312)381-4628**
**COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT**

| SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT | | | | | | |
|---|---|---|---|---|---|---|
| FOR COMPANY USE ONLY | POLICY NUMBER Prefix    Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSURANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo.   Day   Year | POLICY PREMIUM |
| | | XL SPECIALTY INS CO | DO | 12 | 01/11/2009 | 60,000.00 |
| | | FEDERAL INS CO | CRIM | 12 | 01/11/2009 | 56,832.00 |
| | | ARCH INS COMPANY | DO | 12 | 01/11/2009 | 30,000.00 |
| | | Allied World Assurance Company (U.S.) Inc | DO | 12 | 01/11/2009 | 100,000.00 |
| | | AMERICAN INTERNATIONAL INS | DO | 12 | 01/09/2009 | 130,500.00 |
| | | FEDERAL INS CO | FDLB | 12 | 01/11/2009 | 50,000.00 |
| | | AMERICAN INTERNATIONAL INS | FDLB | 12 | 01/11/2009 | 20,000.00 |

Agent Number 10051431    Quote Number 100000206734

**The Insured (jointly and severally if more than one) agrees as follows:**

1. In consideration of the payment by APF of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance company(ies) listed in the Schedule of Policies, and to pay APF the Total of Payments in accordance with the terms of this Agreement. Interest is computed on an annual basis of 12 months of 30 days each.

2. Insured assigns to APF as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies, including, among other things, any gross unearned premiums and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies.

3. Insured hereby irrevocably appoints APF as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to APF authority to effect cancellation of policy(ies) listed in the Schedule of Policies ("Policies"), and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to APF. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

4. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate APF to request reinstatement of such insurance Policy(ies), and Insured acknowledges that APF has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

5. Insured agrees not to assign the Policy(ies) (except for the interest of mortgagees or loss payees, without the written consent of APF. APF may assign this Agreement without Insured's consent, and all rights conferred upon APF shall inure to APF's successors and assigns.

6. Except in KS, KY and VT, Insured agrees to pay a fee of $15.00 in the event of a dishonored check. ( $5.00 in CA; $10 in AZ, MA, MD, OH, VI; $7.50 in NV, not to exceed APF's cost in NJ).

7. An Event of Default occurs when the Insured does not pay any installment according to the terms of this Agreement or (except in MD) fails to comply with any of the terms of the Agreement or (except in MD) if any of the Policies are cancelled for any reason. If an Event of Default occurs and after giving notice as required by law, all amounts due under this Agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums. If an Event of Default occurs, APF may at its option pursue the following remedies:

- After proper notice has been given as required by law, APF may immediately cancel the Policy(ies) and collect any unearned premiums or (except in KY) other amounts payable under said Policies. Unearned premiums shall be payable to APF only.

- APF may take all necessary actions to enforce payment of this debt. To the extent not prohibited or limited by applicable law, APF is entitled to collection costs and expenses incurred (except in KS) while enforcing its rights under this Agreement and to reasonable attorney's fees if this Agreement is referred to an attorney who is not a salaried employee of APF for collection or enforcement (not permitted in KY, NC ; total of collection costs and attorney's fees is limited to 20% of the unpaid balance in AZ, FL, MO, MS, NH, NV, NY, VI; 15% of unpaid balance in TN; 25% of unpaid balance in VT).

- Except in AK, KY, MI, NC, VT and the other states listed herein, after cancellation, Insured agrees to pay interest on the unpaid balance (calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, NJ, OR, PA; short rate method in SC) as of the scheduled due date of the first delinquent payment leading to cancellation of the Policies) at the rate of 1% per month (in AR, NM, TX, at the Annual Percentage Rate stated on the front), or at the highest rate permitted by law, whichever is less, until the entire balance of this loan is paid in full. In MA, Insured agrees to pay interest at the rate of 1% per month on the difference between the unpaid balance on the date of cancellation (computed according to the actuarial method) and the unearned premiums received by APF on the cancelled Policies, for the period from the date of cancellation until the balance is paid in full.

