Bonnie Steingart (BS-8004)
Gary Kaplan (GK-4542)
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000

*Counsel for the Prepetition Term Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
In re:                                          :
                                                :   Chapter 11
                                                :
Metaldyne Corporation, et al.,                  :   Case No. 09-13412 (MG)
                                                :
                                                :   Jointly Administered
                            Debtors.            :
                                                :
-------------------------------------------------------x

**OBJECTION OF THE PREPETITION TERM LENDERS TO THE MOTION OF
DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM AND FINAL ORDERS
PURSUANT TO SECTIONS 361, 362, 363, 364 AND 510 OF THE BANKRUPTCY CODE
AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A)
AUTHORIZING THE DEBTORS TO (I) USE CASH COLLATERAL OF THE
PREPETITION SECURED LENDERS, (II) OBTAIN POSTPETITION FINANCING
AND (III) PROVIDE ADEQUATE PROTECTION TO THE PREPETITION SECURED
LENDERS, (B) AUTHORIZING DEBTORS TO ENTER INTO, AND APPROVING, AN
ACCOMMODATION AGREEMENT WITH CERTAIN CUSTOMERS AND (C)
PROVIDING NOTICE AND SCHEDULING FINAL HEARING**

The Prepetition Term Lenders[1] to the above-captioned debtors and debtors in possession

(collectively, the "Debtors") hereby submit this objection (the "Objection") to the motion (the

---

[1]     The Prepetition Term Agent is party to that certain Credit Agreement, dated as of January 11, 2007 (as
amended, restated, supplemented or otherwise modified, the "Prepetition Term Credit Agreement" and the
credit facility thereunder, the "Prepetition Term Facility) between Metaldyne Intermediate Holdco, Inc.,
Metaldyne Company LLC, as borrowers, certain lenders (the "Prepetition Term Lenders"), JPMorgan
Chase, as administrative agent (in such capacity, the "Prepetition Term Administrative Agent"), and
collateral agent (in such capacity, the "Prepetition Term Collateral Agent," and together with the
Prepetition Term Administrative Agent, the "Prepetition Term Agent"), Citicorp, as syndication agent, and
Deutsche Bank Securities, Inc., as documentation agent.

"Motion")[2] (A) authorizing the Debtors to (I) use cash collateral, pursuant to Section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), (II) obtain postpetition financing pursuant to 361, 362 and 364 of the Bankruptcy Code and (III) provide adequate protection to the Prepetition Secured Parties pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, (B) authorizing Debtors to enter into, and approving, an Accommodation Agreement (the "Accommodation Agreement"), with Ford Motor Company ("Ford"), General Motors Corporation ("GM"), and Chrysler LLC ("Chrysler' and, together with Ford and GM, the "Customers") and (C) scheduling interim and final hearings pursuant to Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").  In support of its Objection, the Prepetition Term Lenders respectfully state as follows:

### PRELIMINARY STATEMENT

1.      By the Motion, the Debtors are seeking approval of a debtor in possession financing facility (the "DIP Facility") that primes the Prepetition Term Lenders on the Prepetition ABL Priority Collateral **without the Prepetition Term Lenders' consent**.[3]  In doing so, the Debtors have failed to make even the most basic showing that the Prepetition Term Lenders' are adequately protected as a result of their liens being primed.  The reason for that is simple – there is absolutely no way the Debtors could show that the Prepetition Term Lenders are adequately protected.

2.      The DIP Facility is purportedly being provided by the Prepetition ABL Agent, but is actually being funded by the Customers who have agreed to "purchase their respective percentages" of the DIP Loans on a last-out, subordinated and junior basis to the payment in full

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Motion.

[3]      As discussed below, the Prepetition Term Lenders have a second lien on the Prepetition ABL Priority Collateral.

of the Prepetition ABL Obligations and the ABL Adequate Protection Superpriority Claims, but senior to (and priming) the liens of the Prepetition Term Lenders on the Prepetition Term Priority Collateral. The DIP Facility is secured by liens on all now owned or hereafter acquired property and assets of the Debtors (collectively, the "DIP Collateral"), other than thirty-five percent of the Debtors' interest in their foreign subsidiaries (the "Unencumbered Foreign Stock") and Avoidance Actions.

