Alan J. Lipkin
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

Counsel to DYNE (DE) LP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re:                                    :
                                          :   Chapter 11
                                          :
METALDYNE CORPORATION, et al.,            :   Case No. 09-13412 (MG)
                                          :
                        Debtors.          :   (Jointly Administered)
                                          :
----------------------------------------------------------------x

LIMITED OBJECTION OF DYNE (DE) LP TO THE MOTION OF THE DEBTORS AND
DEBTORS IN POSSESSION FOR A FINAL ORDER PURSUANT TO SECTIONS 361,
362, 363, 364 AND 510 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING THE
DEBTORS TO (I) USE CASH COLLATERAL OF THE PREPETITION SECURED
LENDERS, (II) OBTAIN POSTPETITION FINANCING, AND (III) PROVIDE
ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDERS, (B)
AUTHORIZING DEBTORS TO ENTER INTO, AND APPROVING, AN
ACCOMMODATION AGREEMENT WITH CERTAIN CUSTOMERS AND (C)
PROVIDING NOTICE AND SCHEDULING FINAL HEARING (DOCKET NO. 29)

DYNE (DE) LP ("Landlord"), by its undersigned counsel, submits this limited

objection to the motion (the "Motion") of Metaldyne Corporation, et al., the debtors and debtors

in possession in the above-captioned cases (the "Debtors"),[1] for a final order pursuant to sections

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: Metaldyne Corporation (3957), ER Acquisition Corp. (2614), GMTI Holding Company (4261), Halyard Aviation Services, Inc. (4260), MascoTech Saturn Holdings Inc. (5957), MASG Disposition Inc. (9882), MASX Energy Services Group, Inc. (8592), MD Products Corp. (4702), Metaldyne Asia, Inc. (2230), Metaldyne Company LLC (0746), Metaldyne Driveline Co., LLC (8461), Metaldyne DuPage Die Casting Corporation (3897), Metaldyne Engine Co., LLC (6038), Metaldyne Europe, Inc. (3435), Metaldyne Intermediate Holdco, Inc. (0746), Metaldyne Lester Precision Die Casting, Inc. (4422), Metaldyne Light Metals Company, Inc. (4419), Metaldyne Machining and Assembly

361, 362, 363, 364 and 510 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtors, among other things, to obtain post-petition financing and provide adequate protection, and respectfully represents as follows:

BACKGROUND

1. Landlord owns certain non-residential real property located in Rome, GA, Niles, IL, Plymouth, MI, Solon, OH and Twinsburg, OH (collectively, the "Premises"). Pursuant to a Second Amended and Restated Lease Agreement, dated as of August 16, 2001, as subsequently amended by the Second Amendment to Second Amended and Restated Lease Agreement, dated as of May 28, 2003 and the Third Amendment to Second Amended and Restated Lease Agreement, dated as of November 10, 2004 (collectively, the "Lease"), certain of the Debtors, Metaldyne Machining and Assembly Company, Inc., Metaldyne Lester Precision Die Casting, Inc. (f/k/a Lester Precision Die Casting, Inc.), and Metaldyne DuPaige Die Casting Corporation (f/k/a DuPaige Die Casting Corporation) (each a "Tenant," and collectively, the "Tenants"), leased the Premises from Landlord. Pursuant to a Guaranty and Suretyship Agreement, dated as of June 22, 2001, certain of the Debtors, Metaldyne Company LLC, Windfall Products, Inc., Metaldyne Sintered Components of Indiana, Inc., Metaldyne Sintered Components, LLC (f/k/a Metaldyne Sintered Components, Inc.), Metaldyne Light Metal Company, Inc. (f/k/a Global Metal Technologies, Inc.) and GMTI Holding Company, Inc. (each

---

Company, Inc. (5111), Metaldyne Precision Forming - Fort Wayne, Inc. (7542), Metaldyne Services, Inc. (3834), Metaldyne Sintered Components, LLC (1600), Metaldyne Sintered Components of Indiana, Inc. (7520), Metaldyne Sintered Components St. Marys, Inc. (0079) Metaldyne Tubular Products, Inc. (6248), Metaldyne U.S. Holding Co. (5783), NC-M Chassis Systems, LLC (7668), Precision Headed Products, Inc. (6091), Punchcraft Company (2117), Stahl International, Inc. (1205), W.C. McCurdy Co. (4328), Windfall Specialty Powders, Inc. (2774).

a "<u>Guarantor</u>," and collectively, the "<u>Guarantors</u>"), unconditionally and irrevocably guaranteed Tenants' obligations under the Lease. Each of the Tenants and Guarantors is a Debtor.

