JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Richard H. Engman

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox
Ryan T. Routh

Proposed Attorneys for Debtors
 and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                    :
In re                               :  Chapter 11
                                    :
Metaldyne Corporation, *et al.,*    :  Case No. 09-13412 (MG)
                                    :
              Debtors.              :  (Jointly Administered)
                                    :
------------------------------------------------------------x

**REPLY OF DEBTORS TO OBJECTION
OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
AND JOINDER OF PENSION BENEFIT GUARANTY CORPORATION TO MOTION
OF DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM AND FINAL ORDERS
PURSUANT TO SECTIONS 361, 362, 363, 364 AND 510 OF THE BANKRUPTCY
CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE (A) AUTHORIZING THE DEBTORS TO (I) USE CASH COLLATERAL
OF THE PREPETITION SECURED LENDERS, (II) OBTAIN POSTPETITION
FINANCING AND (III) PROVIDE ADEQUATE PROTECTION TO THE
PREPETITION SECURED LENDERS, (B) AUTHORIZING DEBTORS TO ENTER
INTO, AND APPROVING, AN ACCOMMODATION AGREEMENT WITH CERTAIN
CUSTOMERS AND (C) PROVIDING NOTICE AND SCHEDULING FINAL HEARING**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Metaldyne Corporation and its affiliated debtors (collectively, the "Debtors") hereby submit this reply to the objection of the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee") and the untimely joinder of the Pension Benefit Guaranty Corporation thereto, which were filed in response to the Debtors' motion for, among other things, authority to obtain postpetition financing and to use cash collateral (D.I. 29) (the "DIP Motion")[1] and respectfully state as follows:

**Preliminary Statement**

1. As the Debtors demonstrated at the interim hearing for approval of the relief sought in the DIP Motion (the "Interim Hearing"), the terms of the Debtors' proposed postpetition financing were heavily negotiated among the Debtors, the Prepetition ABL Lenders[2] (who have consented to, among other things, the use of the Prepetition ABL Priority Collateral), the Prepetition Term Lenders (who have consented to, among other things, the priming of their liens in the Prepetition ABL Priority Collateral), the DIP Lender (who has agreed to make loans to the Debtors on a postpetition basis) and the Customers (who have agreed to provide the funding for the $19.9 million DIP Facility at below market rates and certain additional financial accommodations). In exchange, the Debtors agreed to provide these parties with consideration that is customary in connection with debtor in possession financing facilities, including superpriority administrative claims with recourse against certain of the Debtors' limited unencumbered assets, namely the Debtors' Unencumbered Foreign Stock. In the case of the

---

[1] The Pension Benefit Guaranty Corporation, which did not have an extension of time to object to the DIP Motion, filed an untimely joinder to the Committee's objection on June 19, 2009.

[2] Capitalized terms not defined herein have the meaning given to them in the Final Order or the DIP Motion.

2

Prepetition ABL Lenders and the Prepetition Term Lenders, such a superpriority claim is limited solely to the diminution in value, if any, of such lenders' liens.  The Committee fails to mention that the Debtors have specifically preserved value for the unsecured creditors — Avoidance Actions and the ability to avoid certain mortgages.

2.  As a result of extensive and difficult negotiations, including negotiations during the Interim Hearing, the parties were able to reach agreement on the terms of a multi-source postpetition financing arrangement that addresses the Debtors' liquidity needs to bridge to the sales of the Debtors' primary businesses.  As demonstrated at the Interim Hearing, none of the individual components of the Debtors' proposed postpetition financing arrangement is individually sufficient to address the Debtors' postpetition financing needs, and all components are necessary to the success of the Debtors' chapter 11 cases.  The result is a fair allocation of value that is fully compliant with the provisions of the Bankruptcy Code.

