UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
In re : Chapter 11
:
Metaldyne Corporation, *et al.,* : Case No. 09-13412
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------------x

**STIPULATION AND ORDER AMONG DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING INTERIM ORDER PURSUANT TO SECTIONS 105(a), 363(b)(1) OF THE BANKRUPTCY CODE, (A) AUTHORIZING DEBTORS TO ENTER INTO THE NCM PRODUCTION AGREEMENT WITH TOYOTA AND (B) PROVIDING NOTICE AND SCHEDULING FINAL HEARING**

**Background**

**WHEREAS,** On May 27, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York;

**WHEREAS,** the Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS,** the Debtors have filed these cases, in part, in order to effectuate a sale of all or substantially all of their assets;

**WHEREAS,** On May 28, 2009, the Debtors filed the Motion of Debtors and Debtors in Possession for Interim and Final Orders Pursuant to Sections 361, 362, 363, 364 and 510 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral of Prepetition Secured Lenders, (II) Obtain Postpetition Financing and (III) Provide Adequate Protection to Prepetition Secured Lenders, (B)

Authorizing Debtors to Enter into, and Approving, an Accommodation Agreement with Certain Customers (the "Accommodation Agreement") and (C) Providing Notice of Scheduling and Final Hearing [Docket No. 24] (the "DIP Motion");

**WHEREAS,** in addition to the facts set forth herein, the parties incorporate the factual allegations set forth in the DIP Motion as if fully restated herein;

**WHEREAS,** on May 29, 2009 this Court entered an interim order approving the relief requested in the DIP Motion [Docket No. 78] (the "Interim DIP Order");

**WHEREAS,** to continue their operations during these chapter 11 cases, the Debtors sought and obtained debtor-in-possession financing ("DIP Financing") in accordance with the Interim DIP Order:

**WHEREAS,** the Debtors decided to wind down and cease operations at their New Castle, Indiana facility (the "New Castle Facility"); and

**WHEREAS,** Chrysler, LLC and certain of its affiliates (collectively, "Chrysler") and Toyota Motor Engineering & Manufacturing North America, Inc., and certain of its affiliates (collectively, "Toyota) were the primary customers of the New Castle Facility; and

**WHEREAS,** the Accommodation Agreement executed in connection with the DIP Financing contemplated that the operations at the New Castle Facility would be funded by Chrysler pursuant to the Chrysler Production Agreement, as defined below, which in turn contemplated partial funding of such operations by Toyota;

**WHEREAS,** in connection with DIP Motion, the Debtors sought and obtained approval of the NC-M Production Agreement (the "Chrysler Production Agreement") between Chrysler and NC-M Chassis Systems, LLC ("NC-M"), pursuant to which Chrysler agreed to

fund 90% of the expenses associated with operating the New Castle Facility during all or a portion of the wind down period;

**Production Agreement**

**WHEREAS,** Toyota, NC-M, and Metaldyne Machining and Assembly Company, Inc. ("Metaldyne Bluffton," and together with NC-M, "Supplier") have negotiated and executed an agreement (the "Toyota Production Agreement"), the form of which is attached hereto as Exhibit A, pursuant to which Toyota has agreed, among other things, to fund the remaining 10% of the expenses associated with operating the New Castle Facility during all or a portion of the wind down period;[1] and

**WHEREAS,** the terms of the Toyota Production Agreement requires this Court's approval of the Toyota Production Agreement; and

**WHEREAS,** pursuant to section 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors seek authorization to enter into the Toyota Production Agreement; and

**WHEREAS,** Deutsche Bank AG, in its capacity as prepetition ABL Agent, has indicated that it does not object to the Toyota Production Agreement; and

**WHEREAS,** the Prepetition Term Lenders[2] to the Debtors have indicated that they do not object to the Toyota Production Agreement; and

---

[1] The description of the Toyota Production Agreement contained herein is provided solely for convenience and is not intended to modify the terms of the Toyota Production Agreement in any respect. To the extent that this Stipulation and Order and the terms of the Toyota Production Agreement are inconsistent, the terms of the Toyota Production Agreement shall control.

[2] The Prepetition Term Lenders are party to that certain Credit Agreement, dated as of January 11, 2007, between Metaldyne Intermediate Holdco, Inc., Metaldyne Company LLC, as borrowers, certain lenders , JPMorgan Chase, as administrative agent and collateral agent, Citicorp, as syndication agent, and Deutsche Bank Securities, Inc., as documentation agent.

**WHEREAS,** certain customers of the Debtors who are also participants in the DIP Financing facility, including Chrysler, LLC; General Motors Corporation; Ford Motor Company; Nissan North America, Inc.; and Honda of America Mfg., Inc., have indicated that they have no objection to the Toyota Production Agreement; and

**WHEREAS,** the funds to be paid by Toyota under the Toyota Production Agreement are essential to the continued operation of the New Castle Facility; and

**WHEREAS,** Toyota purchases certain component parts (the "Component Parts") manufactured at the New Castle Facility, and Metaldyne Bluffton's Facility located in Bluffton, Indiana (the "Bluffton Facility," and, together with the New Castle Facility, the "Facilities") pursuant to various purchase orders issued by Toyota and accepted and agreed to by Supplier (the "Purchase Orders," and each individually a "Purchase Order");

**WHEREAS,** Metaldyne Bluffton has discontinued manufacturing Component Parts at the Bluffton Facility and seeks various payments from Toyota related to its prior production of Component Parts at such facility; and

**WHEREAS**, Toyota has requested that the Debtors continue to manufacture Component Parts at the New Castle Facility for a short period not to exceed 45 days (the "Production Period"), in order to facilitate the resourcing of the Component Parts manufactured at the New Castle Facility;

**WHEREAS,** to induce NC-M's continued operations at the New Castle Facility, Toyota has agreed to, among other things, the following salient terms:[3]

    a.    <u>Immediate Payments</u>:  Toyota has agreed to pay the amounts set forth in Section 2.1 of the Toyota Production Agreement for (a) accounts payable

---

[3] All capitalized terms contained in this section and not otherwise defined shall have the meaning ascribed to them in the Toyota Production Agreement.

