**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                   :

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Metaldyne Corporation, *et al.,* | : Case No. 09-13412 (MG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

------------------------------------------------------------x

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion, dated June 15, 2009 (Docket No. 214), of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for, among other things, the entry of an order (the "Sale Order"), pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing and approving the sale of substantially all of the assets related to the Debtors' powertrain business group (the "Powertrain Assets") and authorizing the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith (the "Powertrain Sale Motion"); and the motion, dated June 25, 2009 (Docket No. 323), pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Rules 2002, 6004 and 6006 of the Bankruptcy Rules and Local Rules 2002-1, 6004-1, 6006-1 and 9006-1(b), authorizing and approving the sale of substantially all of the assets related to the Debtors' chassis business group

(the "Chassis Assets") and authorizing the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith (the "Chassis Sale Motion", and together with the Powertrain Sale Motion, the "Sale Motions")[1]; and the Court having taken into consideration this Court's prior order, dated June 25, 2009 (Docket No. 314) (the "Powertrain Bidding Procedures Order"), approving competitive bidding procedures for the Powertrain Assets (the "Powertrain Bidding Procedures"), both the Powertrain Bidding Procedures and the Powertrain Bidding Procedures Order having been amended by this Court's orders of July 20, 2009 (Docket No. 494) and July 28, 2009 (Docket No. 537); and the Court having taken into consideration this Court's prior order, dated July 8, 2009 (Docket No. 396) (the "Chassis Bidding Procedures Order"), approving competitive bidding procedures for the Chassis Assets (the "Chassis Bidding Procedures"); and all bidding procedures in these cases and amendments thereto collectively being the "Bidding Procedures"; and all bidding procedures orders in these cases and amendments thereto collectively being the "Bidding Procedures Orders"); the Court having permitted the Debtors to combine the auctions for the Powertrain Assets, the Chassis Assets and any other assets of the Debtors (the "Auction"); MD Investors Corporation ("MD Investors") having submitted a bid for the Powertrain Assets, the Chassis Assets, and substantially all of the assets related to the Debtors' balance shaft modules business group (the "BSM Assets") and tubular business group (the "Tubular Assets", and all such assets of the Debtors to be acquired, the "Assets"); the Auction having taken place in accordance with the Bidding Procedures on August 5 and 6, 2009; MD Investors having been chosen by the Debtors as the Successful Bidder at the Auction; the Court having conducted a hearing on the

---

[1]      Unless otherwise stated, capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Sale Motions or in the Agreement (defined below), as indicated by the context.

Sale Motions on August 7, 2009 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motions; the Court having reviewed and considered (i) the Sale Motions and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of August 7, 2009 (the "Agreement"), substantially in the form attached hereto as Exhibit 1, by and between MD Investors and Metaldyne Corporation ("Metaldyne"), whereby certain of the Debtors (collectively, the "Sellers") have agreed, among other things, to sell the Assets to MD Investors (the "Sale Transaction") and to assume and assign to MD Investors certain executory contracts and unexpired leases of the Debtors in connection with the Sale Transaction (collectively, the "Debtor Contracts"); (iii) the Memorandum of Law in Support of the Debtors' Request for an Order Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances (Docket No. 640); (iv) all objections to the Sale Transaction filed in accordance with the Bidding Procedures Orders, (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motions, the Bidding Procedures Orders and the Auction has been provided in accordance with the Bidding Procedures Orders; and it appearing that the relief requested in the Sale Motions is in the best interests of the Debtors, their estates and creditors and all parties in interest in these cases; and upon the record of the Sale Hearing and these cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby **FOUND AND DETERMINED THAT:**

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

      A.     This Court has jurisdiction over the Sale Motions, the transactions contemplated by the Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Sale Motions in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  **Pursuant to Bankruptcy Rules 6004(h) and 6006(d), effectiveness of this Sale Order is stayed until Wednesday, August 19, 2009, at 1:00 p.m.**  ~~Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and the closing of the Sale Transaction, and expressly directs entry of judgment as set forth herein.~~[2]

C.     The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

<u>SOUND BUSINESS PURPOSE</u>

D.     The Debtors seek to convey the Assets, consisting of the Powertrain Assets, the Chassis Assets, the BSM Assets and the Tubular Assets, all of which are more fully described in the Agreement.