- In AL, DC, DE, IL, KS, NY and WA, after cancellation, Insured agrees that APF may recompute the total finance charge due under this Agreement on the original amount financed, at the rate and in the manner described in this paragraph from the first effective date of the Policies through the last originally scheduled installment date, and Insured agrees to pay this amount, subject to the provisions on prepayment in full. That rate, stated as a dollar amount per year for each $100 of amount financed is as follows: $9 in AL, DE; $10 in DC, IL, WA; $12 in KS; $14 in NY.

- APF may offset and deduct from any amounts APF owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to APF under this or (except in KY, MD, NC and TX) any other agreement.

8. Insured agrees to pay a non-refundable service fee of $10 in AK, AZ, CT, DE, KS, LA, MO, NY, PA, WA, WI; $12 in NJ; $12.50 in MT; $15 in AL, KY, NC, RI, SC, TN, VA; $16 in WA; $18 in MI; $20 in DC, FL, GA, MD, MN, OH; $25 in CO, HI, IA, ID, IN, ME, ND, NV, OK, SD, UT, VI, WV, WY; the lesser of $50 or 10% of the amount financed in CR. In CA, the minimum finance charge is $25. In IL, the non-refundable service charge is $20 if the amount financed is less than $500, $30 if the amount financed is $500 or more but less than $1,000, or $40 if the amount financed is over $1,000. In NJ, if this loan is prepaid in full, Insured agrees to pay an additional charge of $20 for any loan of $2,000 or less, 1% of the loan for loans over $2,000 up to and including $5,000 and $100 on loans over $5,000.

9. Insured agrees to pay a cancellation charge of $5 in TN, VI; $10 in MN, ND,OH; $15 in AL, AZ, GA, MO, MS, RI, WI; $25 in CO, HI, IA, ID, IN, LA, ME, NE, OK, SD, UT, WV, WY; the greater of 2% of the unpaid balance or $5 in MA; the difference between the delinquency charge assessed and; $5 in DE, MI, MT, NJ, NY, OR, WA; $10 in DC; $15 in NH; $100 in MD.

10. Insured agrees to pay promptly to the Insurer any additional premiums due on the Policies.

11. The Agent is not the agent of APF and the Agent cannot bind APF. APF is not the Agent of any insurer and is not liable for any acts or omissions of any insurer. Insured acknowledges that it has chosen to do business with the Agent and the insurance companies issuing the Policies, and that the insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to APF hereunder.

12. Except in KY and MD, and if not prohibited by applicable law, APF may insert the name of the insurer, policy numbers and first installment due date if omitted and if policy has not been issued at the time of signature.

13. This Agreement shall have no force or effect until accepted by APF. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. Neither APF nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by APF or its assignee of the rights conferred herein. This Agreement constitutes the entire Agreement between APF and Insured and may not be modified except as agreed upon in writing. APF's acceptance of late or partial payments shall not be deemed a waiver by APF of any provisions of this Agreement, and APF is entitled to require Insured to strictly comply with the terms hereof. Except in AR, this Agreement is governed by the law of the state of the Insured's address shown on the front of this Agreement. In AR, this Agreement is governed by the law of the state where this Agreement is accepted by APF. If any amount contracted for or received by APF is determined to violate any law or regulation APF may return such prohibited amount to Insured without any further liability therefor (waiver of liability not applicable in KY).

14. Insured represents and warrants that the proceeds of this loan are to be used to purchase insurance for other than personal, family or household purposes and that all information provided herein or in connection with this Agreement is true, correct, complete and not misleading.

**15. CALIFORNIA RESIDENTS ONLY:**
**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS , STATE OF CALIFORNIA.**
Insured agrees that, in accordance with Section 18608 of the California Financial Code, APF's liability to Insured upon the exercise of APF's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of APF's willful failure to mail the notice of cancellation required under California law.