3.  As adequate protection, the Debtors have offered the Prepetition Term Lenders (i) replacement security interests in and liens (the "Adequate Protection Replacement Liens") upon all of the DIP Collateral (on which the Prepetition Term Lenders already have first priority and second priority liens) and (ii) allowed superpriority administrative expense claims (the "Adequate Protection Superpriority Claims"). The Adequate Protection Superpriority Claims have recourse to all DIP Collateral and proceeds of Unencumbered Foreign Stock. However, at all times, prior to the payment in full of the Prepetition ABL Obligations and the ABL Adequate Protection Superpriority Claims, the Adequate Protection Superpriority Claims of the Prepetition Term Lenders are junior in payment to the Prepetition ABL Secured Parties.

4.  The Prepetition Intercreditor Agreement (entered into between the Prepetition ABL Lenders and the Prepetition Term Lenders) provides that if a debtor in possession financing facility is *pari passu* or senior to the Prepetition ABL Lenders on the Prepetition ABL Priority Collateral, the Prepetition Term Lenders will be deemed to consent to the debtor in possession financing facility. This provision recognizes that if the Prepetition ABL Lenders, who have a first lien on the Prepetition ABL Priority Collateral, are willing to share in the pain of the financing by diluting their lien position, then the Prepetition Term Lenders must also agree to share in the pain and consent to the debtor in possession financing. The current DIP structure,

however, does not require the Prepetition ABL Lenders to share any pain. Rather, while the DIP Liens appear to be *pari passu* with the liens of the Prepetition ABL Lenders, the Interim Order and related agreements make it clear that the DIP Facility is **junior in right of payment** to the Prepetition ABL Lenders as the DIP Facility is only repaid after the Prepetition ABL Lenders are paid in full. Accordingly, because there is no actual parity between the DIP Lenders and the Prepetition ABL Lenders, there can be no deemed consent by the Prepetition Term Lenders.

5.     In addition, the DIP Facility suffers from numerous other flaws. First, the DIP Facility matures sixty (60) days from entry of the Interim Order and provides zero funding beyond that sixty-day period. Thus at the end of the sixty days, the Debtors estates will be administratively insolvent and the Debtors will have no cash to pay any of their administrative claims. The Debtors hope to sell certain of their assets prior to the end of the sixty-day period. However, even if the Debtors are actually able to find a buyer, negotiate an asset purchase agreement, have bid procedures approved, have an auction and then close a sale in sixty days, they will be left with no funds to wind down the Debtors' estates.[4]

6.     Furthermore, the DIP Facility operates hand-in-hand with the Accommodation Agreement. The Accommodation Agreement requires that the Debtors, among other things, (1) build for each Customer an inventory bank of component parts and (2) allow the Customers and their representatives access to, among other things, the Debtors' operations and component parts. This arrangement will chill potential bids for the Debtors' assets because all potential buyers will be concerned that the Customers will be moving to a new supplier at the end of the sixty day period. While it is certainly understandable that the Customers want to protect their own interests, this arrangement makes it less likely the Debtors will realize full value for their assets.

---

[4]     The current **nonbinding** letters of intent would provide insufficient cash to pay the DIP Lenders in full, and thus even if the Debtors were able to sell their assets in accordance with the terms of those letters of intent, the Debtors would still be administratively insolvent in sixty days.

## <u>OBJECTION</u>

### I. The Priming Liens Fail to Satisfy the Requirements of Section 364(d) of the Bankruptcy Code

7.      It is black letter law that the Debtors may only grant liens that prime the interests of the Prepetition Term Lenders in the Prepetition Collateral if the Prepetition Term Lenders are provided with adequate protection for the diminution in value of their interests in such collateral or if the Prepetition Term Lenders give their consent.

### A.      <u>The Prepetition Term Lenders Have Not Consented To The DIP Liens Proposed In These Cases and There Has Been No "Deemed" Consent</u>

8.      The Prepetition Term Lenders have not consented to the DIP Liens.  Section 5.2 of the Intercreditor Agreement[5] states that the Prepetition Term Lenders are only deemed to consent to debtor in possession financing secured by all of the Prepetition Collateral, and agree not to request adequate protection in connection with the use of the Prepetition Collateral, provided that, among other things:

> (2) all Liens securing any such DIP Financing on ABL Priority Collateral shall be senior to or on a parity with (or shall be in substitution for) the ABL Liens securing the ABL Obligations on ABL Priority Collateral

Intercreditor Agreement, §5.2(a).