2. Under section 6 of the Lease, basic rent, currently $332,089.67 per month, is required to be paid monthly in advance on the twenty-fifth day of each month, or if that day is not a business day, then on the immediately preceding business day. Tenants failed to pay the $332,089.67 of basic rent due under the Lease on May 25, 2009. Despite demand by Landlord, the pro rata portion of basic rent due May 25, 2009 that is allocable to the post-petition period from May 27, 2009 to June 24, 2009 ($310,664.53) has not been paid, although the Debtors have represented that such payment will be made. The next monthly basic post-petition rent payment is due on June 25, 2009.[2]

3. Section 9(a) of the Lease provides, in pertinent part, that Tenant "shall, before interest or penalties are due thereon, pay and discharge all taxes (including real and personal property, franchise, sales, use, gross receipts and rent taxes)" related to the Premises. While no post-petition tax payments to tax authorities are currently "due" under the Lease, Tenant's 2009 real estate tax obligations, which, based on actual 2008 real estate taxes and anticipated increases, are estimated to total $625,485.04, now are accruing during the post-petition period at the rate of $52,132.78 per month. Due to Tenants' prepetition Lease defaults, pursuant to section 9(b) of the Lease, Tenants are required on a monthly basis to pay such accrued real estate taxes to Landlord on the first of each month. Currently, the prorated post-petition amount of $8,408.52 is due for May 2009 and $52,132.78 is due for June 2009.

---

[2] Additional post-petition amounts also are (or soon will be) due under the lease, including, due to the Debtor's failure to pay rent timely, late fees and interest.

4. Upon information and belief, payment of all costs, fees and expenses for post-petition amounts due to Landlord under the Lease are not specifically provided for under the Debtors' DIP financing budget, which was filed as a supplemental exhibit to the Motion (the "DIP Budget").

5. The Debtors are now proceeding with an expedited process for the sale of their businesses as going concerns. See Motion ¶ 2. Nevertheless, the Debtors have not fully paid or provided for payment of all post-petition basic rent, monthly tax obligations, and other post-petition liabilities accruing under the Lease. Moreover, there is a risk these chapter 11 cases will be converted to chapter 7 or that the Debtors' "senior secured" creditors will receive all of the distributions made in these cases. Accordingly, there is substantial risk the Debtors will have insufficient funds or otherwise will not be able to pay their postpetition obligations due respecting the Lease.

## THE MOTION

6. By their Motion,[3] the Debtors seek, inter alia, this Court's final approval (the "Final DIP Order") authorizing the Debtors to borrow up to an aggregate principal amount of $18,507,789 and to grant to the DIP Secured Parties:

> (a) pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, enforceable, perfected and non-avoidable lien on all assets and property of the Debtors (now owned or hereafter acquired) that were not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date;
>
> (b) pursuant to section 364(c)(3) of the Bankruptcy Code a valid, enforceable, perfected and non-avoidable lien on all assets and property of the Debtors (now owned or hereafter acquired) and proceeds thereof which, in the case of liens on assets or property

---

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

(x) comprising Prepetition Term Priority Collateral, shall be (A) junior and subject to (1) the Prepetition Liens and the Adequate Protection Replacement Liens thereon, in favor of, in each case, the Prepetition Term Secured Parties and (2) Third Party Liens that were, as of the Petition Date, senior and prior to the Prepetition Liens on the Prepetition Term Priority Collateral of the Prepetition Term Secured Parties, and (B) *pari passu* with the Prepetition Liens and the Adequate Protection Replacement Liens thereon, in favor of, in each case, the Prepetition ABL Secured Parties, and (y) that were, as of the Petition date, encumbered only by Third Party Liens, shall be junior and subject to such Third Party Liens;