3.  Notwithstanding the record established at the Interim Hearing that (a) the DIP Facility and the terms thereof were extensively negotiated among the Debtors, the Prepetition ABL Agent, the DIP Lender, the Customers and, ultimately, with the Prepetition Term Lenders, (b) the terms of the DIP Facility represent the Debtors' best and *only* financing alternative to meet their liquidity needs and are dramatically below market and (c) the Debtors must have access to the financing provided under the DIP Facility and the use of Cash Collateral in order to avoid an immediate shut down and liquidation of their assets, the Committee nonetheless has objected to the DIP Facility's final approval.  The Committee's objection is premised on an unsupportable assertion that it is improper for the Debtors to permit the DIP Lenders and the Prepetition Lenders to recover from otherwise unencumbered assets of the estate and to grant a superpriority administrative claims with recourse against the Debtors' limited

unencumbered assets. This assertion is simply wrong and, therefore, the Debtors respectfully request that the Court overrule the Committee's objection and the Pension Benefit Guaranty Corporation's joinder and enter the Final DIP Order.

**Reply**

*Granting the DIP Lender and the Prepetition Lenders*
*Recourse Against Unencumbered Collateral and Unencumbered*
*Foreign Stock is Appropriate and Warranted Under the Circumstances*

        4.        The Committee's principal objection, that it is improper for a DIP order to provide postpetition lenders and prepetition lenders with recourse against the debtor's unencumbered assets, is unsupportable for several reasons.[3] First, it is indisputable that a lender providing new money to a debtor on a postpetition basis is entitled to receive liens and a superpriority administrative claim with recourse against unencumbered assets of the estate. Courts routinely grant such liens and superpriority administrative claims in DIP orders.[4] In other words, in exchange for providing new money, the DIP Lender is entitled to sufficient assurances that the Debtors will repay the DIP Loans. The Committee's argument to the contrary cannot withstand scrutiny.

        5.        Second, it is a fundamental principal of bankruptcy law that a prepetition secured lender is entitled to adequate protection for the debtors' use of cash collateral or as a

---

[3] The Committee raises other several other objections. The Debtors' responses to each other objection are set forth in the chart attached hereto as Exhibit A.

[4] See In re General Growth Properties, Inc., 2009 WL 1605896, at *8 (Bankr. S.D.N.Y. May 14, 2009) (publication forthcoming) (granting a postpetition lien to the DIP lender on unencumbered assets of the estate pursuant to section 364(c)(2) of the Bankruptcy Code without controversy); In re U.S. Mineral Products Co., 2005 WL 5887218, at *5 (Bankr. D. Del. Nov. 29, 2005) (same); In re Mid-State Raceway, Inc., 323 B.R. 40, 47 (Bankr. N.D.N.Y. 2005) (same); In re WorldCom, Inc., 2002 WL 1732646, at *5 (Bankr. S.D.N.Y. July 22, 2002) (same); In re Sun Healthcare Group, Inc., 245 B.R. 779, 788 (Bankr. D. Del. 2000) (denying motion to vacate the final DIP order where the debtor granted a postpetition lien to the DIP lender on unencumbered assets of the estate pursuant to section 364(c)(2) of the Bankruptcy Code); In re Ames Dept. Stores, Inc., 115 B.R. 34, 41 (Bankr. S.D.N.Y. 1990) (granting a postpetition lien to the DIP lender on unencumbered assets of the estate pursuant to section 364(c)(2) of the Bankruptcy Code without controversy); In re Photo Promotion Assocs., Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988) (same).

result of priming their prepetition liens (as in the case of the Prepetition Term Lenders' liens on the Prepetition ABL Priority Collateral). The Bankruptcy Code provides special protections to ensure that secured creditors are not deprived of their interests in cash collateral by the unauthorized use thereof.[5] Section 363(c)(2) prohibits a debtor from using cash collateral without first obtaining court approval or the consent of the secured lender. See 11 U.S.C. § 363(c)(2). The Court may authorize the Debtors to use Cash Collateral of the secured parties with an interest therein so long as adequate protection is provided.[6] In addition, under section 364(d)(1) of the Bankruptcy Code, if interests in collateral are to be "primed," then such "primed" parties must be adequately protected. 11 U.S.C. § 364(d)(1). The principal purpose of adequate protection is to safeguard the interests of the secured creditor in the collateral against diminution in the value of that interest postpetition.[7] Under this well-settled case law, the Prepetition Lenders are entitled to adequate protection against any diminution in value that results from the Debtors' use of their Cash Collateral, or other collateral, and for the priming of the Prepetition Term Lender's junior interest in the Prepetition ABL Priority Collateral.[8]