4

arising prior to the Production Period; (b) certain inventory, including raw materials and work in process; (c) the direct production costs for the Component Parts and a portion of the overhead and carrying costs during the Production Period; and (d) certain corporate allocation and case costs.

    b.    Funding: The amounts provided for in Section 2.1 of the Toyota Production Agreement will be funded into an escrow account at BBK, Ltd., in full on, or as soon as reasonably practicable after, the Effective Date of the Toyota Production Agreement. During the Production Period, BBK, Ltd. shall pay to Supplier those items, and only those items, identified in Sections 2.1(a)(1), 2.1(b)(1)(i), 2.1(b)(1)(ii), 2.1(b)(2), 2.1(c)(1), and 2.1(c)(2) of the Toyota Production Agreement and with the written consent of Toyota, which shall not be unreasonably withheld, and after a request by NC-M, will transfer the budgeted cash requirements of NC-M into a designated, separate operating account for NC-M. Immediately upon expiration of the Production Period in arrears with any additional amounts to be funded by Toyota and any excess returned to Toyota, the Parties will "true-up" for certain other items.

    c.    Excess Inventory or Materials: Except as otherwise expressly provided in the Toyota Production Agreement, Toyota has not agreed to pay and shall not be obligated to pay any amounts on account of (i) claims arising under Section 503(b)(9) of the Bankruptcy Code or (ii) forgings, bolts, raw steel, perishable tooling and/or potential hostage payments. Notwithstanding the foregoing, Toyota has agreed to use its best efforts to facilitate the purchase or realization of value of certain NC-M's excess inventory as set forth in Section 2.3 of the Toyota Production Agreement.

    d.    Releases: Toyota has agreed to release and forever discharge NC-M from any and all claims (including any claims pertaining to the cessation of production at the New Castle Facility) with the exception of certain warranty obligations of supplier for Component Parts, as set forth in Section 11 of the Toyota Production Agreement.

**WHEREAS,** NC-M has agreed to, among other things, the following salient terms:

    a.    License: Supplier has granted Toyota and Toyota's assignee(s) or designee(s) an (a) irrevocable, fully paid, worldwide non-exclusive license to the Intellectual Property owned by Supplier, and (b) irrevocable sublicense to the Intellectual Property licensed to Supplier (to the extent that Supplier has the right to grant sublicenses therein) to make, have made, use, have used, modify, improve, prepare derivative works of, distribute, display, offer to sell, sell, import and do all other things and exercise all other rights in the licensed or sublicensed Intellectual Property for production of the Component Parts.

    b.     <u>Purchase Option</u>: NC-M has granted to Toyota and its respective designee(s), subject to the consent of any lender with a lien on the Supplier Owned Tooling or Designated Equipment, an irrevocable and exclusive option to purchase all or any Supplier Owned Tooling or all or any machinery or equipment that is owned by NC-M and is necessary or helpful to the manufacture of Component Parts for orderly liquidation value, as determined in accordance with the terms of the Toyota Production Agreement.

    c.     <u>Tooling Acknowledgment</u>: Supplier has agreed to acknowledge the ownership of certain tooling by Toyota.

    d.     <u>Resourcing Cooperation</u>: Supplier has agreed to cooperate with the resourcing of the production of the Components Parts immediately after the Effective Date.

    e.     <u>Releases</u>: Supplier, has agreed to release Toyota, on behalf of itself and its successors and assigns, but without prejudice to the rights of other parties in interest to assert claims, of any liability, excluding any claims under Chapter 5 of the Bankruptcy Code.

**Basis for Approval of the Stipulation and Order**

**WHEREAS,** the Parties to this Stipulation agree that the relief provided herein is authorized under Sections 363(b)(1) and 105 of the Bankruptcy Code.

**NOW, THEREFORE,** in consideration of the foregoing premises and of the mutual covenants and agreements hereinafter set forth, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     The Debtors are authorized to enter the Toyota Production Agreement on the terms set forth therein or terms substantially similar to those set forth therein.

2.     The Debtors are authorized to take all such actions as are necessary and appropriate to implement the terms the Toyota Production Agreement.

3.     This Court shall retain jurisdiction to resolve all matters relating to the implementation of this Stipulation and Order.

4. This Stipulation and Order shall be immediately effective and enforceable upon entry.

Dated: June 24, 2009
      New York, NY

| | |
|---|---|
| **FOLEY & LARDNER LLP** | **REED SMITH, LLP** |
| Conflicts Counsel to the Debtors and Debtors in Possession | Proposed Counsel for the Official Committee of Unsecured Creditors |
| 500 Woodward Avenue | 599 Lexington Avenue |
| Detroit, Michigan 48226 | New York, NY 10022 |
| Attention: Judy A. O'Neill | Attention: Mark D. Silverschotz |
| Telephone: (313) 234-7100 | Telephone: (212) 521-5400 |
| Facsimile: (313) 234-2800 | Facsimile: (212) 521-5450 |
| Email: JONeill@foley.com | E-mail: msilverschotz@reedsmith.com |
| | |
| /s/ Judy A. O'Neill_____ | /s/ Mark D. Silverschotz_____ |

SO ORDERED by the Bankruptcy Court this 30th day of June, 2009.

                                      *s/ Martin Glenn*
                                  UNITED STATES BANKRUPTCY JUDGE