E.     The Debtors have (1) demonstrated good, sufficient, and sound business purposes and justifications for the Sale Transaction, (2) appropriately exercised their business judgment by entering into the Sale Transaction and (3) demonstrated compelling circumstances for entry into the Sale Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the value of the Assets would be harmed by any delay of the Sale Transaction.  Business justifications for the Sale Transaction

---

[2]     Underlined language in bold (other than headings) was added by the Court to the proposed order submitted by Debtors' counsel.  Language shown with strike-through was deleted by the Court from the proposed order.

include the facts that (i) there is substantial risk of deterioration of the value of the Assets if the Sale Transaction is not consummated quickly; (ii) the Agreement constitutes the highest or best offer for the Assets; (iii) the Agreement presented the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the Sale Transaction is concluded expeditiously as provided in the Agreement, creditors' recoveries may be diminished. Time is of the essence in consummating the proposed Sale Transaction.

### HIGHEST AND BEST OFFERS

F.     The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets. The Debtors conducted an Auction in accordance with the Bidding Procedures Orders and complied with those orders in all respects. The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner. MD Investors participated in the Auction and complied with the Bidding Procedures Orders.

G.     As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, (1) the Debtors have adequately marketed the Assets; (2) the purchase price contained in the Agreement constitutes the highest and best offer for the Assets and provides fair and reasonable consideration therefor; (3) the Sale Transaction will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, including competing bids for the Assets; (4) no other party has offered to purchase the Assets for greater economic value to the Debtors or their estates; and (5) the consideration to be paid by MD Investors under the Agreement constitutes reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia.

H.     MD Investors was the Successful Bidder for the Assets in accordance with the Bidding Procedures and Bidding Procedures Orders.  The process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest and best value for the Assets for the Debtors and their estates.

I.     MD Investors has provided the Debtors with a deposit in an amount equal to $3.5 million of the initial cash consideration contemplated by the Agreement (such amount, the "Good Faith Deposit"), which Deposit is currently being held by Wells Fargo Bank, National Association (the "Escrow Agent") in an interest-bearing account.

## BEST INTEREST OF CREDITORS

J.     Approval of the Agreement and the consummation of the Sale Transaction with MD Investors at this time are in the best interests of the Debtors, their creditors, their estates and all parties in interest.

## GOOD FAITH

K.     The Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Sellers and MD Investors in good faith, without collusion and from arm's-length bargaining positions.  MD Investors is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Sellers nor MD Investors has engaged in any conduct that would cause or permit the Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

## NOTICE OF THE SALE MOTION, THE AUCTION AND THE CURE AMOUNTS

L.     As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Motions and the Sale Hearing was provided by the Debtors; (2) such notice was good, sufficient and appropriate under the particular

circumstances; and (3) no other or further notice of the Sale Motions, the proposed Sale

Transaction, the Bidding Procedures, the Auction or the Sale Hearing is or shall be required.  A

reasonable opportunity to object or be heard with respect to the Sale Motions and the relief

requested therein was afforded to all interested persons and entities, including, but not limited to:

> (i) counsel to the Creditors' Committee;

> (ii) counsel to the Debtors' postpetition lenders and customers;

> (iii) counsel to JPMorgan Chase, N.A., as agent for the Debtors' Prepetition Term Loan Facility;

> (iv) counsel to Deutsche Bank, A.G., New York, as agent for the Debtors' prepetition asset-backed secured revolving credit facility and as agent and lender under the Debtors' postpetition financing facility;

> (v) counsel to The Bank of New York Trust Company, N.A., in its capacity as the indenture trustee for the remaining outstanding Notes;

> (vi) any party who, in the past year, expressed in writing to the Debtors an interest in the Assets;

> (vii) nondebtor parties to the Debtor Contracts;

> (viii) all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Assets;

> (ix) the Securities and Exchange Commission;

> (x) the Internal Revenue Service;

> (xi) all applicable state attorneys general and local environmental enforcement agencies;

> (xii) all applicable state and local taxing authorities;

> (xiii) the Office of the United States Trustee for the Southern District of New York;

> (xiv) the Federal Trade Commission;

> (xv) the United States Attorney General/Antitrust Division of the Department of Justice;

> (xvi) the Environmental Protection Agency;

(xvii)   the United States Attorney; and

(xviii)  all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002.