In connection with the Policies scheduled on page one, the Agent represents and warrants to APF, its successors and assigns that:
1. Deposit premiums are not less than the anticipated premiums to be earned for the full terms of the Policies.
2. All of the scheduled Policies or bonds in this Agreement are cancellable by standard short rate or pro-rata tables.
3. When cancellation is requested by Insured or by APF, none of the Policies require advance notice of cancellation to any party, other than any notice required to be given by APF, and there are no audit or reporting form policies. Policies subject to retrospective rating or to minimum earned premiums except as indicated in the Schedule of Policies.
4. We are the authorized policy issuing Agent of the insurance companies or the broker placing the coverage directly with the insurance company on all Policies except as indicated in the Schedule of Policies.
5. The Insured(s) signature(s) on both pages one and two hereof are genuine, the Insured has not paid for the scheduled Policies other than as described herein, the Insured(s) have received a copy of this Agreement, this Agreement is valid and enforceable and there are no defenses to it. The scheduled Policies are in full force and effect and the premiums indicated are correct for the term of the Policies, and all other information relating to the Policies and the Insured is complete and correct. None of the Policies have been financed on an installment payment plan provided by the insurance company(ies), or are noncancellable policy(ies), or policies written for a term of less than one year. The Agent recognizes the Insured's assignment of the unearned premiums and upon cancellation of any of the scheduled Policies agrees to pay promptly any unearned commissions to APF and to pay to APF the unearned premiums immediately upon receipt. Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to APF hereunder. The Policies are not for personal, family or household purposes.
6. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the Insured or if the Insured is the subject of a proceeding, it is noted on the Agreement in the space in which the Insured's name and address is placed.
7. If the Agreement has been signed by the Agent on behalf of the Insured, the Agent has the authority to act in this capacity and the Agent has provided the Insured with a complete copy of this Agreement.
8. There are no exceptions to the Policies financed other than those indicated, and the Policy(ies) comply with APF's eligibility requirements.
9. The Cash Down Payment, and any installments due from the Insured which Agent has agreed to collect, have been collected from the Insured.
10. Agent is not an agent of APF and is not authorized to bind APF and has not made any representation to the contrary.
The Agent agrees to promptly remit all funds received from APF and the Insured for the financed Policies and due to this insurance company(ies) issuing such Policies. Agent shall be liable to APF for any losses, costs, damages or other expenses (including attorney's fees) incurred by APF as assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, or otherwise arising out of the breach by Agent of this Agreement. Agent shall promptly notify APF of any unpaid increased premiums for the Policies.

CWI QMS (Ed. 01-03)  **Quote Version Number** 003

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                        :

In re                       :    Chapter 11

                        :

Metaldyne Corporation, *et al.*,    :    Case No. 09-13412 (___)

                        :

           Debtors.    :    (Jointly Administered)

                        :

------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING
## DEBTORS AND DEBTORS IN POSSESSION
## TO PAY INSTALLMENTS UNDER THE INSURANCE PREMIUM FINANCE
## AGREEMENTS DUE IN THE 20-DAY PERIOD FOLLOWING THE PETITION DATE

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession for Interim and Final Orders Authorizing Them to (A) Pay Installments Under the

Insurance Premium Finance Agreements and (B) Enter Into New Premium Finance Agreements

in the Ordinary Course of Business (the "Motion")[1] filed by the debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed

the Motion and the Affidavit of Thomas A. Amato filed in support of the Debtors' first day

papers (the "Affidavit") and having considered the statements of counsel with respect to the

Motion at a hearing before the Court (the "Hearing"); and the Court having found that (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core

proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, (d) there is good cause to waive the ten-day stay imposed by

Bankruptcy Rule 6004(h) to the extent it is applicable and (e) payment of prepetition claims

related to the Premium Finance Agreements on the terms and conditions described in the Motion

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

is (i) essential to maximize value for the Debtors' stakeholders, (ii) in the best interests of the Debtors, their estates and their creditors and (iii) necessary to prevent immediate and irreparable harm to the Debtors and their estates; and the Court having determined that the legal and factual bases set forth in the Motion and Affidavit and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein on an interim basis.

2.      The Debtors are authorized, in their sole discretion, to make all postpetition installment payments under Premium Finance Agreements in the ordinary course of their businesses, to the extent that they were outstanding as of the Petition Date or become due and payable through the date of the Final Hearing set forth below.