9.      In other words, the Prepetition Term Agent, on behalf of the Prepetition Term Lenders, is only deemed to consent if, among other things, all DIP Liens on Prepetition ABL Priority Collateral are senior or on a parity with the Prepetition ABL Liens on such collateral.

---

[5]      There can be no dispute that subordination agreements are fully enforceable under the Bankruptcy Code, provided that they are enforceable under "applicable nonbankruptcy law." 11.U.S.C.A. §510(a).  Similarly, there is no dispute that the Intercreditor Agreement, which is "essentially" a subordination agreement, 4-510 Collier on Bankruptcy-15th Edition Rev. P 510.0*3*, would be enforceable under applicable nonbankruptcy law.  <u>See In re Enron Creditors Recovery Corp.</u>, 370 B.R. 64, 70-72 (Bankr. S.D.N.Y. 2007) (aff'd in part and rev'd in part on other grounds), 380 B.R. 307 (S.D.N.Y. 2008); <u>In re Amret, Inc.</u>, 174 B.R. 315, 319 (M.D. Ala. 1994).

10. The Debtors propose to offer the DIP Lenders: (x) liens on assets and property of the Debtors not already encumbered by liens (excluding Avoidance Actions and the Unencumbered Foreign Stock) that are *pari passu* with the Adequate Protection Replacement Liens of the Prepetition ABL Lenders; (y) liens on all of the Debtors' assets and property, which, in the case of (i) Prepetition Term Priority Collateral that are junior to the Prepetition Term Liens and *pari passu* with the Prepetition ABL Liens and the Adequate Protection Replacement Liens of the Prepetition ABL Secured Parties and (ii) property and assets only encumbered by Third Party Liens that are junior to such Third Party Liens; and (z) **priming** liens on all assets and property of the Debtors, which, in the case of (i) assets and property that are not Prepetition Term Priority Collateral, that will be *pari passu* with the Prepetition ABL Liens and the Adequate Protection Replacement Liens of the Prepetition ABL Secured Parties and senior to the Prepetition Term Liens and (ii) Prepetition Term Priority Collateral, that will be junior to the Prepetition Term Liens and the Adequate Protection Replacement Liens of the Prepetition Term Secured Parties and *pari passu* with the Prepetition ABL Liens and the Adequate Protection Replacement Liens of the Prepetition ABL Secured Parties.  DIP Order*,* §2(c) (emphasis added).

11. However, numerous paragraphs and Exhibit E of the DIP Order eviscerate the allusion of parity between the DIP Lenders and the Prepetition ABL Lenders by making the DIP Lenders **junior in right of payment** to the payment in full of the Prepetition ABL Obligations and the Adequate Protection Superpriority Claims of the Prepetition ABL Secured Parties:

> if, at any time, the amount of the Prepetition ABL Obligations (other than the Incremental Loans) exceeds the Borrowing Base…the Debtors may not use Cash Collateral other than to immediately and permanently repay the Prepetition ABL Obligations (other than the Incremental Loans) in the amount of such excess…[and] all net cash proceeds from the sales or dispositions of any DIP Collateral (other than Prepetition Term Priority Collateral and ordinary course disposition of inventory and collections of accounts) shall be

immediately and permanently applied to repay outstanding Prepetition ABL Obligations (other than the Incremental Loans).

DIP Order, Exhibit E.

> the DIP Secured Parties shall not receive or retain any payments, property, distribution or other amounts in respect of their DIP Superpriority Claims, in each case unless and until the Prepetition ABL Obligations and (without duplication) the Adequate Protection Superpriority Claims of the Prepetition ABL Secured Parties have indefeasibly been paid in full in cash.

DIP Order, ¶4(b).

> (a) The occurrence of any of the following shall constitute an event of default hereunder (each, an "Event of Default")…
>
> (iii) any of the Debtors shall make any payment on or in respect of the DIP Facility, on account of the DIP Obligations, the DIP Superpriority Claims or otherwise, or the DIP Secured Parties shall seek enforcement of any rights in respect thereof, before the Prepetition ABL Obligations and the Adequate Protection Superpriority Claims in favor of the Prepetition ABL Secured Parties shall first be paid indefeasibly in full in cash and satisfied….

DIP Order, ¶15(a)(iii).

> after the occurrence and during the continuance of an Event of Default, all proceeds of DIP Collateral and Prepetition Collateral (but not Prepetition Term Priority Collateral), whenever received, shall be applied as follows:  (i) *first*, to permanently and indefeasibly repay and reduce the Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents, subject to paragraph 6 herein, until indefeasibly paid in full in cash; (ii) *second*, to reduce the DIP Obligations then due and owing; and (iii) *third*, to the estates. Additionally, if, at any time, the amount of the Prepetition ABL Obligations (other than the Incremental Loans) exceeds the Borrowing Base, including after taking into account any reserves taken or the Applicable Availability Block implemented by the Prepetition ABL Secured Parties in their sole discretion, the Debtors shall immediately, without notice or demand, permanently repay the Prepetition ABL Obligations (other than the Incremental Loans) in an aggregate amount equal to such excess.  Notwithstanding any of the foregoing to the contrary, all proceeds of Prepetition Term Priority Collateral shall be applied in accordance with the terms of the Prepetition Intercreditor Agreement.

DIP Order, ¶16(a).

12.     In other words, not only must the Prepetition ABL Obligations first be paid in full in cash before the DIP Lenders receive any payment on account of the DIP Superpriority Claims, (DIP Order, ¶4(b)), but it is an event of default under the DIP Order if the Debtors make any payment on account of the DIP Obligations or the DIP Superpriority Claims before the Prepetition ABL Obligations and the Adequate Protection Superpriority Claims of the Prepetition ABL Secured Parties are paid in full in cash.  DIP Order, ¶15(a)(iii).

13.     As such, the structure of the DIP Facility is an attempt by the Debtors to gerrymander the Prepetition Term Lenders' "deemed" consent to the adequate protection. However, by focusing on the parity of the liens, the Debtors have failed to recognize the more important fact – the priority of payment.  In this situation, even though the DIP Liens are *pari passu* with the liens of the Prepetition ABL Lenders, the DIP Lenders are junior in right of payment to the Prepetition ABL Lenders.  Accordingly, there can be no "deemed" consent from the Prepetition Term Lenders.  The Prepetition Term Lenders have not, and will not, consent to the priming of its liens without a commensurate acceptance of sacrifice by the Prepetition ABL Lenders.  The Prepetition ABL Lenders are required by the Intercreditor Agreement to share in the pain of the Debtors' restructuring, including the provision of DIP financing, by allowing any DIP lenders to be (at the very least) on a parity (in all respects) with the Prepetition ABL Lenders on Prepetition ABL Priority Collateral.  As is evident from the DIP Order, this is not the case in the DIP Facility.

B.      <u>The Debtors Have Failed To Provide The Term Lenders With Adequate Protection</u>

14.     As the Prepetition Term Lenders have not consented to the granting of the DIP Liens, the Debtors must provide the Prepetition Term Lenders with adequate protection for the

diminution in value of their interests in the Prepetition Collateral. However, the Debtors propose adequate protection only in the form of assets and property that are either (A) already encumbered by the liens or claims of the Prepetition ABL Lenders and the Prepetition Term Lenders, or (B) in the case of unencumbered assets, liens that are junior in payment priority to the Adequate Protection Replacement Liens and Adequate Protection Superpriority Claims of the Prepetition ABL Lenders.

15.     Section 364(d) of the Bankruptcy Code provides:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A)     the trustee is unable to obtain such credit otherwise; and
>
> (B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. §364(d).

16.     When a debtor proposes financing that seeks to subordinate an existing lienholder, the debtor has the burden of establishing that such a proposal provides the existing lienholder with adequate protection. In re Barbara K Enters., 2008 Bankr. LEXIS 1917, at *39 (Bankr. S.D.N.Y. June 16, 2008) (citing Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group), 16 F.3d 552, 564 (3d Cir. 1994)). 11 U.S.C. §364(d)(2). In that regard, the debtor must be able to demonstrate that any financing proposal provides a prepetition secured creditor with "the same level of protection it would have had if there had not been post-petition superpriority financing." Id. at *38 (Bankr. S.D.N.Y. June 16, 2008) (citing In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996)).

17.     Although the Bankruptcy Code does not expressly define adequate protection,

section 361 does state that adequate protection may be provided by: (1) periodic cash payments;

(2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of

the secured creditor's interest in such property.  11 U.S.C. § 361.  Therefore, a determination of

whether adequate protection has been provided is made on a case-by-case basis.  *See Swedeland,*

16 F.3d at 564.   Moreover, "whether protection is adequate 'depends directly *on how effectively*

it compensates the secured creditor for loss of value' caused by the superpriority given to the

post-petition loan."  Swedeland*, 16 F.3d at 564 (citing In re American Mariner Industries, Inc.,

734 F.2d 426, 435 (9th Cir. 1984) (emphasis added).

18.     Additionally, in the case of priming liens, subordination of a secured creditor's

liens under section 364(d) of the Bankruptcy Code is truly "extraordinary" relief.  In re Seth Co.,

Inc., 281 B.R. 150, 153 (Bankr. D. Conn. 2002) (citing 3 Collier on Bankruptcy P 364.05 (15th

Revised Edition 2002)) (stating that the "ability to prime an existing lien is extraordinary, and in

addition to the requirement that the trustee be unable to otherwise obtain the credit, the trustee

must provide adequate protection for the interest of the holder of the existing lien…"); see also

In re First South Sav. Ass'n, 820 F.2d 700, 710-714 (5th Cir. 1987) (reversing the bankruptcy

court's finding of adequate protection and stating that when "super priority financing displaces

liens on which creditors have relied in extending credit," courts must be "particularly cautious"

in determining whether an existing creditor is adequately protected); Mosello, 195 B.R. at 289.

19.     In Swedeland, the Third Circuit held that the bankruptcy court erred in permitting

a prepetition bank to be primed based on the debtor's projections that it would use postpetition

financing to complete construction and generate positive cash flow.  Swedeland*, 16 F.3d at 564-

67.  Instead, the Third Circuit found that to warrant priming the liens of a secured creditor, such

secured creditor must be granted some *additional* form of protection to compensate for the loss of value resulting from the subordination of its lien.  Id. at 564.  As the Third Circuit stated, "[t]he law does not support the proposition that a creditor . . . may be adequately protected when a superpriority lien is created without the provision of additional collateral by the debtor."  Id. at 567.  Specifically, the Third Circuit held the provision of adequate protection in the form of personal guarantees, mortgages on property of the debtor's estate and allowing the secured creditor access to money in a cash collateral account were insufficient forms of adequate protection because the secured creditor was "entitled to these anyway."  Id. at 565-67.

20.     According to the Motion, the DIP Collateral—upon which the Prepetition Term Lenders' adequate protection would be predicated—would consist of all now owned or hereafter acquired assets and property of the Debtors.  DIP Order, ¶2(c).  As such, the protection that the Debtors suggest will adequately protect the Prepetition Term Lenders is based almost exclusively on security interests, liens and superpriority administrative claims on assets and property of the Debtors that the Prepetition Term Lenders already are "entitled to" under the Prepetition Term Security Documents.  Cf. Swedeland, 16 F.3d at 565-67.  As the Third Circuit held in Swedeland, and as this Court should find here, such so-called protection is not "additional" and, therefore, is not adequate.

21.     Moreover, the Debtors propose to prime the Prepetition Term Liens with the liens of the DIP Lenders without remotely approximating the diminution in value that this will cause to the Prepetition Term Lenders interests in the Prepetition Collateral.  It is an unfortunate, but evident, fact of these chapter 11 cases that the Prepetition Term Lenders are hopelessly undersecured despite, pursuant to the Prepetition Security Documents, having liens and security interests in substantially all of the Prepetition Loan Party Debtors' assets and property.  As

described previously, the Debtors' estates will be administratively insolvent at the expiration of the DIP Facility in sixty days time as the DIP Facility's shoestring budget will soon run out of cash to fund the estates. The minimal remaining unencumbered assets and property of the Debtors cannot, and plainly do not, come close to adequately protecting the Prepetition Term Lenders for the nonconsensual priming liens that would be imposed upon them by the DIP Order. Rather, the Prepetition Term Lenders are forced to shoulder 100% of the risk of the Debtors' reorganization efforts failing while not receiving any form of adequate protection – a result contrary to both the Bankruptcy Code and well-established case law.

22. Further, with respect to the Prepetition Term Lenders' Adequate Protection Superpriority Claims, the Prepetition Term Lenders are not entitled to receive any payments or other amounts on account of such claims (even with regards to Prepetition Term Priority Collateral) until the Prepetition ABL Obligations and the Adequate Protection Superpriority Claims of the ABL Lenders have been paid in full. This mechanism effectively renders the Adequate Protection Superpriority Claims of the Prepetition Term Lenders junior in payment priority to the Adequate Protection Superpriority Claims of the ABL Lenders and the Prepetition ABL Obligations. Consequently, in light of the present financial and business circumstances of the Debtors, this adequate protection is also not adequate at all.

## II. The Adequate Protection Superpriority Claims Violate the Intercreditor Agreement

23. The DIP Order subverts the Intercreditor Agreement in the manner that Adequate Protection Superpriority Claims have been provided to the Prepetition Term Lenders and the Prepetition ABL Lenders. Section 5.4(b) of the Intercreditor Agreement states that the Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, may, as adequate protection of their interests in the Prepetition Term Priority Collateral seek or accept only:

> (x) postpetition Liens on the same collateral, subordinated to the Liens

securing the Term Obligations **on the same basis** as the other ABL Liens on the Term Priority Collateral are so subordinated to the Term Obligations under this Agreement and (y) superpriority claims for any diminution in value of the ABL Secured Parties' interests in the Term Priority Collateral **junior in all respects** to the superpriority claims granted to the Term Secured Parties with respect to their interests in the Term Priority Collateral….

Intercreditor Agreement, §5.4(b) (emphasis added).

24.     In other words, the Intercreditor Agreement requires that the Adequate Protection Superpriority Claims of the Prepetition ABL Lenders must be "junior in all respects" to the Adequate Protection Superpriority Claims of the Prepetition Term Lenders on Prepetition Term Priority Collateral.  The DIP Order fails to observe the requirements of the Intercreditor Agreement.  Although, with respect to proceeds of Prepetition Term Priority Collateral, the Adequate Protection Superpriority Claims of the Prepetition Term Lenders appear to have priority over the similar superpriority claims of the Prepetition ABL Lenders, the DIP Order states that the Prepetition Term Secured Parties may "not receive or retain any payments, property, distribution or other amounts in respect of their Adequate Protection Superpriority Claims…unless and until the Prepetition ABL Obligations and (without duplication) the Adequate Protection Superpriority Claims of the Prepetition ABL Secured Parties have indefeasibly been paid in full in cash."  DIP Order, ¶4(b).

25.     As a result, not only would the Adequate Protection Superpriority Claims of the Prepetition ABL Lenders subvert the order of priority set forth in the Intercreditor Agreement, but the Prepetition ABL Obligations would do so as well, as both must be fully repaid before the Prepetition Term Lenders can receive any payment on account of their Adequate Protection Superpriority Claims.  Such a result would render the Intercreditor Agreement meaningless and, therefore, should be denied by this Court.

**III.  Deficiencies in the Accommodation Agreement**

26.     In addition to the foregoing, certain provisions of the Accommodation Agreement are objectionable and will reduce any value that still remains in the Prepetition Collateral and, consequently, prevent the Prepetition Term Lenders from realizing the full value of their interests in such collateral.  Paragraphs (6)(D) and (6)(F) of the Accommodation Agreement require the Debtors to (A) provide the Customers with access to, among other things, the Debtors' operations and component parts, and (B) build, at the Customers' behest, an inventory bank of component parts for the Customers' future use.

27.     These provisions have only one purpose – to provide the Customers with the ability to resource their supply of the component parts.  This will enable the Customers to switch suppliers upon the termination of the DIP Facility and the Accommodation Agreement.  The bidding for the Debtors' assets may be chilled as potential buyers are concerned that the Customers will be moving to a new supplier.

WHEREFORE, the Prepetition Term Lenders respectfully request that the Court deny the

Debtors' request for approval of the Motion.


Dated:   New York, New York       Respectfully submitted,
           May 29, 2009

                                   FRIED, FRANK, HARRIS, SHRIVER
                                      & JACOBSON LLP

                                 /s/ Bonnie Steingart
                                 Bonnie Steingart (BS-8004)
                                 Gary Kaplan (GK-4542)
                                 One New York Plaza
                                 New York, New York  10004
                                 Phone: (212) 859-8000
                                 Fax:    (212) 859-4000

                                 *Counsel for the Prepetition Term Lenders*

7306586