(c) pursuant to sections 364(d)(1) and 510(a) of the Bankruptcy Code, a valid, enforceable, perfected and non-avoidable lien on all assets and property of the Debtors (now owned or hereafter acquired) other than Unencumbered Collateral and proceeds thereof which, in the case of liens on such assets and property (x) other than Prepetition Term Priority Collateral, shall be (A) *pari passu* with the Prepetition Liens and the Adequate Protection Replacement Liens thereon, in favor of, in each case, the Prepetition ABL Secured Parties and (B) senior and prior to the Prepetition Liens thereon of the Prepetition Term Secured Parties and all Third Party Liens thereon which were junior and subject to the Prepetition Liens of the Prepetition ABL Secured Parties as of the Petition Date, and (y) comprising Prepetition Term Priority Collateral, shall be (A) junior and subject to the Prepetition Liens and the Adequate Protection Replacement Liens thereon which were senior and prior to the Prepetition Liens thereon of the Prepetition Term Secured Parties as of the Petition Date, (B) *pari passu* with the Prepetition Liens and the Adequate Protection Replacement Liens thereon in favor of, in each case, the Prepetition ABL Secured Parties and (C) senior and prior to all Third Party Third Party Liens thereon which were junior and subject to the Prepetition Liens thereon of the Prepetition ABL Secured Parties as of the Petition Date; and

(d) pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative claim having recourse to all prepetition and post-petition assets and property of the Debtors' estates and proceeds thereof.

7. The Debtors also seek the Court's authority to grant, as of the Petition Date, Adequate Protection Superpriority Claims and Adequate Protection Replacement Liens to the Prepetition Agents for the benefit of the Prepetition Secured Parties.

8. By order, dated May 29, 2009 (the "Interim DIP Order"), this Court granted the Motion on an interim basis.

## THE OBJECTIONS

A. Although The Debtors Are Required To Timely Perform All Post-Petition Obligations Under The Lease Pursuant To Section 365(d)(3), The Proposed DIP Budget Fails To Specifically Include Payments For All Post-Petition Lease Liabilities

9. Pursuant to section 365(d)(3) of the Bankruptcy Code, pending a debtor tenant's assumption or rejection of an unexpired lease of real property, the debtor is obligated to timely perform all post-petition obligations under the lease. See 11 U.S.C. § 365(d)(3). Section 365(d)(3) provides, in pertinent part:

> [t]he [debtor] shall timely perform all the obligations of the debtor . . . arising from and after the [petition date] under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3). Those obligations include the payment of post-petition rent, real estate taxes, and other lease obligations as they become due.

10. Section 365(d)(3) was enacted to protect real property lessors during the period between the petition date and the date the debtor assumes or rejects a lease. The legislative history of section 365(d)(3) reflects Congress' intent to afford lessors extra protection vis-à-vis other unsecured creditors:

> A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services — the use of its property, utilities, security, and other services — without current payment. No other creditor is put in this position.

H.R. Conf. Rep. No. 98-882 (1984), reprinted in 1984 U.S.C.C.A.N. 576, 599 (statement of Sen. Hatch).  That intent is particularly relevant here as the DIP Secured Parties have had the benefit of and continue to benefit from the Debtors' use of the Premises to operate and sell their businesses.  Accordingly, the Debtors are compelled to timely perform under the Lease pursuant to section 365(d)(3) pending assumption or rejection of the Lease.

11. Notwithstanding the requirement for the Debtors to timely pay all costs, fees and expenses for post-petition amounts due to Landlord under the Lease, the DIP Budget includes no specific provision for payment of all basic rent, monthly tax obligations, and other post-petition liabilities accruing under the Lease after the Petition Date and apparently no provision at all for accruing taxes and amounts other than basic rent.  It would be a breach of the Debtors' fiduciary duties and a failure of the Debtors' business judgment for the Debtors to obtain approval of final DIP financing that does not enable the Debtors to comply with their obligations under the Bankruptcy Code.

12. Consequently, the Final DIP Order should not be approved unless it specifically requires that the DIP Budget include a line item to fund the full payment of all costs, fees and expenses for post-petition amounts due to Landlord or accruing under the Lease, including monthly payment of accrued real estate taxes to Landlord.

B. The DIP Secured Parties Should Not Be
   Granted Greater Rights Than Those Of The Debtors

13. Pursuant to section 21(g) of the Lease, Tenants are restricted from mortgaging, pledging, or otherwise encumbering their interest in the Lease.

14. Among the liens proposed to be granted under the DIP Facility are liens upon all of the Debtors' interests in leaseholds, including Tenants' leasehold interests.  See

Paragraph 2(c) of the Interim DIP Order (authorizing the creation of liens on certain property, including interests in leaseholds).

15. The Bankruptcy Code does not allow debtors to transfer rights in leases that are greater than the rights the debtors themselves held outside of bankruptcy. The Debtors are not seeking to assume and assign the Lease pursuant to section 365 of the Bankruptcy Code. Instead, they are seeking to pledge or mortgage their leasehold interests in the Premises without requiring any such action to be governed by the specific provisions of the Lease. To the extent the Final DIP Order would nullify the applicable provisions in the Lease that prohibit Tenant from pledging or mortgaging certain interests in the Premises, the Debtors are attempting to transfer rights that the Debtors themselves do not have. Accordingly, the Final DIP Order should provide that any lien rights granted to the DIP Secured Parties are subject to any restrictions in applicable leases, including the Lease.

C. Any § 506(c) Waiver Should Be Limited To
Exclude Claims For Costs, Fees and Expenses For
Post-Petition Amounts Due To Landlord Under The Lease

16. Paragraph 9 of the Interim DIP Order provides that, subject to the entry of the Final DIP Order, the Debtors are deemed "to have waived any rights, benefits or cause of action under Section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the Prepetition ABL Secured Parties and the Adequate Protection Replacement Liens and the Prepetition Liens" (the "§ 506(c) Waiver"). Section 506(c) of the Bankruptcy Code provides, in pertinent part:

> The trustee may recover from property securing an allowed
> secured claim the reasonable, necessary costs and expenses of
> preserving, or disposing of, such property to the extent of any
> benefit to the holder of such claim . . . .

11 U.S.C. § 506(c). Section 506(c) codified the "equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the estate that are necessary to preserve or dispose of the lienholder's collateral to the extent that the lienholder derives a benefit as a result." 4 Collier's On Bankruptcy, at ¶ 506.05[1] (Lawrence P. King, et al. eds., 15th ed. revised 2005). The Third Circuit articulated the principle as follows:

> Congress' intent in enacting § 506(c) was to assure that when a claimant "expends money to provide for the reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral, the . . . debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party." Thus . . . [section] 506(c) is designed to prevent a windfall to the secured creditor at the expense of the claimant.

Precision Steel Shearing v. Fremont Financial Corp. (In re Visual Industries, Inc.), 57 F.3d 321, 325 (3d Cir. 1995) (citations omitted). As this Court is aware, Landlord would have no independent recourse against the DIP Secured Parties for surcharges covering the Debtors' post-petition obligations related to the Lease. Meanwhile, pursuant to the Motion, the Debtors propose to pledge all of their assets several times over.

17. Accordingly, the § 506(c) Waiver would be for the sole benefit of the DIP lender and prepetition secured parties at the expense of administrative claimants such as Landlord. Consequently, if the § 506(c) Waiver were granted and an Event of Default occurred under the DIP Facility or otherwise, then Landlord would be harmed (due to the Debtor's likely inability to pay rent, taxes, and other amounts due under the Lease) despite the fact the various secured parties have had the benefit of and continue to benefit from Debtors' use of the Premises to operate and sell their business. As a result, any § 506(c) waiver should be limited to exclude costs, fees and expenses for post-petition amounts due to Landlord or accruing under the Lease. Alternatively, as a condition to any approval of the DIP Facility, the Debtors should be required

to remit to Landlord a security deposit equal to payment of three months base rent plus pro rata taxes for such period ($1,152,677.35) to secure any post-petition payment defaults by Tenant under the Lease.  Landlord would be obligated to refund such security deposit to the Debtors, less the amount (if any) used to satisfy uncured post-petition payment arrearages under the Lease, at the earlier of: (i) the assumption of the Lease by the Debtors pursuant to section 365 of the Bankruptcy Code by entry of a final nonappealable order of the Bankruptcy Court and payment of all cure amounts due and owing with respect to such assumption; or (ii) rejection of the Lease by the Debtors pursuant to section 365 of the Bankruptcy Code by entry of a final nonappealable order of the Bankruptcy Code and payment of all costs, fees and expenses for post-petition amounts due to Landlord or accrued under the Lease.

D.  The "Equity Of The Case" Exception
    Under § 552(b) Should Not Be Waived

18.  Paragraph 18(h) of the Interim DIP Order provides that the "DIP Secured Parties and Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the 'equities of the case' exception under section 552(b) of the Bankruptcy Code shall not apply" (the "§ 552(b) Waiver").  Section 552(b) of the Bankruptcy Code provides, in pertinent part:

> [I]f the Debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, *except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise* . . . .

11 U.S.C. § 552(b) (emphasis added). The equity exception "allows the court to protect the interests of unsecured creditors . . . [d]epending upon the court's evaluation of [the equities of the case]." 4 Collier's On Bankruptcy, at ¶ 552.02[4](a) (Lawrence P. King, et al. eds., 15th ed. revised 2005).

19. The § 552(b) Waiver would be for the sole benefit of the DIP Secured Parties at the expense of administrative and unsecured creditors. If for example, the Debtors' estates spend time and money processing and selling any of the DIP Secured Parties' collateral, then equity might dictate that a portion of the proceeds be used to compensate the Debtors' estates. Consequently, if the § 552(b) Waiver were granted, then administrative and unsecured creditors would be harmed by the inability of the Court to determine whether the DIP Secured Parties' interest in proceeds should be limited. As a result, the § 552(b) Waiver should not be granted in the Final DIP Order.

E. Tenants' Liability Under the DIP Facility Should Be Limited in Scope

20. To the extent that each of Tenants and Guarantors' obligations under the DIP Facility is proposed to be joint and several each would be responsible for all obligations outstanding under the DIP Facility irrespective of the actual benefit to each under the DIP Facility. It would be inappropriate for each of the Tenants and Guarantors to be liable for debts from which each did not benefit. Accordingly, Landlord objects to the Motion to the extent that it fails to limit the scope of each of Tenants' and Guarantors' exposure under the DIP Facility to each of Tenants' and Guarantors' pro rata benefit under the DIP Facility.

21. To remedy the problem, the scope of liability for each borrower under the DIP Facility (each, a "Borrower"), including the Tenants and Guarantors, should be limited to such Borrower's pro rata benefit from the DIP Facility. (Alternatively, the Tenants and

Guarantors could each have a superiority claim together with liens senior to those of the DIP Secured Parties against each other Debtor to the extent of any claim for indemnification or contribution based on such other Debtor receiving the benefits under the DIP Facility).

F.  Landlord Should Have The Opportunity
    To Review The Form of The Final DIP Order

22. The form of the proposed Final DIP Order has not been filed with the Bankruptcy Court. Landlord should be provided with a copy of the proposed Final DIP Order, blacklined to reflect changes from the Interim DIP Order, sufficiently in advance of the final hearing on the Motion in order to provide Landlord with a meaningful opportunity to review such Order and, if necessary, object thereto.

G.  Reservation of Rights

23. This Objection is without prejudice to any and all rights that Landlord has pursuant to the Lease and applicable law. Landlord reserves all rights to object to the proposed Final DIP Order. Landlord further reserves the right to supplement this Objection at a later date, if applicable.

**PROCEDURE**

24. Landlord has served or is serving notice of this Objection on: (i) counsel to the Debtors; (ii) counsel for Ford; (iii) counsel for GM; (iv) counsel for Chrysler; (v) counsel for Prepetition ABL Agent and DIP Agent; (vi) counsel for the Prepetition Term Lenders; (vii) the Office of the United States Trustee; (viii) counsel to the Official Committee of Unsecured Creditors.

25. As this Objection presents no novel issue of law and the legal authorities for the relief requested are cited herein, Landlord requests that the Court waive the requirement

of Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that a memorandum of law be submitted herewith.

26. No previous motion for the relief sought herein has been made to this or any other court.

4961534.4

## CONCLUSION

WHEREFORE, Landlord respectfully requests that: (a) the Motion be denied or granted only on terms consistent with the objections set forth above; and (b) Landlord be granted such other and further relief as is just and proper.

Dated: June 15, 2009

        Respectfully submitted,

        WILLKIE FARR & GALLAGHER LLP

        By: /s/ Alan J. Lipkin
            Alan J. Lipkin
            787 Seventh Avenue
            New York, New York 10019-6099
            (212) 728-8000

        Attorneys for DYNE (DE) LP

Of Counsel: Jeremy E. Crystal