---

[5] See, e.g., In re Kleather, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting Section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral' for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor" (quoting In re Mickler, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981))); 3 Lawrence P. King, Collier on Bankruptcy ¶363.03[4][c] (15th ed. rev. 2008) (noting the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral").

[6] See 11 U.S.C. §§ 361, 363(c)(2)(B); In re Blackwood Assocs., L.P., 153 F.3d 61, 67-68 (2d Cir. 1998) (requiring a finding that prepetition secured creditors' interest in cash collateral is adequately protected before authorizing the debtors use of such cash collateral); In re Vienna Park Props., 976 F.2d 106, 114 (2d Cir. 1992) (same).

[7] See In re 495 Central Park Avenue Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (stating that the goal of adequate protection is to safeguard the secured creditor from diminution in value of its interest during the chapter 11); In re Continental Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (same); In re Beker Indus. Corp., 58 B.R. 725, 738 (Bankr. S.D.N.Y. 1986) (same).

[8] The Committee claims that the Debtors are attempting to redefine "Diminution in Value" with respect to the Prepetition ABL Priority Collateral. The definition of Diminution in Value in the Final Order reflects the fact that the Prepetition ABL Priority Collateral is wasting. Collecting accounts receivable and

6. The Committee argues that section 5.2 of the Prepetition Intercreditor Agreement prevents the Prepetition Term Lenders from accepting, as adequate protection, the superpriority claim with recourse to the Unencumbered Foreign Stock or the Unencumbered Debtors assets. This argument is flawed for two reasons. First, the Prepetition Intercreditor Agreement exists to govern the rights and interests of the Prepetition Term Lenders and the Prepetition ABL Lenders in the Prepetition Term Priority Collateral and the Prepetition ABL Priority Collateral. It does not bind either party with regard to any interest in unencumbered assets of the Debtors. Second, Section 5.2 specifically provides that the Prepetition Term Lenders may not accept adequate protection, *except as set forth in Section 5.4 therein*. Section 5.4 only restricts what the Prepetition Term Lenders may accept as adequate protection of their interest in the Prepetition ABL Priority Collateral. The Prepetition Intercreditor Agreement does not prohibit the Prepetition Term Lenders from receiving a superpriority administrative claim in the Debtors' assets that are not included in the Common Collateral.

7. Bankruptcy courts routinely authorize debtors to grant a superpriority claim to a prepetition secured lender under section 507(b) of the Bankruptcy Code for adequate

---

(continued…)

inventory, turning the collateral into cash and spending that cash, rather than paying down the Prepetition ABL Obligations, diminishes the value of the Prepetition ABL Priority Collateral. The definition in the proposed Final DIP Order simply reflects these facts.

The Committee also presents, but does not develop, an argument that giving the Prepetition Term Lenders an interest in the Unencumbered Foreign Stock could create a tax issue for the Debtors. This is not correct. The Internal Revenue Code seeks to prevent U.S. borrowers from affirmatively pledging enough stock in a foreign subsidiary to a secured creditor to give that creditor effective control over the subsidiary. The Prepetition Term Lenders currently hold a pledge of 65% of the Foreign Stock, an amount that under existing tax law is insufficient to reach the 2/3 level deemed by the government to constitute effective control. The grant of adequate protection to the Prepetition Lenders on a *pari passu* basis with respect to the Debtors' Unencumbered Collateral and any proceeds from the sale of Unencumbered Foreign Stock does not constitute a pledge by the Debtors of additional equity interests in the foreign subsidiaries to the Prepetition Term Lenders because it arises under bankruptcy law in a context that does not implicate the concern addressed by the Internal Revenue Code (namely, granting effective control over a foreign subsidiary to a lender). Nevertheless, in an abundance of caution, the proposed Final DIP Order contemplates a *pari passu* claim for which the Prepetition Lenders will order their own priorities. See Exhibit B at ¶ 21.

protection to protect against diminution in value.⁹ Courts in this district have authorized such recourse against a debtor's unencumbered assets,¹⁰ and nothing in the Bankruptcy Code prohibits it.¹¹

8.  The Committee's argument against the granting of liens and superpriority claims in the Debtors' unencumbered assets is premised on an illogical assertion that the DIP Facility itself will actually cause diminution in value of the liens of the Prepetition Secured Lenders.  In fact, the opposite is true — the funds made available will act to preserve value.  The Committee's position ignores the fact that, without the DIP Facility and the use of Cash Collateral, the Debtors would be forced into an immediate shutdown and liquidation, resulting in irreparable harm to the Debtors' estates (including the loss of any value in the Unencumbered Foreign Stock) and no recovery for unsecured creditors.  Further, the Committee asserts that if the DIP Facility and the use of Cash Collateral is approved on a final basis, there is a substantial

---

9       See In re General Growth Properties, Inc., 2009 WL 1605896, at *11 (Bankr. S.D.N.Y. May 14, 2009) (publication forthcoming) (granting a superpriority claims to prepetition secured lenders for adequate protection under section 507(b) of the Bankruptcy Code); In re Mark IV Indus., Inc., No. 09-12795 (SMB) (Bankr. S.D.N.Y. May 27, 2009) (same); In re Chemtura Corp., No. 09-11233 (REG) (Bankr. S.D.N.Y. April 29, 2009) (same); In re Dana Corp., No. 06-10354 (BRL) (Bankr. S.D.N.Y. March 29, 2006) (same); In re Omni Facility Resources, Inc., No. 04-13972 (BRL) (Bankr. S.D.N.Y. June 10, 2004 and June 30, 2004) (interim and final orders authorizing the same).

10      See In re BearingPoint, Inc., No. 09-10691 (REG) (Bankr. S.D.N.Y. April 20, 2009) (granting an adequate protection superpriority claim to prepetition secured parties with recourse against all proceeds of avoidance actions and 35% of the stock of foreign subsidiaries of the debtor); In re Tronox Incorporated, No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 6, 2009) (granting an adequate protection superpriority claim to prepetition secured parties with recourse against all pre- and postpetition property of the debtors, including avoidance actions); In re Ciena Capital, LLC, No. 08-13783 (AJG) (Bankr. S.D.N.Y. Nov. 21, 2008) (same); In re Granite Broadcasting Corp., No. 06-12984 (ALG) (Bankr. S.D.N.Y. Jan. 5, 2007) (same).

11      See In re O'Connor, 808 F.2d 1393, 1397 (10th Cir. 1987) (affirming a bankruptcy court's finding that an additional lien, granted under section 361(2), against the unencumbered proceeds of certain untapped gas wells in proven areas to provide adequate protection against the continued use of the prepetition lender's cash collateral); In re AppliedTheory Corp., 2008 WL 1869770, at *1 (Bankr. S.D.N.Y. 2008) (finding that section 361(2) expressly authorizes debtors to provide prepetition lenders with liens against initially unencumbered assets of the debtor); In re American Sweeteners, Inc., 1999 WL 1068446, at *2 (Bankr. E.D. Pa. Nov. 22, 1999) ("Adequate protection may also be provided by the creation of a replacement lien on other, unencumbered property" under section 361(2)); In re Antell, 155 B.R. 921, 926 (Bankr. E.D. Pa. 1992) (noting that adequate protection under section 361(2) could include a lien against unencumbered property).

likelihood that the liens of the Prepetition Lenders will not diminish in value during these cases. (Committee Objection ¶ 48.) If that is the case, the Committee objects without reason, because in such an event, no value from the Unencumbered Foreign Stock will flow to the Prepetition Lenders. Given that the DIP Facility will only preserve the Debtors' estates, it provides the only possibility of recovery for unsecured creditors, and, therefore, should be approved on a final basis.

*<u>Allusions to Administrative Insolvency are Not Supported</u>*

9. The Committee's objection is based on a misunderstanding of certain key aspects of the proposed DIP Financing. For example, the Committee's objection makes much of the pledge of assets to the DIP Lender of the so-called "Unencumbered Debtors" (as defined in the Committee Motion), but such Debtors have no assets.

10. The Committee also mischaracterizes the scope of the proposed waiver of the Debtors' section 506(c) surcharge rights. Notwithstanding that the proposed Final DIP Order is clear that the section 506(c) waiver affects claims against the DIP Secured Parties and the Prepetition ABL Lenders *only*, the Committee would have the Court believe that the proposed Final DIP Order contains a complete waiver of the Debtors' section 506(c) rights. This is not true. In fact, mindful of the need to plan beyond the 60-day term of the DIP Facility, the Debtors have preserved their section 506(c) rights as to the Prepetition Term Lenders.

11. The Committee further challenges the appropriateness of any section 506(c) waiver because it claims that the Debtors have not explained how postpetition trade creditors will be paid. For clarity, the Budget assumes that every postpetition trade creditor will be paid on a cash on delivery ("<u>COD</u>") basis. Thus, under the Budget, the Debtors have budgeted enough money to pay every trade creditor upon delivery, whether the vendor provides

trade terms or not. Some vendors are being paid on a COD basis; most, however, are being paid on "net 10" day terms. This will limit those vendors' exposure, and the Budget has in it sufficient room to pay for all anticipated trade claims expected to be accrued through the end of the Budget. In addition, the Debtors are monitoring their cash position daily to ensure that the Debtors will be able to satisfy all trade debt incurred during the Budget period. Further, the potential buyers for the Debtors' Powertrain and Chassis business units are currently expected to assume some amount of postpetition trade debt and some of the section 503(b)(9) claims. The Debtors currently anticipate that at the end of the Sales Processes, based on offers already being considered and the authority granted to the Debtors under their essential supplier orders, they will have less than $2 million in unpaid 503(b)(9) claims at the end of the Budget period.

12. For the period extending beyond the 60-days of the Budget, the Debtors currently anticipate that they will have assets remaining (including operating facilities). At that point, the Debtors intend to engage in further negotiation for additional funding or use of Cash Collateral to dispose of the remaining assets of businesses to conclude these cases. All parties have reserved their rights as to such negotiations. Prudently, the Debtors have preserved rights to surcharge the Prepetition Term Priority Collateral and bring Avoidance Actions should such measures becomes necessary to address the estates' funding needs. The Debtors are, thus, operating so as to be able to satisfy their administrative claims. The Committee hopes for a consensual resolution of these chapter 11 cases (see Committee Objection ¶ 3.); the Debtors concur. Such an outcome will require all parties to reach a resolution that provides for the payment of administrative claims, and further litigation over these chapter 11 cases will only dissipate value for all creditors — secured and unsecured.

**Conclusion**

For the reasons described above, in the DIP Motion, at the interim hearing and those that will be presented at the hearing on the DIP Motion, the Debtors have shown good cause for final approval of the DIP Facility and, thus, the Committee's objections to the DIP Motion and the Petition Benefit Guaranty Corporation joinder should be overruled. The proposed Final DIP Order, in substantially the form attached hereto as Exhibit B,[12] should be entered by the Court.

Dated: June 21, 2009
      New York, New York

Respectfully submitted,

/s/ Ryan T. Routh
Richard H. Engman
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

 - and -

Heather Lennox
Ryan T. Routh
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

---

[12] Attached hereto as Exhibit C is a blackline showing the differences between the Interim Order entered on May 29, 2009 (D.I. 78) and the proposed Final DIP Order.