M.      Additionally, the Debtors published notice of the Sale Motions in the national edition of the *Wall Street Journal* and in the *Detroit Free Press*.  With regard to parties who have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the Court finds that such publication notice was sufficient and reasonably calculated under the circumstances to reach such parties.

N.      In accordance with the provisions of the Bidding Procedures Orders, the Debtors have served notice of their intent to assume and assign the Debtor Contracts and of the related proposed Cure Costs (the "Contract and Cure Schedule") upon each nondebtor counterparty to the Debtor Contracts identified on Exhibit 2 attached hereto prior to the Sale Hearing and in accordance with the Bidding Procedures Orders.  The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the Debtor Contracts listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts identified on Exhibit 2.  All nondebtor parties to the Debtor Contracts identified on Exhibit 2 have had a reasonable opportunity to object to both the Cure Costs listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts.

### SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALES

O.      The Debtors may sell the Assets free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, interests and encumbrances of any kind or nature whatsoever, including, specifically and without limitation, those liens identified on Exhibit 3 attached hereto and any products liability claims, environmental

liabilities, employee pension or benefit plan claims, retiree benefit or medical claims and any successor liability claims (collectively, "Claims") (except for any Assumed Liabilities), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims who did not object, or who withdrew their objections, to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale Transaction, subject to any defenses of the Debtors. All persons having Claims of any kind or nature whatsoever against any of the Debtors or the Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against MD Investors or any of its assets, property, successors, assigns, or the Assets (other than Assumed Liabilities).

        P.      MD Investors would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, if the sale of the Assets were not free and clear of all Claims relating to the Assets, the operation of the Assets prior to Closing or the transfer of the Assets, other than Assumed Liabilities, or if MD Investors would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities (collectively, the "Excluded Liabilities") related to the Debtors' businesses that will not be assumed by MD Investors, as described in the Agreement.

**ASSUMPTION AND ASSIGNMENT OF THE DEBTOR CONTRACTS**

Q. The assumption and assignment of the Debtor Contracts are integral to the Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

R. With respect to each of the Debtor Contracts, except those subject to an objection that has been adjourned to a later hearing before the Court (the "Objection Contracts") and the Additional Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code. Further, other than with respect to adjourned objections that raised adequate assurance of future performance arguments, MD Investors has provided all necessary adequate assurance of future performance under the Debtor Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Debtor Contracts (other than the Objection Contracts) may be assumed by the Debtors and assigned to MD Investors, as provided for in and, in the case of the Additional Contracts, subject to compliance with, the Bidding Procedures Orders, the Sale Motions and the Agreement.

**VALIDITY OF THE TRANSFER**

S. As of the closing of the Sale Transaction (the "Closing"), the transfer of the Assets to MD Investors will be a legal, valid and effective transfer of the Assets, and will vest MD Investors with all right, title and interest of the Debtors in and to the Assets, free and clear of (1) all Claims relating to the Assets, the operation of the Assets prior to Closing, or the transfer of the Assets, other than Assumed Liabilities, and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtors, claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession

thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

T.      The Debtors (1) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors, (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (3) have taken all actions necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby and (4) have all consents and approvals, other than those expressly provided for in the Agreement, that are required for the Debtors to consummate such transactions.  The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

## CREDIT BID

U.      As set forth in the Agreement, pursuant to the Direction Letter, the Prepetition Term Loan Agent has been instructed by the Required Lenders to submit the Bid, including without limitation the credit bid of all claims and Obligations (under and as defined in the Credit Agreement) of Secured Parties (as defined in the Credit Agreement), which (i) shall be in the aggregate equal no less than $425,000,000 as of the date of the Agreement, as adjusted upwards to reflect all funded Obligations prior to, or subsequent to, the Closing Date, and (ii) for the avoidance of doubt, shall not include in any respect any rights, of the Term Lenders party to the Credit Agreement, to funds currently held in the Deposit Account (as defined in the Credit Agreement), except to the extent such amounts become funded Obligations (the "Credit Bid").

V.	All funded Obligations under the Credit Agreement, which in the aggregate equal no less than $425,000,000 as of the date of the Agreement, as adjusted upwards to reflect all funded Obligations prior to, or subsequent to, the Closing Date, constitute, solely for purposes of section 363(k) of the Bankruptcy Code, an allowed secured claim pursuant to section 506(a) of the Bankruptcy Code (the "<u>Allowed Secured Claim</u>").  The Prepetition Term Loan Agent was authorized to submit the Credit Bid at the Auction.

W.	The Credit Bid was a valid and proper offer pursuant to sections 363(b) and 363(k) of the Bankruptcy Code.  Upon closing of the Sale Transaction, the effect of the Credit Bid will be that the Term Lenders shall have no further Claims against the Debtors' estates or the Assets.

X.	**<u>Notwithstanding any other provision contained in the Agreement or Sale Order, the Sale Transaction shall be free and clear of all liens, claims, encumbrances, and other interests of any kind or nature, including rights or claims based on any successor or transferee liability, to the fullest extent permitted by law, and all such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (except for liens or interests of the Prepetition Term Lenders), shall attach to the net proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect that they now have as against Assets, subject to any claims and defenses a Seller or any other party in interest may possess with respect thereto.</u>**  ~~On account of the Credit Bid, each Term Lender will receive the same treatment relating to the purchase of the Assets.~~

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>GENERAL PROVISIONS</u>

1.      The Sale Motions are granted as set forth herein, and the Sale Transaction is approved as set forth in this Sale Order.

2.      The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      All objections, if any, to the Sale Motions or the relief requested therein that have not been withdrawn, waived, settled or adjourned as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.  **The Objections of BDC Finance, L.L.C. to Findings of Fact and Rulings of Law Embedded in Proposed Sale Order, dated August 11, 2009 (ECF Doc. #670); and the Request of BDC Finance L.L.C. . Pursuant to Bankruptcy Rule 7052 for Findings of Fact and Rulings of Law (ECF Doc. #668), to the extent not reflected in this Sale Order or in the Memorandum Opinion Granting Debtors' Motion to Approve Sale of Substantially All of the Debtors' Assets to MD Investors Corp., are expressly overruled.**

4.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

5.      The sale of the Assets and the consideration provided by MD Investors under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

### APPROVAL OF THE AGREEMENT

6.      The Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

7.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Order.

8.      The Debtors, as well as their affiliates, officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement, the Agreement, in substantially the same form as the Agreement attached hereto as Exhibit 1, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be (a) reasonably requested by MD Investors for the purpose of assigning, transferring, granting, conveying and conferring to MD Investors, or reducing to possession, the Assets or (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, all without further order of the Court.

### TRANSFER OF ASSETS FREE AND CLEAR

9.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets in accordance with the terms of the Agreement. The Assets shall be transferred to MD Investors, and upon consummation of the Agreement,

such transfer shall (a) be valid, legal, binding and effective; (b) vest MD Investors with all right, title and interest of the Debtors in the Assets; and (c) be free and clear of all Claims relating to the Assets, the operation of the Assets prior to Closing, or the transfer of Assets, except for Assumed Liabilities, with all Claims to attach to the net proceeds of the Sale Transaction, in the order of their priority and with the same validity, force and effect which they now have against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto. In particular, at the Closing, the Liens in favor of or for the benefit of the Prepetition ABL Agent and the DIP Agent on the Assets shall attach to the proceeds of the sale of the Assets in the same order of priority.

10.     At the Closing, the proceeds from the sale of the Assets attributable to the DIP Collateral shall be used first to indefeasibly pay (and shall be paid directly to) the Prepetition ABL Agent for application to the Prepetition ABL Obligations and the DIP Obligations in accordance with the terms of the Final DIP Order (as defined below) and the Prepetition ABL Loan Documents.  Capitalized terms used in this paragraph but not defined in this **Sale** Order are defined in the Final DIP Order.

11.     Except as otherwise provided in the Agreement, all persons and entities (and their respective successors and assigns) including all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Claims except for Assumed Liabilities, arising under or out of, in connection with, or in any way relating to the Assets, the operation of the Assets prior to Closing, or the transfer of the Assets free and clear under section 363(f) of the Bankruptcy Code to MD Investors, are hereby forever barred, estopped and permanently enjoined from asserting such Claims against MD Investors, its successors or assigns, its property or the Assets.  No such persons or entities shall assert against

MD Investors or their successors in interest any such Claim arising from, related to or in connection with the Assets or the ownership or operation of the Assets prior to the Closing, except for Assumed Liabilities.

12.     Unless expressly preserved by the Agreement, this Sale Order (a) shall be effective as a determination that, as of Closing, all Claims relating to the Assets, the operation of the Assets prior to Closing, or the transfer of the Assets, other than Assumed Liabilities relating to the Assets have been unconditionally released, discharged and terminated as to the Assets, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.  For the avoidance of doubt, to the extent of any inconsistency between this paragraph and the Agreement with respect to the Greensboro CBA Option, the terms of the Agreement shall govern.

13.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Assets, including but not limited to those identified in Exhibit 3, shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Assets or otherwise, then with regard to Assets that are purchased by MD Investors pursuant to the Agreement and this Sale Order (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) MD Investors is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Assets other than the Assumed Liabilities. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

14.     All persons or entities in possession of some or all of the Assets are directed to surrender possession of such assets to MD Investors or its designee at the time of Closing of the Sale Transaction.

15.     Following the Closing of the Sale Transaction, no holder of any Claim relating to the Assets, the operation of the Assets prior to Closing, or the transfer of the Assets shall interfere with MD Investors' title to or use and enjoyment of the Assets based on or related to any such Claim or based on any actions the Debtors may take in their chapter 11 cases.

16.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to MD Investors in accordance with the Agreement and this Sale Order.

### ASSUMPTION AND ASSIGNMENT OF DEBTOR CONTRACTS

17.     In accordance with the Agreement and the Bidding Procedures Orders, the Debtors will file one or more amended or supplemental Contract and Cure Schedules adding or

removing Debtor Contracts thereto (any such added contract, an "<u>Additional Contract</u>"), and shall provide notice to each affected counterparty of the proposed removal of Debtor Contracts or assumption and assignment of the Additional Contracts and of any Cure Costs associated therewith. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to MD Investors of the Debtor Contracts designated as Additional Contracts in accordance with the Agreement and the Powertrain Bidding Procedures Order is hereby approved, and, subject to further notice in accordance with this paragraph and compliance with the Bidding Procedures Orders, all requirements of section 365 of the Bankruptcy Code with respect thereto are hereby determined to have been satisfied.

18.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Debtor Contracts to MD Investors free and clear of all liens, encumbrances and interests not specified in such Debtor Contract, and to execute and deliver to MD Investors such documents or other instruments as may be necessary to assign and transfer the Debtor Contracts to MD Investors as provided in the Agreement.

19.     The Debtor Contracts shall be transferred to, and remain in full force and effect for the benefit of, MD Investors in accordance with their respective terms, including all obligations of MD Investors as the assignee of the Debtors Contracts, notwithstanding (i) any provision in any such Debtor Contract (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer; or (ii) any provision of this Order that may otherwise limit, amend or alter the obligations of MD Investors as assignee of all the rights and obligations of the Debtor Contracts. There shall be no rent accelerations, assignment fees, increases or any other fees charged to MD Investors or the Debtors as a result of the assumption or assignment of the Debtor

Contracts.  No Debtor Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

20.     The Cure Costs under the Debtor Contracts arising or accruing prior to the date of this Sale Order shall be determined in accordance with the procedures set forth in the Powertrain Bidding Procedures Order.  Subject to the terms of the Agreement,  the Cure Costs shall be paid by MD Investors at the Closing of the Sale Transaction.

21.     Payment of the Cure Costs shall be in full satisfaction of any and all defaults under the Debtor Contracts, whether monetary or non-monetary.  Each pre-Closing (as such term is defined in the Agreement) nondebtor party to a Debtor Contract identified on Exhibit 2 hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or MD Investors, its successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

22.     The failure of the Debtors or MD Investors to enforce at any time one or more terms or conditions of any Debtor Contract shall not be a waiver of such terms or conditions, or of the Debtors' and MD Investors' rights to enforce every term and condition of the Debtor Contracts.

23.     Upon the Closing of the Sale Transaction, MD Investors shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Debtor Contracts for which notice was given under the Bidding Procedures Order and the time to respond had expired.

24.     Notwithstanding the above, the provisions of this Sale Order shall not apply to an Objection Contract unless and until the objection regarding the assumption and

assignment of such Objection Contract is resolved by the parties or further order of the Court. Upon such resolution, the applicable Objection Contract shall no longer be considered an "Objection Contract," and, except as otherwise provided in such resolution, the findings, terms and provisions of this Sale Order with respect to the Debtor Contracts shall fully apply to such contract.

**RESOLUTION OF OBJECTIONS AND OTHER ISSUES**

25.     The Information Technology Service Agreement of Perot Systems (the "ITSA Contract") is an Objection Contract, and MD Investors reserves all rights, if any, with respect thereto.  Nothing in this Order shall modify any right or obligation of the Debtors or Perot Systems to perform (or withhold performance) under the "ITSA Contract" for any entity other than the Debtors or shall modify any right or obligation of Perot Systems (a) to provide (or withhold provision) of any transition services to the Debtors without the Debtors first satisfying the prerequisites for such services under the ITSA Contract, (b) to permit the sublicense of Perot Systems' or a third party's intellectual property under the ITSA Contract or (c) to transfer the benefit of such services to MD Investors, without the prior consent of Perot Systems.  This Order is without prejudice to the objections raised by Perot Systems, including its objection concerning preservation of the confidentiality of certain information as set forth in the ITSA Contract.  The hearing on the objections of Perot Systems to the sale of the Assets shall be heard on August 20, 2009, at 2:00 p.m. (ET), or on such other date prior to the Closing as may be scheduled by the Court.

26.     Notwithstanding any contrary provisions or language which may be contained in the equipment leases (No. MGE-03540 and No. MGE-03669) dated December 18, 2004 and June 13, 2005 (the "MAC Leases") between Metaldyne Sintered Components, LLC,

one of the Debtors, and MAC Funding Corporation ("MAC") relative to two Mitsubishi brand

EDM machines and related equipment (the "MAC Equipment"), the MAC Leases shall not be

deemed to be leases in the nature of a security agreement, and the MAC Equipment shall not be

deemed to be subject to any ownership rights of the Debtors.  Any sale of the Assets pursuant to

this Order shall exclude the MAC Equipment.  Notwithstanding the foregoing, MD Investors

may elect to take assignment of the MAC Leases pursuant to section 365 of the Bankruptcy

Code.

        27.     Notwithstanding anything to the contrary in this Sale Order, the

Agreement or the Transition Services Agreement (the "TSA"), (a) the hearing on the objection

filed by Oracle USA, Inc. (Docket Entry No. 586) is hereby adjourned to August 20, 2009 (the

"Adjourned Date") and all parties' rights are reserved to the Adjourned Date and (b) none of the

agreements, licenses or executory contracts between one or more of the Debtors, on the one

hand, and Oracle (or any of its predecessor-in-interest (collectively, "Oracle")), on the other

hand, (collectively, the "Oracle Agreements"), shall be assumed or assumed and assigned to MD

Investors absent (i) a further order of the Court following the Adjourned Date or any further

adjourned dates, or (ii) upon stipulation between the Debtors, Oracle and MD Investors.

        28.     Upon the execution of the letter agreement between the International

Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the

"UAW") and MD Investors, dated as of August 7, 2009 (as it may be amended by the parties

thereto) regarding Metaldyne's St. Mary's, Pennsylvania, Greensboro, North Carolina and

Fremont, Indiana facilities, the UAW Limited Objections (Docket Nos. 578 and 589) shall be

deemed withdrawn as to MD Investors.

## SETTLEMENT WITH CREDITORS' COMMITTEE

29.     At or before the closing of the sale to MD Investors, MD Investors shall deposit in escrow $2.5 million, which funds shall be paid (immediately upon the effective date of confirmation) to a liquidating trustee, litigation trustee, plan disbursing agent, or (in the absence of any of the foregoing) a similar estate representative under Section 1123(b) of the Bankruptcy Code (each a "Representative") solely for distribution to holders of allowed nonpriority unsecured claims ("General Unsecured Claims") on account of such claims and/or funding a suitable liquidation or litigation trust, all in a manner reasonably satisfactory to the Creditors' Committee.

30.     MD Investors shall have a right (by entry of this Order) to receive fifty (50) percent of the net cash proceeds recovered, after payment of, inter alia, costs of administration, liquidation, or otherwise (such costs to be allocated ratably to 100% of the value recovered) from the assets remaining in Debtors' estate following the Closing (the "Remain Co Assets") that, but for such payment, otherwise would be distributed to holders of General Unsecured Claims on account of such claims.  By way of illustration only and not as any limitation, such assets include the Debtors' right, title and interest in (i) leaseholds, property, plant and/or equipment, and all other operating assets at its facilities at Niles, Middleville and New Castle and (ii) the equity interests in Metaldyne Machining & Assembly Mfg. Co. (Canada) Ltd.; provided, however, that such assets shall not include any causes of action held by the Debtors' estates, including without limitation, claims arising under chapter 5 of the Bankruptcy Code, or similar causes of action arising under state law.

## ADDITIONAL PROVISIONS

31.     Promptly after the entry of this Sale Order, the Debtors shall serve a copy of this Sale Order upon any known party with an interest in the BSM Assets and the Tubular

Assets that did not previously receive notice of the Sale Motions (the "Unserved Parties"). The provisions of this Sale Order shall apply to an Unserved Party within 10 days after service of this Sale Order on such Unserved Party if no action is taken by an Unserved Party with respect to its interest in the Assets within such 10 day time frame.

32.     Notwithstanding anything to the contrary set forth in this **Sale** Order, the Agreement,  or any other document, agreement, or instrument executed in connection herewith or therewith, (a) the DIP Collateral shall not be transferred free and clear of, as the case may be, (i) the Prepetition Liens or the Adequate Protection Replacement Liens, in each case in favor of the Prepetition ABL Secured Parties, or (ii) the DIP Liens, unless and until the Prepetition ABL Obligations and the DIP Obligations are, respectively, indefeasibly paid in full in cash at Closing, (b) unless and until such payment in full, all such liens shall remain in full force and effect on such property and be fully enforceable, and (c) the Prepetition ABL Secured Parties and the DIP Secured Parties are not waiving and shall not be deemed to have waived any Event of Default and fully reserve (and may immediately exercise) all of their rights and remedies under the Final DIP Order, the Prepetition ABL Facility, the Prepetition ABL Credit Agreement, the Prepetition ABL Security Documents and applicable law, including with respect to the Prepetition Liens, Adequate Protection Replacement Liens and DIP Liens.  For the avoidance of doubt, neither MD Investors nor the Debtors are waiving and shall not be deemed to have waived any breach of the Agreement by the Debtors or MD Investors from and after the date of the Sale Order, as the case may be, and each fully reserves all of their respective rights and remedies under the Agreement, including if the Debtors are unable to deliver the Assets free and clear in accordance with this **Sale** Order.  Capitalized terms used in this paragraph but not defined in this **Sale** Order are defined in the Final DIP Order.

33. Except as expressly set forth in the Agreement, MD Investors and its successors or assigns shall have no liability for any liability, Claim, damages or other obligation of or against the Debtors related to the Assets by reason of the transfer of the Assets to MD Investors. MD Investors shall not be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to obligations assumed under the Debtor Contracts from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

34. This Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes related to this Sale Order or the Agreement.

35. Nothing in this Sale Order shall be interpreted to deem MD Investors as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the Closing or for liabilities relating to off-site disposal of wastes by the Debtors prior to the Closing or relating to any property or facility owned or operated by the Debtors that is not part of the Assets.

36. No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Agreement, the Sale Motions and this Sale Order.

37.     The transactions contemplated by the Agreement are undertaken by MD Investors in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall not affect the validity of the Sale Transaction and the transfer of the Assets to MD Investors, unless such authorization is duly stayed pending such appeal.

38.     The terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, MD Investors, and its respective affiliates, successors and assigns, and any affected third parties including all persons asserting Claims in the Assets to be sold to MD Investors pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee, examiner or receiver.

39.     ~~Except with respect to successor liability pursuant to paragraphs 33 and 35 of this Order and except as set forth herein with respect to the free and clear nature of the sale of the Assets to MD Investors in the Sale Transaction,~~ **N**othing in the Agreement or this **Sale** Order ~~shall be construed to~~ **is intended to limit or in any way** impair the rights or ~~claims~~ **remedies**, if any, of BDC Finance L.L.C. **with respect to the Agent, the Term Lenders, or MD Investors, except that the transferred Assets are free and clear of any lines or interests** ~~arising under or in connection with the Loan Documetns (as defined in the Credit Agreement) or the allocation of the proceeds thereof against the Prepetition Term Loan Agent or MD Investors~~.

40.     The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

41.     The Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Agreement.

42.     In the event that there is a direct conflict between the terms of this Sale Order and the Agreement, the terms of this Sale Order shall control.

43.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

44. Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by any Debtor as a result of the performance of any obligation or taking of any other action contemplated by the Agreement, including, without limitation, as a result of the actions described in Schedule 4.02 to the Agreement, any other intercompany debt releases in favor of any Debtor that are contained in the Agreement, and any discharge or release of indebtedness, including Prepetition Term Obligations, owed by the Debtors to MD Investors or the Prepetition Term Lenders (as such terms are defined in Final DIP Order or the Agreement, as applicable) as result of the Agreement, is hereby granted by the Court.

45. Nothing in this Sale Order, the Agreement or any other document or agreement entered into in connection with this Sale Order or the Agreement is intended to, or shall, affect, in any manner, any of the provisions of (a) the Accommodation Agreement (defined in and as authorized, approved and amended by the interim debtor-in-possession financing order entered on May 29, 2009 (Docket No. 78) and the stipulated orders entered on June 12, 2009 (Docket No. 182), on July 20, 2009 (Docket No. 457) and on or about August 10, 2009 (Docket No. 655) or (b) the final debtor-in-possession financing order entered on June 23, 2009 (Docket No. 296) (as modified through the date hereof, the "Final DIP Order").

46. Pursuant to Section XIII of the Bidding Procedures Orders, the Good Faith Deposits of the Next Highest Bidders for the powertrain assets and the chassis assets individually, specifically ACOF MD Holdings Ltd. and Chassis Products, LLC., shall be released upon the earlier of (a) four business days after the closing of the Sale Transaction or (b) the withdrawal of the Assets for sale by the Debtors.

47. **Pursuant to Bankruptcy Rules 6004(h) and 6006(d), effectiveness of this Sale Order is stayed until Wednesday, August 19, 2009, at 1:00 p.m.** ~~Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the Debtors and MD Investors are authorized to close the Sale Transaction immediately upon entry of this Sale Order.~~

Dated:  August 12, 2009
          New York, New York

                           **/s/Martin Glenn**
                             MARTIN GLENN
            United States Bankruptcy Judge

**EXHIBIT 1**

**AGREEMENT**

**EXHIBIT 2**

**NOTIFIED COUNTERPARTIES TO DEBTOR CONTRACTS**

# EXHIBIT 3

## NON-EXCLUSIVE LIST OF RELEASED LIENS