3.      The Debtors' Banks are authorized and directed to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, obligations paid pursuant to this Order, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date; provided, however, that (a) funds are available in the Debtors' accounts to cover such checks and funds transfers; and (b) the Debtors' Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

4.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

5.	Any objection to granting of the relief requested by the Motion on a permanent basis shall be filed with the Court on or before 4:00 p.m. Eastern Standard Time on _____ ___, 2009 (the "Objection Deadline"), and served, so as to be received by the Objection Deadline, upon: (a) the Office of the United States Trustee for the Southern District of New York, Manhattan Office, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul Schwartzberg and Richard Morrissey); and (b) (i) Metaldyne Corporation, 47603 Halyard Drive, Plymouth, Michigan 48170 (Attn: David McKee, Gen. Counsel); (ii) Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Richard H. Engman, Esq.); and (iii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114-1190 (Attn: Heather Lennox, Esq.). The Debtors submit that no other or further notice need be provided.

6.	The Debtors shall, within two business days of the date of entry of this Interim Order, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order and a notice (the "Final Hearing Notice") of the final hearing on the Motion (the "Final Hearing") to be held on _____ ___, 2009 at __:__ _.m. on: (a) the U.S. Trustee; (b) counsel to The Bank of New York Mellon and JPMorgan Chase Bank, N.A., as agents for the Debtors' prepetition senior secured credit facility; (c) counsel to Deutsche Bank A.G., New York, as agent for the Debtors' prepetition asset-backed secured revolving credit facility and as agent and lender under the Debtors' postpetition financing facility; (d) counsel to The Bank of New York Trust Company, N.A., in its capacity as the indenture trustee for the remaining outstanding Notes; (e) counsel to the North American OEMs; (f) counsel to Asahi Tec; (g) counsel to RHJI; (h) those creditors holding the 50 largest unsecured claims against the Debtors' estates; and (i) those persons who have formally appeared and requested service in this proceeding pursuant to Bankruptcy Rule 2002.

7.     If no objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of the Final Order attached to the Motion, which Order may be entered with no further notice or opportunity to be heard afforded to any party.

8.     Pursuant to Rule 6004(h) of the Bankruptcy Rules, this Order shall be immediately effective and enforceable upon its entry.

Dated: New York, New York

_____, 2009                    _____

                                          UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11
                                            :
Metaldyne Corporation, et al.,              :    Case No. 09-13412 (___)
                                            :
                    Debtors.                :    (Jointly Administered)
                                            :
------------------------------------------------------------x
```

### ORDER AUTHORIZING DEBTORS
### AND DEBTORS IN POSSESSION TO (A) PAY INSTALLMENTS UNDER THE
### INSURANCE PREMIUM FINANCE AGREEMENTS AND (B) ENTER INTO NEW
### PREMIUM FINANCE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession for Interim and Final Orders Authorizing Them to (A) Pay Installments Under the

Insurance Premium Finance Agreements and (B) Enter Into New Premium Finance Agreements

in the Ordinary Course of Business (the "Motion")[1] filed by the debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed

the Motion and the Affidavit of Thomas A. Amato filed in support of the Debtors' first day

papers (the "Affidavit") and having considered the statements of counsel with respect to the

Motion at a hearing before the Court (the "Hearing"); and the Court having found that (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core

proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, and (d) payment of prepetition claims related to the Premium

Finance Agreements is necessary and appropriate (i) to prevent serious disruptions to the

Debtors' business operations that would cause potentially immediate and irreparable harm to the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

Debtors' operations and value and (ii) to preserve the going concern value of the Debtors' businesses and the Debtors' estates for the benefit of all stakeholders and, thus, will facilitate the continued operation of the Debtors' businesses; and the Court having determined that the legal and factual bases set forth in the Motion and Affidavit and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, in their sole discretion, to pay all postpetition installment payments under the Premium Finance Agreements as they come due.

3. The Debtors are authorized, in their sole discretion, to maintain and continue the Premium Finance Agreements as adequate protection of the Financiers' interests in the Insurance Policies under section 363(e) of the Bankruptcy Code.

4. The Debtors are authorized, in their sole discretion, to enter into renewals of existing Premium Finance Agreements or enter into new insurance premium finance agreements on competitive terms and conditions, pursuant to section 364 of the Bankruptcy Code.

5. The Debtors' Banks are authorized and directed to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, obligations paid pursuant to this Order, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date; provided, however, that (a) funds are available in the Debtors' accounts to cover such checks and funds transfers; and (b) the Debtors' Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

6. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

7. Pursuant to Rule 6004(h) of the Bankruptcy Rules, this Order shall be immediately effective and enforceable upon its entry.

Dated: New York, New York

_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE