**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------- x     **Chapter 11**

**In re**                                                  :     **Case No. 09-13412 (MG)**

**Oldco M Corporation (f/k/a Metaldyne Corporation), et al.,**     :     **(Jointly Administered)**
         **Debtors.**

                                                                   :

---------------------------------------------------------------------------- x


**SECOND AMENDED JOINT PLAN OF LIQUIDATION OF DEBTORS AND DEBTORS IN POSSESSION**

_____

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Richard H. Engman

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox
Ryan T. Routh

Attorneys for Debtors
 and Debtors in Possession

Date Proposed Plan Filed with Court:
       January 11, 2010

**TABLE OF CONTENTS**

Page

ARTICLE I.     DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME.......... 1
    A.    Defined Terms ....................................................................................................... 1
    B.    Rules of Interpretation and Computation of Time ............................................... 11
        1.    Rules of Interpretation ............................................................................. 11
        2.    Computation of Time ............................................................................... 11

ARTICLE II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .............................. 11
    A.    Unclassified Claims ............................................................................................. 11
        1.    Payment of Administrative Claims ........................................................... 11
        2.    Payment of Priority Tax Claims ............................................................... 13
    B.    Classified Claims and Interests ........................................................................... 13
        1.    Priority Claims (Class 1 Claims) .............................................................. 13
        2.    Secured Claims (Class 2 Claims) .............................................................. 13
        3.    Customer Note Claims (Class 3 Claims) ................................................... 13
        4.    General Unsecured Claims  (Class 4 Claims) ............................................ 13
        5.    Prepetition Intercompany Claims (Class 5 Claims) ................................... 13
        6.    Subordinated Securities Claims (Class 6 Claims) ..................................... 14
        7.    Old Common Stock of Oldco M (Class 7 Interests) .................................. 14
        8.    Subsidiary Debtor Equity Interests (Class 8 Interests) .............................. 14
    C.    Impact of Classification of Claims on Subordination Rights ................................ 14
    D.    Special Provisions Relating to the Rights of Setoff of Creditors .......................... 14
    E.    Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims; Maximum Recovery ............................................................................................ 15
    F.    Sources of Payment of Certain Claims ................................................................ 15
    G.    Cramdown ............................................................................................................ 15

ARTICLE III.   MEANS FOR IMPLEMENTATION OF THE PLAN ................................................... 15
    A.    Corporate Existence ............................................................................................. 15
    B.    Dissolution Transactions ...................................................................................... 15
        1.    Dissolution Transactions Generally .......................................................... 15
        2.    Recourse Solely to Distribution Trust Assets ........................................... 16
    C.    Distribution Trust ................................................................................................. 16
    D.    Corporate Governance, Directors and Officers .................................................... 20
    E.    No Revesting of Assets ........................................................................................ 20
    F.    Creation and Maintenance of Trust Accounts ..................................................... 20
    G.    Preservation of Causes of Action; Settlement Agreements and Releases; Exculpation ............... 21
        1.    Preservation of Causes of Action; Recovery Actions ................................ 21

**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| | 2. | Comprehensive Settlement of Claims and Controversies ................................. 21 |
| | 3. | Releases .................................................................................................... 21 |
| | 4. | Exculpation ............................................................................................... 22 |
| H. | | Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims.................... 22 |
| I. | | Cancellation and Surrender of Instruments, Securities and Other Documentation ...................... 22 |
| J. | | Release of Liens ......................................................................................................... 23 |
| K. | | Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes........... 23 |
| L. | | Implementation of Settlement with MD Investors ............................................................ 23 |
| M. | | Substitution in Pending Legal Actions............................................................................ 23 |
| ARTICLE IV. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 24 |
| A. | | Rejection of Executory Contracts and Unexpired Leases .................................................. 24 |
| B. | | Contracts and Leases Entered Into After the Petition Date ............................................... 24 |
| C. | | Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases........ 24 |
| D. | | Payments Related to the Assumption of Executory Contracts and Unexpired Leases.................. 25 |
| | 1. | Assumption and Assignment Generally............................................................ 25 |
| | 2. | Assignments to Distribution Trust ................................................................. 25 |
| | 3. | Approval of Assumptions and Assumption Procedures........................................ 25 |
| ARTICLE V. | | PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 26 |
| A. | | Distributions for Claims Allowed as of the Effective Date................................................. 26 |
| B. | | Method of Distributions to Holders of Claims................................................................. 26 |
| C. | | Compensation and Reimbursement for Services Related to Distributions................................ 26 |
| D. | | Investment of Trust Accounts ...................................................................................... 26 |
| E. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions................................ 27 |
| | 1. | Delivery of Distributions ............................................................................ 27 |
| | 2. | Undeliverable Distributions Held by Disbursing Agents................................... 27 |
| F. | | Distributions on Account of Allowed Claims in Class 1 and Class 2 ........................... 27 |
| G. | | Distributions on Account of Certain Noteholder Claims in Class 4............................... 27 |
| | 1. | Status of Indentures; Role of 2012 Indenture Trustee and 2013 Indenture Trustee........ 27 |
| | 2. | Implementation of Indenture Provisions and Subordination Rights .............................. 28 |
| H. | | Selection of Distribution Dates for Class 3 Claims and Class 4 Claims and Provision of Notice Thereof ............................................................................................................ 29 |
| I. | | Calculation of Amounts to Be Distributed to Holders of Class 3 Claims and Class 4 Claims ................................................................................................................... 29 |
| J. | | Other Provisions Applicable to Distributions in All Classes ....................................... 30 |
| K. | | Distribution Record Date .............................................................................. 30 |

|  |  |  |  |
|---|---|---|---|
| L. |  | Means of Cash Payments | 31 |
| M. |  | Surrender of Canceled Instruments or Securities | 31 |
| N. |  | Setoffs | 31 |
| ARTICLE VI. |  | PROCEDURES FOR RESOLVING DISPUTED CLAIMS | 31 |
| A. |  | Treatment of Disputed Claims | 31 |
|  | 1. | Tort Claims | 31 |
|  | 2. | No Distributions Pending Allowance | 31 |
| B. |  | Objections to Claims | 32 |
|  | 1. | Authority to Prosecute | 32 |
|  | 2. | Pending Objections | 32 |
|  | 3. | Application of Bankruptcy Rules | 32 |
|  | 4. | Authority to Amend Schedules | 32 |
|  | 5. | Request for Extension of Claims Objection Bar Date | 32 |
| C. |  | Distributions on Account of Disputed Class 4 Claims Once Allowed | 32 |
| ARTICLE VII. |  | SUBSTANTIVE CONSOLIDATION | 33 |
| A. |  | Substantive Consolidation of the Debtors | 33 |
| B. |  | Order Granting Substantive Consolidation | 33 |
| ARTICLE VIII. |  | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN; EFFECT OF CONFIRMATION | 33 |
| A. |  | Conditions to Confirmation | 33 |
| B. |  | Conditions to the Effective Date | 34 |
| C. |  | Waiver of Conditions to Confirmation or the Effective Date | 34 |
| D. |  | Effect of Nonoccurrence of Conditions to the Effective Date | 34 |
| E. |  | Request for Waiver of Stay of Confirmation Order | 34 |
| ARTICLE IX. |  | RETENTION OF JURISDICTION | 34 |
| ARTICLE X. |  | MISCELLANEOUS PROVISIONS | 36 |
| A. |  | Modification of the Plan | 36 |
| B. |  | Revocation of the Plan | 36 |
| C. |  | Severability of Plan Provisions | 36 |
| D. |  | Dissolution of Creditors' Committee | 36 |
| E. |  | Successors and Assigns | 36 |
| F. |  | Service of Documents | 36 |
|  | 1. | Counsel to the Debtors | 36 |
|  | 2. | The Distribution Trustee | 37 |
|  | 3. | Counsel to the Creditors' Committee | 37 |

**TABLE OF CONTENTS**
(continued)

**Page**

4.      Counsel to the 2012 Indenture Trustee ........................................................................ 37

5.      Counsel to the 2013 Indenture Trustee ........................................................................ 38

6.      Counsel to Asahi Tec Corporation ............................................................................... 38

7.      Counsel to RHJI .......................................................................................................... 38

**TABLE OF EXHIBITS**[1]

| | |
|---|---|
| Exhibit I.A.32 | Debtors in the Chapter 11 Cases |
| Exhibit I.A.42 | Distribution Trust Agreement |
| Exhibit III.C.3 | Identification of Oversight Committee Members |
| Exhibit III.C.4 | Identification of Distribution Trustee |
| Exhibit III.G.1 | Nonexclusive List of Retained Causes of Action |
| Exhibit IV.A | Nonexclusive List of Executory Contracts and Unexpired Leases to Be Rejected |
| Exhibit IV.D.1 | Prepetition Executory Contracts and Unexpired Leases to be Assumed and Assigned to the Distribution Trust |
| Exhibit IV.D.2 | Postpetition Contracts and Leases to be Assigned to the Distribution Trust (if any). |

---

[1] To be Filed no later than 10 days before the Confirmation Hearing.  All Exhibits will be made available on the Document Website once they are Filed.  Copies of all exhibits to the Plan also may be obtained, free of charge, from BMC Group by calling 1-888-909-0100 (toll-free).  The Debtors reserve the right to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed and shall promptly make such changes available on the Document Website.

# INTRODUCTION

MD Products Corp., a New York corporation, Oldco M Corporation (f/k/a Metaldyne Corporation), a Delaware corporation, and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") propose the following second amended joint plan of liquidation (the "Plan") for the resolution of the outstanding claims against and equity interests in the Debtors.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129.  Reference is made to the Second Amended Disclosure Statement for Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession dated January 11, 2010 (the "Disclosure Statement") for a discussion of the Debtors' history, business, results of operations, historical financial information, and properties, and for a summary and analysis of the Plan.  There also are other agreements and documents, which will be Filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement and that will be available for review.  This Plan constitutes the agreement among the Debtors and the Unsecured Creditors Committee (as such terms are defined below) regarding the settlement of claims against the Debtors' Estates.

ALL CREDITORS AND EQUITY HOLDERS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND IN THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### A.      Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each such term is defined below), will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      "2012 Indenture Trustee" means Law Debenture Trust Company of New York, as successor to The Bank of New York Mellon Trust Company, N.A., solely in its capacity as indenture trustee.

2.      "2012 Senior Subordinated Note Claim" means any Claim against a Debtor under or evidenced by the 2012 Senior Subordinated Note Indenture, including any Claims pursuant to any guaranty agreement.

3.      "2012 Senior Subordinated Note Indenture" means, collectively:  (a) the Indenture, dated as of June 20, 2002, by and among Metaldyne (as issuer), each of the guarantors named therein and the 2012 Indenture Trustee, as supplemented by the First Supplemental Indenture, dated December 18, 2006, the Second Supplemental Indenture, dated as of January 11, 2007, and the Third Supplemental Indenture, dated as of November 25, 2008, all relating to the 2012 Senior Subordinated Notes; and (b) all amendments thereto and extensions thereof.

4.      "2012 Senior Subordinated Notes" means the currently outstanding Series A and Series B unsecured 11% senior subordinated notes due June 15, 2012 issued pursuant to the 2012 Senior Subordinated Note Indenture.

5.      "2013 Indenture Trustee" means The Bank of New York Mellon Trust Company, N.A., solely in its capacity as indenture trustee.

6.     "2013 Senior Note Claim" means any Claim against a Debtor under or evidenced by the 2013 Senior Note Indenture, including any Claims pursuant to any guaranty agreement.

7.     "2013 Senior Note Indenture" means, collectively:  (a) the Indenture, dated as of October 27, 2003, by and among Metaldyne (as issuer), each of the guarantors named therein and the 2013 Indenture Trustee, as supplemented by the First Supplemental Indenture, dated December 18, 2006, the Second Supplemental Indenture, dated as of January 11, 2007, and the Third Supplemental Indenture, dated as of November 25, 2008, all relating to the 2013 Senior Notes; and (b) all amendments thereto and extensions thereof.

8.     "2013 Senior Notes" means the currently outstanding unsecured 10% senior notes due November 1, 2013 issued pursuant to the 2013 Senior Note Indenture.

9.     "Administrative Claim" means a Claim against a Debtor or its Estate arising on or after the Petition Date and prior to the Effective Date (except as set forth in clauses (c) and (d) herein) for a cost or expense of administration in the Chapter 11 Cases that is entitled to priority or superpriority under sections 364(c)(1), 365, 503(b), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for goods delivered or services rendered, including leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Fee Claims; (c) any Allowed Claims for reclamation under section 546(c)(1) of the Bankruptcy Code that are not determined to be invalid or without value by a Final Order; (d) Claims, pursuant to section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' businesses; and (e) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911 1930.

10.     "Allowed Claim" means:

    a.     a Claim that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

    b.     a Claim (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law and (ii) that is not a Disputed Claim;

    c.     a Claim that is expressly allowed:  (i) in any Stipulation of Amount and Nature of Claim executed by the Debtors or the Distribution Trust and the Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

    d.     a Claim that the Debtors or the Distribution Trustee determine prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan.

11.     "Allowed Interest" means, with reference to any Interest:  (a) an Interest registered in the stock register, membership interest register or any similar register or schedule maintained by or on behalf of a Debtor as of the Distribution Record Date and (b) any Interest expressly deemed allowed by the Plan.

12.     "Allowed … Claim" or "Allowed … Interest" means an Allowed Claim or Allowed Interest, as the case may be, in the particular Class or category specified.

13.     "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

14.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

15.     "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

16.     "Bar Date" means a bar date established by the Bar Date Order or other applicable order of the Bankruptcy Court, which was August 14, 2009 for most General Unsecured Claims.

17.     "Bar Date Order" means the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, which was entered by the Bankruptcy Court on July 7, 2009.

18.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19.     "Cash" means legal tender of the United States of America and equivalents thereof.

20.     "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors in the Bankruptcy Court that are being jointly administered under Case No 09-13412 (MG).

21.     "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

22.     "Claims Objection Bar Date" means, for all Claims, the latest of: (a) 270 days after the Effective Date; (b) 75 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such Claim.

23.     "Class" means a class of Claims or Interests, as described in Article II.

24.     "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

25.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

26.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

27.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "Creditors' Committee" means the statutory official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time.

29.     "Cure Amount Claim" means a Claim based upon a Debtor's monetary defaults under an Executory Contract or Unexpired Lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code by one of the Debtors in connection with this Plan.

30.     "Customer Note Claim" means any Claim against a Debtor under or evidenced by a Customer Note and all security agreements and instruments related to a Customer Note.

31.     "Customer Notes" means, collectively, the Promissory Notes, dated November 21, 2008, issued by Oldco M to Chrysler LLC (on behalf of itself and Chrysler Motors LLC), Chrysler Canada, Inc., Ford Motor

Company and General Motors Corporation, with a maturity date of April 15, 2014, in the aggregate principal amount of $60 million.

32.      "Debtors" means, collectively, the debtors and debtors in possession identified on Exhibit I.A.32.

33.      "Derivative Claim" means a Claim (as defined in section 101(5) of the Bankruptcy Code) or cause of action against any Released Party that is the property of any of the Debtors' Estates pursuant to section 541 of the Bankruptcy Code, including the Ziebron Claims.

34.      "DIP Lenders" means, collectively, Ford Motor Company, General Motors Corporation (and its successor General Motors Company), Chrysler LLC (and its successor Chrysler Group LLC), Honda of America Mfg. Inc. and Nissan North America, Inc., each solely in their capacity as DIP Lenders; and Deutsche Bank AG, New York Branch, as DIP Lender and as agent bank.

35.      "Disbursing Agent" means the Distribution Trustee, in its capacity as disbursing agent, or any Third Party Disbursing Agent.

36.      "Disclosure Statement" means the Second Amended Disclosure Statement for Second Amended Joint Plan of Liquidation for the Debtors and Debtors in Possession, dated January 11, 2010 (including all exhibits and schedules thereto or referenced therein) that relates to the Plan that has been prepared and distributed by the Debtors, as plan proponents, pursuant to section 1125(g) of the Bankruptcy Code, as the same may be amended, modified or supplemented.

37.      "Disputed Claim" means any Claim (including any Tort Claim or any Ziebron Claim until it is Allowed):

a.      if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules;

b.      prior to and on the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, all Claims that have not been expressly Allowed (i) in any Stipulation of Amount and Nature of Claim executed by the Debtors or the Distribution Trust and Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

c.      after the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, such Claims for which the Debtors or the Distribution Trustee have Filed an objection in the Bankruptcy Court, and such objection has not been resolved in its entirety by a Final Order or withdrawn (and for which there is no agreement with the Claim holder to treat the Claim as a Disputed Claim for a period of time after the Claim Objection Bar Date).

Notwithstanding the above, if a Claim is an Allowed Claim under the definition set forth herein, it shall not also be considered to be a Disputed Claim.

38.      "Dissolution Transactions" means the transactions that the Debtors, or the Distribution Trustee, determine to be necessary or appropriate to implement the terms of the Plan, and that ultimately result in the dissolution or other termination of the corporate entities that compromise the Debtors and the Foreign No-Asset Subsidiaries.

39.      "Distribution Date" means a date selected by the Distribution Trustee in accordance with the terms of the Plan and the Distribution Trust Agreement to make distributions on account of Allowed Class 3 and Allowed Class 4 Claims.

40.	"Distribution Record Date" means the close of business on the Confirmation Date.

41.	"Distribution Trust" means the trust established pursuant to Section III.C to, among other things, hold the Distribution Trust Assets and make distributions pursuant to Articles V and VI.

42.	"Distribution Trust Agreement" means the trust agreement, to be dated prior to the Effective Date, between the Debtors and the Distribution Trustee, governing the Distribution Trust, which shall be substantially in the form of Exhibit I.A.42.

43.	"Distribution Trust Expense" means any and all reasonable fees, costs and expenses incurred by the Distribution Trust or the Distribution Trustee (or any Disbursing Agent, Person, entity or professional engaged by the Debtors or the Distribution Trustee to effect distributions or otherwise assist the Distribution Trustee with its duties under the Distribution Trust Agreement) in connection with any of their duties under the Plan and the Distribution Trust Agreement, including, without limitation, any administrative fees, attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, costs associated with any maintenance of any going concern as part of the wind down of such going concern business operations or costs to maintain certain assets while they are held for sale.

44.	"Distribution Trustee" means the trustee appointed pursuant to Section III.C.4 (or any successor trustee), in his, her or its capacity as the trustee of the Distribution Trust.

45.	"Distribution Trust Expense Account" means the Trust Account(s) created by the Distribution Trustee to pay the General Distribution Trust Expenses.

46.	"Document Website" means the internet site address www.bmcgroup.com/metaldyne at which all of the exhibits and schedules to the Plan and the Disclosure Statement will be available to any party in interest and the public, free of charge.

47.	"DTC" means The Depository Trust Company.

48.	"Dyne Agreement" means the Stipulation and Agreed Order Among Debtors and Debtors in Possession, MD Investors Corporation and Dyne (DE) LP entered by the Court on December 17, 2009 that resolves the issues among the parties relating to the lease agreement, dated as of August 16, 2001, between Dyne (DE) L.P., on the one hand, and Debtor Oldco M Lester Precision Die Casting, Inc., Debtor Oldco M Machining and Assembly Company, Inc. and Debtor Oldco M DuPage Die Casting Corporation, on the other hand.

49.	"Effective Date" means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date in Section VIII.B have been met or waived.

50.	"Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

51.	"Executory Contract or Unexpired Lease" means a contract or lease to which a Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto, and any ancillary agreements related thereto.

52.	"Face Amount" means (a) if a proof of Claim has been filed: (i) if only a liquidated amount is provided on the proof of Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the applicable Bar Date, (ii) if a portion of the Claim is unliquidated, an amount proposed by the Debtors or the Distribution Trustee in their reasonable estimation if they were unsuccessful in litigating the Claims to a Final Order, such amount to not be less than the liquidated amount of the Claim, in each case, however, if a party requests that the amount of the Claim be estimated for purposes of calculating distributions, the Face Amount shall be the amount so estimated by the Bankruptcy Court; or (b) if a proof of Claim has not been filed: (i) the amount set forth in the Schedules, if such amount is liquidated; or (ii) an amount reasonably estimated, in the discretion of the

Debtors or the Distribution Trustee, to account for proofs of Claim not yet Filed that potentially could be filed by an applicable Bar Date.

53.     "Fee Claim" means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases.

54.     "Fee Order" means any order establishing procedures for interim compensation and reimbursement of expenses of professionals that may be entered by the Bankruptcy Court.

55.     "File," "Filed" or "Filing" means file, filed or filing with the clerk of the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

56.     "Final Distribution Date" for a particular Class of Claims means the Distribution Date upon which final distributions to claimants in the Class are to be made.

57.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move, under Bankruptcy Rule 9023 and/or rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

58.     "Foreign Asset Subsidiaries" means, collectively, Metaldyne International Holdings B.V. and Metaldyne Machining and Assembly Mfg. Co. (Canada) Ltd., which entities presently are subsidiaries of the Debtors.

59.     "Foreign No-Asset Subsidiaries" means, collectively, Metaldyne International Sales, Inc.; Metaldyne Chassis Manufacturing (Hangzhou) Co. Ltd.; R.J. Simpson India Private Limited; and Simpson Industries, Ltda., which entities presently are subsidiaries of the Debtors.

60.     "General Bar Date" means August 14, 2009, the Bar Date for most General Unsecured Claims asserted against the Debtors that was established by the Bar Date Order.

61.     "General Distribution Trust Expenses" means Distribution Trust Expenses other than Other Asset Distribution Trust Expenses or Recovery Action Distribution Trust Expenses, including (but not limited to), the fees of the Distribution Trustee, fees incurred in connection with the making of distributions, escrow expenses and fees payable under 28 U.S.C. § 1930.

62.     "General Unsecured Claim" means any Claim that is unpaid as of the Effective Date that is not an Administrative Claim, Cure Amount Claim, Priority Claim, Priority Tax Claim or Secured Claim.

63.     "Identified Unions" means, collectively:  (a) International Union, United Automobile, Aerospace and Agricultural Implement Works of America, specifically including (but not limited to) its Local No. 3520, its Local No. 373, its Local No. 371, its Local No. 1395 and its Local No. 3400; and (b) the International Association of Machinists and Aerospace Workers.

64.     "Initial MD Investors Funding Amount" means the $2.5 million that MD Investors has paid into escrow, and which shall be released from escrow to the Distribution Trustee on the Effective Date.

65.     "Initial Other Asset Funding Amount" means any Cash existing in the Debtors' Estates as of the Effective Date that is transferred into the Other Asset Trust Account pursuant to this Plan.

66.     "Insured Claim" means any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

67.     "Intercompany Claim" means any Claim (a) of any Debtor against another Debtor or (b) of any entity that was a subsidiary of Oldco M as of the Petition Date against any Debtor that remained in existence, and had not otherwise been satisfied, released, waived or discharged (including through assumption by MD Investors), as of the date of the Confirmation Hearing.

68.     "Interest" means the rights of the holders of the Old Common Stock of any Debtor, any other instruments evidencing an ownership interest in a Debtor and the rights of any entity to purchase or demand the issuance of any of the foregoing, including:  (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidation preferences; and (c) stock options and warrants.

69.     "Interim Distribution Bar Date" is the date, if any, selected by the Distribution Trustee prior to each Distribution Date for which any claims that become Allowed Claims prior to such date will be entitled to receive a distribution on the Distribution Date.

70.     "Liabilities" means any and all claims, Claims, obligations, suits, judgments, damages, demands, debts, rights, Recovery Actions, Derivative Claims, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date.

71.     "Liens" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

72.     "MD Investors" means MD Investors Corporation, a Delaware corporation.

73.     "Metaldyne" means Debtor Oldco M Corporation, f/k/a Metaldyne Corporation, a Delaware corporation.

74.     "Net Recovery Action Asset Cash" means the Initial MD Investors Funding Amount (a) less (i) any and all Recovery Action Distribution Trust Expenses and (ii) 50% of General Distribution Trust Expenses (b) plus any recoveries from Recovery Actions.

75.     "Net Other Asset Cash" means the Initial Other Asset Funding Amount (a) less (i) any Other Asset Distribution Trust Expenses; (ii) the amounts of Administrative Claims, Cure Amount Claims, Priority Tax Claims, Priority Claims in Class 1 and Secured Claims in Class 2 that are paid on or after the Effective Date; and (iii) 50% of General Distribution Trust Expenses (b) plus (i) any Cash transferred to the Other Asset Trust Account pursuant to Section II.F of this Plan and (ii) proceeds of sales or liquidation of non-Cash assets of the Distribution Trust (other than the from judgments or settlements of Recovery Actions).

76.     "Old Common Stock" means, when used with reference to a particular Debtor, the common stock, membership interests or partnership interests issued by such Debtor and outstanding immediately prior to the Petition Date, and any options, warrants or other rights with respect thereto.

77.     "Oldco M" means Oldco M Corporation, f/k/a Metaldyne Corporation, a Delaware corporation.

78.     "Ordinary Course Professionals Order" means the order entered by the Bankruptcy Court on June 22, 2009 authorizing the Debtors to retain, employ and pay professionals and service providers, as specified in the order, which are not materially involved in the administration of the Chapter 11 Cases.

79. "Other Asset Distribution Trust Expenses" means Distribution Trust Expenses incurred in connection with the maintenance, liquidation and administrative of assets other than Recovery Actions, including any expenses incurred in connection with the maintenance of going concern businesses, and that are incurred in an effort to maximize the ultimate value realized from the sale of a specific asset.

80. "Other Asset Trust Account" means the Trust Account that shall be created on or before the Effective Date and funded by the Debtors and into which any net proceeds of sales or liquidation of non-Cash assets of the Distribution Trust (other than the liquidation of Recovery Actions) shall be placed.

81. "Oversight Committee" shall mean the committee of creditors appointed under Section III.C.3 of the Plan, which shall consult with the Distribution Trustee and shall have the powers granted to it under the Plan and the Distribution Trust Agreement.

82. Person" means any individual, firm, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other entity.

83. "Petition Date" means May 27, 2009, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

84. "Plan" means this second amended joint plan of liquidation for the Debtors, and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

85. "Prepetition ABL Agent" means Deutsche Bank AG, New York Branch, or any validly-appointed successor thereto.

86. "Prepetition Notes" means, collectively, the (a) 2013 Senior Notes and (b) 2012 Senior Subordinated Notes.

87. "Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

88. "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

89. "Professional" means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

90. "Pro Rata" means, when used with reference to a distribution of property to holders of Allowed Claims or Allowed Interests in a particular Class or other specified group of Claims or Interests pursuant to Article II, proportionately so that with respect to a particular Allowed Claim or Allowed Interest in such Class or in such group, the ratio of (a)(i) the amount of property to be distributed on account of such Claim or Interest to (ii) the amount of such Claim or Interest, is the same as the ratio of (b)(i) the amount of property to be distributed on account of all Allowed Claims or Interests in such Class or group of Claims or Interests to (ii) the amount of all Allowed Claims or Allowed Interests, as the case may be, in such Class or group of Claims or Interests. Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their Face Amount for purposes of calculating Pro Rata distribution of property to holders of Allowed Claims in such Class.

91. "Recovery Actions" means, collectively and individually, all claims and causes of action held by the Debtors' Estates of any nature, including without limitation claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law, and the proceeds thereof, whether received by judgment, settlement or otherwise.

92.  "Recovery Action Distribution Trust Expenses" means Distribution Trust Expenses incurred in the pursuit of Recovery Actions, including attorneys' fees and costs and related expenses.

93.  "Recovery Action Trust Account" shall mean the Trust Account into which the Initial MD Investors Funding Amount is deposited and in which any proceeds of any Recovery Actions shall be deposited.

94.  "Released Parties" means, collectively and individually, the Debtors, any individual that has served as a director or an officer of a Debtor on or after the Petition Date (solely in their capacity as such), the Creditors' Committee and each of its members (solely in their capacity as such), the Identified Unions (solely in their capacities as authorized representatives under sections 1113 and 1114 of the Bankruptcy Code) and the Representatives of each of the foregoing (solely in their capacities as such).

95.  "Representatives" means, with respect to any entity, any successor, officer, director, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity, serving on or after the Petition Date.

96.  "Sale Order" means the Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith and (III) Granting Related Relief, which was entered by the Bankruptcy Court on August 12, 2009.

97.  "Schedules" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors on or about July 7, 2009, as required by section 521 of the Bankruptcy Code, as the same may have been thereafter, or may be, amended, modified or supplemented.

98.  "Secondary Liability Claim" means a Claim that arises from a Debtor being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort, guaranty or other obligation of another Debtor, including any Claim based on:  (a) vicarious liability; (b) liabilities arising out of piercing the corporate veil, alter ego liability or similar legal theories; (c) guaranties of collection, payments or performance; (d) indemnity bonds, obligations to indemnify or obligations to hold harmless; (e) performance bonds; (f) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or transfer) with respect to leases, operating agreements or other similar obligations made or given by a Debtor or relating to the obligations or performance of another Debtor; (g) several liability of a member of a consolidated (or equivalent) group of corporations for Taxes of other members of the group or of the entire group; or (h) any other joint or several liability, including Claims for indemnification or contribution, that any Debtor may have in respect of any obligation that is the basis of a Claim.

99.  "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to valid setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to valid setoff, as applicable, as determined pursuant to section 506 and, if applicable, section 1129(b) of the Bankruptcy Code, but shall not include any claim under the Customer Notes or asserted by the DIP Lenders or the Prepetition ABL Agent, in their capacities as such.

100.  "Secured Tax Claim" means a Secured Claim arising out of a Debtor's liability for any Tax.

101.  "Spirit Agreement" means the Stipulation and Order Between Debtors and Spirit SPE Portfolio 2005-1 LLC Regarding Leases of Nonresidential Real Property Located in Livonia, Michigan and Middleville, Michigan entered by the Court on December 17, 2009 that resolves the issues among the parties relating to the lease agreement, dated as of January 23, 2002, between Spirit SPE Portfolio 2005-1, LLC and Oldco M Machining and Assembly Company, Inc. for the premises located in Middleville, Michigan.

102.  "Stipulation of Amount and Nature of Claim" means a stipulation or other agreement between a Debtor or the Distribution Trustee and a holder of a Claim or Interest, or an agreed order of the Bankruptcy Court,

establishing the amount and nature of a Claim or Interest; any such stipulation or other agreement between the Distribution Trustee and a holder of a Claim or Interest executed after the Effective Date will not be subject to approval of the Bankruptcy Court.

103.     "Subordinated Securities Claims" means any Claim against any of the Debtors:  (a) arising from rescission of a purchase or sale of the security of a Debtor or any affiliate of the Debtors; (b) for damages arising from the purchase or sale of a security; or (c) or for reimbursement or contribution allowed under section 502 on account of such a claim; and shall explicitly include any Ziebron Claims.

104.     "Subsidiary Debtor" means any Debtor other than Oldco M.

105.     "Subsidiary Debtor Equity Interests" means, as to a particular Subsidiary Debtor, any Interests in such Debtor.

106.     "Tax" means:  (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

107.     "Third Party Disbursing Agent" means an entity designated by the Distribution Trustee to act as a Disbursing Agent pursuant to Article V.

108.     "Tort Claim" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment.

109.     "Trust Accounts" means the bank accounts to be held in the name of the Distribution Trustee that are created pursuant to Section III.F, including, without limitation, the Distribution Trust Expense Account, the Recovery Action Trust Account and the Other Asset Trust Account, and any subaccounts thereof.

110.     "Voting Deadline" means _____, 2010 at 5:00 p.m., Eastern Time, which is the deadline for submitting ballots to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

111.     "Unpaid Indenture Trustee Fee Amount" means, as of a specified date, all unpaid fees and expenses that are payable to the 2012 Indenture Trustee or the 2013 Indenture Trustee, or their respective professionals, under the terms of the 2012 Senior Subordinated Note Indenture and the 2013 Senior Note Indenture, respectively.

112.     "Unsecured Creditor Distributions" means distributions of (a) 100% of Net Recovery Action Asset Cash, including proceeds of Recovery Actions, from the Recovery Action Trust Account and (b) 50% of Net Other Asset Cash from the Other Asset Trust Account.

113.     "Ziebron Claims" means any claims asserted by or that could be asserted by any class that could be certified or any individual plaintiff in the action captioned as Ziebron, et al. v. Metaldyne Corp., et al., Case No. 09-10164, currently pending in the United States District Court for the Eastern District of Michigan before the Honorable District Judge John Corbett O'Meara.

**B.      Rules of Interpretation and Computation of Time**

**1.      Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, Confirmation Order or otherwise; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the extent not inconsistent with any other provision of this Section I.B.1.

**2.      Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section II.A, have not been classified and thus are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**A.      Unclassified Claims**

**1.      Payment of Administrative Claims**

**a.      Administrative Claims in General**

Except as otherwise specified in this Section II.A.1, and subject to the bar date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or the Distribution Trustee, or unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive from the Debtors or the Distribution Trustee, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim either (i) on the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, within 60 days after the date on which such Administrative Claim becomes an Allowed Administrative Claim.  Holders of Administrative Claims against multiple Debtors for the same Liability shall be entitled to distributions as if the holder had a single Administrative Claim against the Debtors.

b.     **Statutory Fees**

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash equal to the amount of such Administrative Claims. Fees payable pursuant to 28 U.S.C. § 1930 for each Debtor's Estate after the Effective Date will be paid from the Distribution Trust by the Distribution Trustee as General Distribution Trust Expenses in accordance therewith until the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

c.     **Bar Dates for Administrative Claims**

i.     **General Administrative Claim Bar Date Provisions**

Unless previously Filed or as otherwise governed by the Bar Date Order or in another order of the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the parties identified in Section X.F pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 30 days after the Effective Date. Holders of Administrative Claims entitled to priority under section 503(b)(9) of the Bankruptcy Code that have asserted such claims as part of a proof of claim filed in accordance with the Bar Date Order shall not be required to File additional requests for payment of Administrative Claims with the Bankruptcy Court to maintain their assertion of such administrative priority claims, and the General Bar Date shall continue to apply to such claims. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable bar date will be forever barred from asserting such Administrative Claims against the Debtors, the Distribution Trust or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to the requests for payment of postpetition Administrative Claims must be Filed and served on the parties identified in Section X.F and the requesting party within 120 days after the Effective Date. Nothing in this Section II.A.1.c shall waive, extend or lengthen the General Bar Date for the holder of any prepetition claim, even if such prepetition claim is an Administrative Claim.

ii.     **Bar Dates for Certain Administrative Claims**

A.     **Professional Compensation**

Professionals or other entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the parties identified in Section X.F and such other entities who are designated by the Bankruptcy Rules, the Fee Order, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval (except as provided in the Ordinary Course Professionals Order). Objections to any Fee Claim must be Filed and served on the parties identified in Section X.F and the requesting party prior to 90 days after the Effective Date or such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claims. To the extent necessary, the Confirmation Order will supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

B.     **Ordinary Course Administrative Liabilities**

Holders of Administrative Claims arising from Liabilities incurred by a Debtor in the ordinary course of its business on or after the Petition Date but prior to the Effective Date must, if not paid within 20 days of the Effective Date, be Filed with the Bankruptcy Court no later than 30 days after the Effective Date or such claims shall be forever barred from asserting such claims against the Estates.

2. **Payment of Priority Tax Claims**

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor or the Distribution Trustee, each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim on the latest of (i) the Effective Date, (ii) 45 days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim and (iii) the date on which an Allowed Priority Tax Claim would be due and payable in the ordinary course of business. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment under this provision on account of any penalty arising with respect to or in connection with such Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 4. The holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Debtors, MD Investors, the Distribution Trust or the Distribution Trustee, or their respective property (other than as a holder of a Class 4 Claim).

B. **Classified Claims and Interests**

1. **Priority Claims (Class 1 Claims) are unimpaired.** On the Effective Date, each holder of an Allowed Priority Claim will receive, from the Debtors or the Distribution Trust, Cash equal to the amount of such Allowed Claim.

2. **Secured Claims (Class 2 Claims) are unimpaired**. On the Effective Date, unless otherwise agreed by a Claim holder and the applicable Debtor or the Distribution Trustee, each holder of an Allowed Secured Claim, other than a Customer Note Claim, shall be classified in Class 2 and receive treatment on account of such Allowed Secured Claim in the manner set forth in Option A or B below, at the election of the applicable Debtor or the Distribution Trustee. The applicable Debtor will be deemed to have elected Option A except with respect to any Allowed Secured Claim as to which the applicable Debtor elects Option B in one or more pleadings Filed prior to the Effective Date:

*Option A:* On the Effective Date, Allowed Claims in Class 2 with respect to which the applicable Debtor elects Option A will receive Cash equal to the amount of such Allowed Claim.

*Option B*: On the Effective Date, a holder of an Allowed Claim in Class 2 with respect to which the applicable Debtor elects Option B will be entitled to receive (and the applicable Debtor or the Distribution Trustee shall release and transfer to such holder) the collateral securing such Allowed Claim.

Notwithstanding the foregoing, the holder of an Allowed Secured Tax Claim in Class 2 will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Allowed Secured Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 4. The holder of an Allowed Secured Tax Claim will not assess or attempt to collect such penalty from the Debtors, MD Investors, the Distribution Trust or the Distribution Trustee, or their respective property (other than as a holder of a Class 4 Claim). In addition, to the extent a Class 2 Claim is based upon a right of setoff, the Debtors or the Distribution Trustee shall not be required to pay such Claim, if Allowed, in Cash, but instead may acquiesce to the setoff of funds to satisfy the Claim.

3. **Customer Note Claims (Class 3 Claims) are impaired.** Holders of Allowed Customer Note Claims shall be treated as unsecured claims under the Plan and will receive their Pro Rata share of Unsecured Creditor Distributions.

4. **General Unsecured Claims (Class 4 Claims) are impaired.** Holders of Allowed 2013 Senior Note Claims, Allowed 2012 Senior Subordinated Note Claims or any other Allowed General Unsecured Claim (other than Allowed Customer Note Claims) will receive their Pro Rata share of Unsecured Creditor Distributions.

5. **Prepetition Intercompany Claims (Class 5 Claims) are impaired.** No property will be distributed to or retained by the holders of Allowed Claims in Class5..

6.          **Subordinated Securities Claims (Class 6 Claims) are impaired.**  No property will be distributed to or retained by the holders of Subordinated Securities Claims in Class 6.  Holders of Class 6 Claims will be deemed to have rejected the Plan.

7.          **Old Common Stock of Oldco M (Class 7 Interests) are impaired.**  No property will be distributed to or retained by the holders of Allowed Interests in Class 7, and such Interests will be canceled on the Effective Date.  The holder of the Class 7 Interests will be deemed to have rejected the Plan**.**

8.          **Subsidiary Debtor Equity Interests (Class 8 Interests) are impaired.**  No property will be distributed to or retained by the holders of Allowed Interests in Class 8, and such Interests will be canceled on the Effective Date.  Holders of Class 8 Interests will be deemed to have rejected the Plan.

**C.          Impact of Classification of Claims on Subordination Rights**

1.          Provisions Relating to 2012 Senior Subordinated Note Claims and 2013 Senior Note Claims

In accordance with section 510(a) of the Bankruptcy Code and by application of provisions of the 2012 Senior Subordinated Note Indenture, the subordination rights of holders of 2013 Senior Note Claims and the 2013 Indenture Trustee shall be preserved, and shall be implemented in accordance with Section V.G below.

2.          Classification of Claims

Other than the subordination rights that are expressly preserved pursuant to this Section II.C, the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510 of the Bankruptcy Code or otherwise, that a holder of a Claim or Interest may have against other Claim or Interest holders with respect to any distribution made pursuant to the Plan.  Except as provided in Section II.C, all subordination rights that a holder of a Claim may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.  Accordingly, distributions pursuant to the Plan to holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

3.          Settlement

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim, except as provided in this Section II.C.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and Claim and Interest holders and is fair, equitable and reasonable.

**D.          Special Provisions Relating to the Rights of Setoff of Creditors**

Nothing in this Plan shall expand or enhance a creditor's right of setoff, which shall be determined as of the Petition Date.  Nothing in this Plan is intended to, or shall be interpreted to, approve any creditor's effectuation of a postpetition setoff without the consent of the Distribution Trustee unless prior Bankruptcy Court approval has been obtained.

E.    **Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims; Maximum Recovery**

1.    Holders of Allowed Secondary Liability Claims against any of the Debtors will be entitled to only one distribution from the Debtors in respect of the Liabilities related to such Allowed Secondary Liability Claim and such claims against all of the Debtors will be deemed satisfied in full by the distributions on account of the related underlying Allowed Claim.

2.    Notwithstanding any provision hereof to the contrary, holders of Allowed Secondary Liability Claims against a Debtor may not receive more than 100% of the value of the underlying Claim giving rise to such multiple Claims.

F.    **Sources of Payment of Certain Claims**

Payments made on account of Allowed Administrative Claims, Cure Amount Claims, Allowed Priority Tax Claims, Allowed Priority Claims in Class 1 and Allowed Secured Claims in Class 2 (where Option A is elected) shall be made from funds held in the Other Asset Trust Account.  In the event that insufficient funds exist in the Other Asset Trust Account to make distributions called for under the Plan, such payments may be made from funds of the Recovery Action Trust Account, with any such payments reimbursed to the Recovery Action Trust Account by the Other Asset Trust Account to the fullest extent possible and as soon as reasonably practicable as Cash is received into the Other Asset Trust Account.  The Distribution Trustee shall keep records of any transfers made by the Recovery Action Trust Account into the Other Asset Trust Account for this purpose.  If insufficient Cash is paid into the Other Asset Trust Account to reimburse the Recovery Action Trust Account, any deficiency shall be waived.

G.    **Cramdown**

The Debtors request Confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.


# ARTICLE III.
# MEANS FOR IMPLEMENTATION OF THE PLAN

A.    **Corporate Existence**

Consistent with Section III.B, each of the Debtors will be subject to a Dissolution Transaction on or before the Effective Date, or as promptly thereafter as possible, and each Debtor will be deemed to cease to exist as of the Effective Date after the transfer of property of their Estates to the Distribution Trust.

B.    **Dissolution Transactions**

1.    **Dissolution Transactions Generally**

a.    On or after the entry of the Confirmation Order, the Debtors will enter into such Dissolution Transactions and will take such actions as may be necessary or appropriate to merge, dissolve or otherwise terminate the corporate existence of the Debtors and the Foreign No-Asset Subsidiaries as of the Effective Date or as promptly as possible thereafter.  The actions to effect the Dissolution Transactions may include:  (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms as these

entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that these entities determine to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions. Nothing herein shall impact the limitations on setoff set forth in Sections II.B and VII.A.

        b.      Notwithstanding the foregoing and regardless of whether the actions described above have yet been taken with respect to a particular Debtor, as of the Effective Date and upon the transfer of the assets to the Distribution Trust under the Plan, the Debtors shall be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority in connection therewith.

      2.      **Recourse Solely to Distribution Trust Assets**

        All Claims against the Debtors are deemed satisfied, waived and released as to the Debtors in exchange for the treatment of such Claims under the Plan, and holders of Allowed Claims against any Debtor will have recourse solely to the assets of the Distribution Trust for the payment of their Allowed Claims in accordance with the terms of the Plan and the Distribution Trust Agreement.

## C.      Distribution Trust

      1.      Distribution Trust Generally

        On or prior to the Effective Date, the Distribution Trust shall be established pursuant to the Distribution Trust Agreement for the purpose of liquidating the assets contributed to the Distribution Trust, resolving all Disputed Claims, pursuing any Recovery Actions, making all distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan and administering the Debtors' Estates. Subject to and to the extent set forth in the Plan, the Confirmation Order, the Distribution Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Distribution Trust (and the Distribution Trustee) shall be empowered to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan; (ii) establish, maintain and administer the Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan; (iii) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the assets of the Distribution Trust (directly or through its professionals or a Third Party Disbursing Agent), in accordance with the Plan; (iv) sell, liquidate, transfer, distribute or otherwise dispose of the assets of the Distribution Trust (directly or through its professionals or a Third Party Disbursing Agent) or any part thereof or any interest therein upon such terms as the Distribution Trustee determines to be necessary, appropriate or desirable; (v) dissolve, wind down or liquidate any non-Debtor entity in which the Debtors have an equity interest, including, if determined to be appropriate in the judgment of the Distribution Trustee, authorizing the commencement of insolvency proceedings for any such non-Debtor entity in an appropriate forum; (vi) maintain as going concerns the businesses conducted at certain facilities of the Debtors that are transferred to the Distribution Trust (subject to the limitations described herein), including purchasing raw materials and other goods, employing persons to perform manufacturing and other services and selling such goods to customers once manufactured, in each case, pending the sale or liquidation thereof, to conserve and protect such assets and provide for the orderly liquidation thereof; (vii) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (viii) comply with the Plan and exercise the Distribution Trustee's rights and fulfill its obligations thereunder; (ix) review, reconcile, settle or object to Claims and resolve such objections as set forth in the Plan; (x) pursue Recovery Actions that are transferred to the Distribution Trust to the extent that their pursuit would likely result in a material economic benefit to creditors classified in Class 3 and Class 4 hereunder, as determined by the Oversight Committee, in its sole discretion; (xi) retain, compensate and employ professionals to represent the Distribution Trustee with respect to its responsibilities; (xii) file appropriate Tax returns and other reports on behalf of the Distribution Trust and the Debtors and pay Taxes or other obligations owed by the Distribution Trust and the Debtors; (xiii) exercise such other powers as may be vested in the Distribution Trustee under the Distribution Trust Agreement or this Plan, or as deemed by the Distribution Trustee to be necessary and proper to implement the provisions of the Plan and the Distribution Trust Agreement; (xiv) take such actions as are necessary or appropriate to close or dismiss any or all of the Chapter 11 Cases; and (xv) dissolve the Distribution

Trust in accordance with the terms of the Distribution Trust Agreement. Notwithstanding anything to the contrary in this Section III.C.1, the Distribution Trust's primary purpose is liquidating the assets transferred to it by the Debtors, with no objective to continue or engage in the conduct of a trade or business except to the extent consistent with the trust's liquidating purpose and reasonably necessary to conserve and protect such assets and provide for the orderly liquidation thereof.

2.        Funding of and Transfer of Assets Into the Distribution Trust

a.        Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, other than rights under any Executory Contract or Unexpired Lease that is being rejected pursuant to the Plan, the Debtors will transfer all assets remaining in their Estates to the Distribution Trust, including their equity or ownership interest in the Foreign Asset Subsidiaries, and all such assets shall vest in the Distribution Trust, to be administered by the Distribution Trustee in accordance with the Plan and the Distribution Trust Agreement. The assets will be transferred to and vest in the Distribution Trust on the Effective Date, free and clear of all Liens, except as set forth in Section III.J below.

b.        Any Cash that is transferred by the Debtors to the Distribution Trust, and thus constitutes the Initial Other Asset Funding Amount, shall be transferred into the Other Asset Trust Account. On the Effective Date, the Debtors and MD Investors shall cause the Initial MD Investors Funding Amount to be released from escrow and transferred into the Recovery Action Trust Account.

c.        The Distribution Trustee shall have the authority to create sub-accounts or sub-trusts within the Distribution Trust, which may have a separate legal existence, and which shall be considered sub-accounts or sub-trusts of the Other Asset Trust Account, and into which the Distribution Trustee may deposit any non-Cash property, including real or personal property pending its liquidation. Such sub-accounts or sub-trusts may hold legal title to such property. Once liquidated, any Cash proceeds of such sub-accounts or sub-trusts shall be deposited directly into the Other Asset Trust Account.

d.        The act of transferring assets and rights to the Distribution Trust, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Distribution Trust as if the asset or right was still held by the applicable Debtor.

3.        Oversight Committee

An Oversight Committee shall be established to review and monitor the actions of the Distribution Trustee in its administration of the Distribution Trust. The Oversight Committee shall have standing to be heard in the Bankruptcy Court on all matters brought before the Bankruptcy Court in the Chapter 11 Cases after the Effective Date. The initial members of the Oversight Committee are identified on Exhibit III.C.3 to the Plan. In the event that a member of the Oversight Committee resigns, such member may be replaced by a party that previously served on the Creditors' Committee without order of the Court. If all members of the Oversight Committee resign and no replacements are named, any duties of the Oversight Committee shall be performed by the Distribution Trustee. The Oversight Committee shall not be entitled to reimbursement from the Debtors or the Distribution Trust for any fees or expenses incurred in conducting its duties.

4.        Distribution Trustee

a.        The initial Distribution Trustee shall be selected by the Creditors' Committee, subject to the consent of the Debtors (with such consent not being unreasonably withheld).

b.        The Distribution Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights and responsibilities of the Distribution Trustee shall be specified in the Distribution Trust Agreement and shall include the authority and responsibility to fulfill the items identified in Section III.C.1 above, subject to the oversight of the Oversight Committee. Other rights and duties of the Distribution Trustee and the beneficiaries of the Distribution Trust shall be as set forth in the Distribution Trust Agreement.

5.      Distribution Trust Agreement

The Distribution Trust Agreement generally will provide for, among other things:  (i) the payment of reasonable compensation to the Distribution Trustee; (ii) the payment of other expenses of the Distribution Trust, including the cost of pursuing the claims assigned to the Distribution Trust; (iii) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (iv) the investment of Cash by the Distribution Trustee within certain limitations; (v) the preparation and filing of appropriate Tax returns and other reports on behalf of the Distribution Trust and the Debtors and the payment of Taxes or other obligations owed by the Distribution Trust and the Debtors; (vi) the maintenance (if appropriate) of any going concern vested in the Distribution Trust (subject to the limitations described herein and therein); (vii) the orderly liquidation of the Distribution Trust's assets; and (viii) the litigation, settlement, abandonment or dismissal of the Recovery Actions or any other claims, rights or causes of action assigned to the Distribution Trust.

6.      Reports to be Filed by the Distribution Trustee

The Distribution Trustee, on behalf of the Distribution Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Distribution Trust Agreement), no later than 31 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan.

7.      Fees and Expenses of the Distribution Trust

a.      Distribution Trust Expenses shall be paid from the Distribution Trust as required, at the direction of the Distribution Trustee.  Any Recovery Action Distribution Trust Expenses shall be paid solely from the Recovery Action Trust Account.  Any Other Asset Distribution Trust Expenses shall be paid solely from the Other Asset Trust Account, subject to the provisions of Section II.F.  Any General Distribution Trust Expenses shall be allocated one-half to the Recovery Action Trust Account and one-half to the Other Asset Trust Account, which allocated amounts may be drawn from such accounts to fund the Distribution Trust Expense Account.

b.      In addition, the Distribution Trustee, on behalf of the Distribution Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtors or the Creditors' Committee) to assist in carrying out its duties hereunder and may compensate and reimburse the expenses of these professionals from the appropriate Trust Account, based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, subject to the above limitations and any procedures established by the Distribution Trust Agreement.

8.      Indemnification

The Distribution Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Distribution Trustee, the members of the Oversight Committee and/or other parties.  Any such indemnification shall be the sole responsibility of the Distribution Trust and payable solely from the assets of the Distribution Trust.

9.      Tax Treatment

The Distribution Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated either as discrete trusts taxed pursuant to Section 641 et seq. of the Internal Revenue Code (the "IRC") or as disputed ownership funds described in Treasury Regulation § 1.468B-9.  For federal income tax purposes, the transfer of assets by the Debtors to the Distribution Trust will be treated in part as the transfer of assets by the Debtors to the holders of Allowed General Unsecured Claims, subject to any liabilities of the Debtors or the Distribution Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Distribution Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one more Disputed Claims reserves.  The holders of Allowed General Unsecured Claims

will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Distribution Trust (subject to such liabilities), depending on their rights to distributions under the Plan. As grantors and deemed owners of such assets, the holders of Allowed General Unsecured Claims will be required to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such assets. The holders of Allowed General Unsecured Claims will be required to use the values assigned to such assets by the Distribution Trustee for all federal tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the holder holds an interest. The Distribution Trust Agreement will contain certain provisions to comply with IRS guidance for trusts treated as liquidating trusts. Among other things, the agreement will (i) require that the Distribution Trust terminate no later than five years after the Effective Date, subject to extension with Bankruptcy Court approval, (ii) limit the Distribution Trustee's investment powers, (iii) limit the business operations carried on by the Distribution Trust to activities reasonably necessary to and consistent with the trust's liquidating purpose, (iv) prohibit the Distribution Trust from receiving or retaining Cash or cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (v) distribute at least annually to the holders of Allowed General Unsecured Claims the Distribution Trust's net income and the net proceeds from the sale of Distribution Trust assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Distribution Trust assets. Distribution Trust assets reserved for holders of Disputed Claims will be treated as one or more Disputed Claims reserves for tax purposes, which will be subject to an entity-level Tax on some or all of their net income or gain. No holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such holder receives or is allocated an interest in such asset. The Distribution Trustee will file all Tax returns on a basis consistent with the treatment of the Distribution Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as discrete trusts or disputed ownership funds, and will pay all Taxes owed from Distribution Trust assets.

   10.  Settlement of Claims

    Except as otherwise provided in the Plan or the Distribution Trust Agreement, on and after the Effective Date, the Distribution Trustee may compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Distribution Trust Expenses, professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

   11.  Sales of Assets by Distribution Trust

    In connection with the sale, liquidation, transfer, distribution or disposition of the assets of the Distribution Trust by the Distribution Trustee, the Distribution Trustee shall deposit any proceeds of the litigation or settlement of Recovery Actions into the Recovery Action Trust Account and shall deposit the proceeds of all other sales, liquidations, transfers to dispositions into the Other Asset Trust Account. The Distribution Trustee may conduct any sales or liquidations of non-Cash assets from the Distribution Trust on any terms it deems reasonable, without further order of the Bankruptcy Court.

   12.  Maintenance of Businesses by Distribution Trustee

    Notwithstanding anything in Section III.C.1 above, the Distribution Trustee shall not be permitted to operate any businesses owned by the Distribution Trust as operating businesses unless the Distribution Trustee reasonably believes that: (a) (i) such business operations will either be profitable or (ii) the maintenance of the businesses will otherwise be in the best interests of the beneficiaries of the Distribution Trust, considered as a whole; and (b) the maintenance of the business is consistent with the Distribution Trust's liquidating purpose and reasonably necessary to conserve and protect such assets and provide for the orderly liquidation thereof.

**D.      Corporate Governance, Directors and Officers**

1.      Certificates of Incorporation and Bylaws

Consistent with Sections III.A and III.B above, each of the Debtors will cease to exist, and all existing certificates of incorporation and by-laws will be canceled, effective as of the Effective Date; accordingly, no new certificates of incorporation and by-laws will be necessary.

2.      Directors and Officers

Consistent with Sections III.A and III.B above, each of the Debtors will cease to exist effective as of the Effective Date and, thus, no individuals will serve as directors, officers or voting trustees after the Effective Date.

3.      Corporate Action

The Dissolution Transactions and the following corporate actions and transactions will occur and be effective as of the date specified in the documents effectuating the applicable Dissolution Transactions (or other transactions) or the Effective Date if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the Debtors, the Distribution Trustee or any other Person:  (a) the establishment of the Distribution Trust; (b) the appointment of the Distribution Trustee to act on behalf of the Distribution Trust; (c) the transfer of assets into the Distribution Trust as set forth in the Plan; (d) the distribution of Cash pursuant to the Plan; (e) the adoption, execution, delivery and implementation of all contracts, instruments, releases and other agreements or documents related to any of the foregoing; (f) the adoption, execution and implementation of the Distribution Trust Agreement; and (g) the other matters provided for under the Plan involving the corporate structure of any Debtor or corporate action to be taken by or required of any Debtor or the Distribution Trustee.

**E.      No Revesting of Assets**

The property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall instead vest in the Distribution Trust to be administered by the Distribution Trustee in accordance with the Plan and the Distribution Trust Agreement.

**F.      Creation and Maintenance of Trust Accounts**

1.      Creation of Trust Accounts

On or prior to the Effective Date, appropriate Trust Accounts will be established and maintained in one or more federally insured domestic banks in the name of the Distribution Trustee or, if applicable and appropriate, the Third Party Disbursing Agent.  The Other Asset Trust Account and Recovery Action Trust Account are required under the Plan, but the number and nature of any other Trust Accounts shall be determined by the Distribution Trustee.  To effect distributions, the Distribution Trustee may establish and maintain multiple Trust Accounts, including, without limitation, multiple Other Asset Trust Accounts or multiple Recovery Action Trust Accounts.

2.      Additional Funding of Trust Accounts

After the funding of the Trust Accounts on the Effective Date, each Trust Account will continue to be funded by the transfer of Cash through litigation or via the sale or dispositions of assets.  Cash deposited in the Trust Accounts will be invested, held and used solely as provided in the Distribution Trust Agreement.

3. Closure of Trust Accounts

Upon obtaining an order of the Bankruptcy Court authorizing final distribution and/or closure of the Chapter 11 Cases, any funds remaining in the Trust Accounts shall be distributed in accordance with the Plan and the Distribution Trust Agreement, and the Trust Accounts may be closed.

**G.    Preservation of Causes of Action; Settlement Agreements and Releases; Exculpation**

1.    **Preservation of Causes of Action; Recovery Actions**

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Distribution Trustee will retain and may enforce any claims, demands, rights and causes of action that any Estate may hold against any Person to the extent not released under Section III.G.3 or otherwise, including the Recovery Actions.  The Distribution Trustee may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the beneficiaries of the Distribution Trust.  Any recovery of Cash by the Distribution Trustee on account of Recovery Actions will be deposited in the Recovery Action Trust Account.  A nonexclusive schedule of currently pending actions and claims brought by one or more Debtors is attached as Exhibit III.G.1.  In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any right of action or claim on Exhibit III.G.1 shall not be deemed an admission, denial or waiver of any claims, demands, rights or causes of action that any Debtor or Estate may hold against any entity.  The Debtors intend to preserve all such claims, demands, rights or causes of action as Recovery Actions (except to the extent any such claim is specifically released herein).

2.    **Comprehensive Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Section III.G.3, will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

3.    **Releases**

a.    **General Releases by Debtors**

**Without limiting any other applicable provisions of or releases contained in the Plan, as of the Effective Date, the Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all entities who may purport to claim by, through, for or because of them will forever release, waive and discharge all Liabilities (including Derivative Claims) that they have, had or may have against any Released Party, the 2012 Indenture Trustee and its Representatives (in their capacities as such) and the 2013 Indenture Trustee and its Representatives (in their capacities as such), except with respect to any obligations arising under the Plan; provided, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have constituted intentional misconduct.  Any such released Liabilities shall not be transferred to the Distribution Trust.**

b.    **General Releases by Holders of Claims or Interests**

**Without limiting any other applicable provisions of or releases contained in the Plan or provided under the Bankruptcy Code, as of the Effective Date, in consideration for the consideration**

provided under the Plan, each holder of a Claim or Interest that votes in favor of the Plan, to the fullest extent permissible under law, will be deemed to forever release, waive and discharge all Liabilities in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plan, the exhibits to the Plan or the Disclosure Statement that such entity has, had or may have against any Released Party; provided, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have constituted intentional misconduct.

        c.        **Injunction Related to Releases**

        **The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, liabilities, rights of contribution or rights of indemnification released pursuant to the Plan, including pursuant to the releases in this Section III.G.3.**

        4.        **Exculpation**

        From and after the Effective Date, the Released Parties and the 2012 Indenture Trustee and its Representatives (in their capacities as such) and the 2013 Indenture Trustee and its Representatives (in their capacities as such) shall neither have nor incur any liability to any Person for any act taken or omitted, or to be taken, in connection with the sale of the majority of the Debtors' assets to MD Investors or the Debtors' other postpetition liquidation activity, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, the exhibits to the Plan, the Disclosure Statement, the Distribution Trust Agreement or any other contract, instrument, release or other agreement or document provided in connection therewith; provided, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that the act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

**H.**        **Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims**

        Distributions under the Plan to each holder of an Allowed Insured Claim will be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim has not yet been satisfied by the combination of distributions pursuant to this Plan and proceeds payable to the holder of such Allowed Insured Claim under any pertinent insurance policies and applicable law.  Nothing in this Section III.H will constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' insurance carriers.

**I.**        **Cancellation and Surrender of Instruments, Securities and Other Documentation**

        Except as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan and except for purposes of distributions on account of Allowed Customer Note Claims, Allowed 2013 Senior Note Claims and Allowed 2012 Senior Subordinated Claims as contemplated by Section V.C, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all outstanding common stock, secured and unsecured notes, indentures, instruments and securities issued by any of the Debtors will be canceled and of no further force and effect, without any further action on the part of the Bankruptcy Court, any Debtor or the Distribution Trustee.  The holders of or parties to such canceled instruments and securities will have no rights arising from or relating to such instruments and securities or the cancellation thereof, except the rights provided pursuant to the Plan; provided, however, that no distribution under the Plan will be made to or on behalf of any holder of an Allowed Claim evidenced by such canceled instruments or securities unless and until such instruments or securities are received by the applicable Disbursing Agent if required pursuant to Section V.M. Notwithstanding anything to the contrary in this provision, the 2012 Senior Subordinated Note Indenture and the 2013 Senior Note Indenture shall continue to exist for the purposes set forth in Section V.G below.

**J. Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against the same assets that are owned by the Distribution Trustee in which the holder of such Claim had a Lien, including any net proceeds of sales of such assets. All such Liens against the assets of the Distribution Trust shall be fully released and discharged upon the holder of the Liens receiving its full distribution under the Plan.

**K. Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

1. Effectuating Documents and Further Transactions

Prior to the Effective Date, the Chief Liquidation Officer or any other officer of each Debtor, and after the Effective Date, the Distribution Trustee, will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

2. Exemption From Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax or similar Tax: (a) any transfer made by the Debtors to the Distribution Trust; (b) any sales made by the Distribution Trust to liquidate such assets in the trust and convert such assets into Cash; (c) any sales of assets made by the Debtors under section 363 of the Bankruptcy Code, to the extent that title to the assets being sold transfers after the Confirmation Date; (d) the making or assignment of any lease or sublease; (e) any Dissolution Transaction; (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Plan.

**L. Implementation of Settlement with MD Investors**

In accordance with the applicable provisions of the Sale Order, MD Investors will receive 50% of all distributions of Net Other Asset Cash made from the Distribution Trust. Distributions of such amounts shall only be made on Distribution Dates for holders of Allowed Claims in Class 3 and Class 4, as set forth in Article V below.

**M. Substitution in Pending Legal Actions**

On the Effective Date, the Distribution Trust or the Distribution Trustee, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court and (iii) any state court or federal or state administrative proceedings pending as of the Petition Date. The Distribution Trustee and its professionals are not required to, but may take such steps as are appropriate to provide notice of such substitution.

## ARTICLE IV.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**A.      Rejection of Executory Contracts and Unexpired Leases**

1.      Rejection

Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors will be deemed to reject each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned or rejected during the Chapter 11 Cases, which includes, but is not limited to, the Executory Contracts and Unexpired Leases Identified on Exhibit IV.A.  Parties that desire to object to the rejection of a specific Executory Contract or Unexpired Lease must file an objection to the Plan by the deadline for filing objections thereto.

2.      Notice of Rejection

The Debtors will serve a notice on all known counterparties to Executory Contracts or Unexpired Leases that are to be rejected pursuant to the Plan.  The notice shall provide parties in interest with the following information:  (a) the identity of the contract or lease being rejected and (b) the procedures and bar date for asserting any claims arising from the rejection of the Executory Contract or Unexpired Lease.  The failure of a party to an Executory Contract or Unexpired Lease to receive the notice to be provided under this section IV.A shall not prevent the rejection of the Executory Contract or Unexpired Lease.

3.      Bar Date for Rejection Damages

In accordance with the Bar Date Order, and except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court on or before the later of:  (a) 30 days after the Effective Date or (b) 30 days after such Executory Contract or Unexpired Lease is rejected pursuant to an order of the Bankruptcy Court.  Any Claims not Filed within such applicable time periods will be forever barred from receiving a distribution from the Debtors or the Distribution Trust.

4.      Special Provisions Relating to Niles, Illinois and Middleville, Michigan Premises

The Unexpired Lease associated with the Debtors' lease of real property for their Niles, Illinois facility shall be treated in accordance with the Dyne Agreement and, to the extent that the provisions of this Section IV.A conflict with the terms of the Dyne Agreement, the terms of the Dyne Agreement shall apply.  The Unexpired Lease associated with the Debtors' lease of real property for their Middleville, Michigan Facility shall be treated in accordance with the Spirit Agreement and, to the extent that the provisions of this Section IV.A conflict with the terms of the Spirit Agreement, the terms of the Spirit Agreement will apply.

**B.      Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by a Debtor, including any Executory Contracts and Unexpired Leases assumed by a Debtor, that are not assigned to MD Investors or the Distribution Trustee will be considered repudiated by the Debtors as of the Effective Date, and the counterparties to such contracts, if they believe that such repudiation constitutes a breach of such postpetition agreement, must file a claim or Administrative Claim in accordance with the Plan or have their rights forever waived and released.

**C.      Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such Executory

Contracts or Unexpired Lease. Notwithstanding any applicable nonbankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases, and any such rights shall vest in the Distribution Trust as of the Effective Date.

**D.      Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

      1.      **Assumption and Assignment Generally**

      Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor shall assume each of the respective Executory Contracts and Unexpired Leases listed on Exhibit IV.D.1; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend Exhibit IV.D.1 to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection under Section IV.A; or (b) add any Executory Contract or Unexpired Lease to Exhibit IV.D.1, thus providing for its assumption pursuant to this Section IV.D.1. The Debtors shall File Exhibit IV.D.1, and any amendments thereto, with the Bankruptcy Court. Nothing herein shall constitute an admission by a Debtor that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor has any liability thereunder.

      2.      **Assignments to Distribution Trust**

      As of the Effective Date, any Executory Contract or Unexpired Lease identified upon Exhibit IV.D.1 shall be deemed assigned to the Distribution Trust, pursuant to section 365 of the Bankruptcy Code. Any Allowed Cure Amount Claims associated with the assumption and assignment of an Executory Contract or Unexpired Lease shall be paid by the Distribution Trustee from the Other Asset Trust Account.

      As of the Effective Date, any of postpetition agreements identified upon Exhibit IV.D.2 shall be assigned to the Distribution Trust by operation of, and to the extent permitted by, applicable nonbankruptcy law governing assumptions and assignments.

      3.      **Approval of Assumptions and Assumption Procedures**

      The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions and assignments described in Sections IV.D.1 and IV.D.2, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The procedures for assumption of an Executory Contract or Unexpired Lease, which shall be included in the Confirmation Order proposed by the Debtors, shall be as follows:

      a.      After the entry of the Confirmation Order, but prior to the Effective Date, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned; (ii) the Cure Amount Claim, if any, that the applicable Debtor believes it would be obligated to pay in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim.

      b.      Any entity wishing to object to (i) the proposed assumption of an Executory Contract or Unexpired Lease under the Plan or (ii) the proposed amount of the related Cure Amount Claim must File and serve on counsel to the Debtors or the Distribution Trustee, as applicable, a written objection setting forth the basis for the objection within 20 days of service of the notice described in Section IV.D.3.a.

      c.      If no objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease: (i) the proposed assumption of the Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court; and (ii) the

Cure Amount Claim identified by the Debtors in the notice shall be fixed and shall be paid to the appropriate contract or lease party identified on the notice on the Effective Date by the Distribution Trust.

        d.       If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or the Distribution Trustee, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

        e.       If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection then:  (i) either party may notice the dispute for hearing by Filing a notice of hearing in the Bankruptcy Court no later than 20 days prior to the hearing date; and (ii) the Debtors or the Distribution Trustee may File a reply to such objection no later than seven days prior to the proposed hearing date.

        f.       If, at a hearing scheduled pursuant to Section IV.D.3.e above, the Bankruptcy Court imposes requirements upon the Debtors or the Distribution Trustee as a condition to assuming an Executory Contract or Unexpired Lease, or if the Bankruptcy Court determines that the Cure Amount Claim for a particular Executory Contract or Unexpired Lease is in excess of the amount proposed by the Debtors or the Distribution Trustee, the Debtors or the Distribution Trustee may, within their sole discretion, choose to reject such Executory Contract or Unexpired Lease by filing an appropriate amendment to Exhibit IV.A, Exhibit IV.D.1 or Exhibit IV.D.2, as applicable, within seven days of the entry of a Final Order with respect to such matter.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**      **Distributions for Claims Allowed as of the Effective Date**

        Except as otherwise provided in this Article V, distributions of Cash to be made on the Effective Date to holders of Claims as provided by Article II or Article V that are allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than:  (1) 60 days after the Effective Date; or (2) with respect to any particular Claim, such later date when the applicable conditions of Section IV.D (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section V.E.2 (regarding undeliverable distributions) or Section V.M (regarding surrender of canceled instruments and securities) are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Section VI.C.

**B.**      **Method of Distributions to Holders of Claims**

        The Distribution Trustee, in its capacity as Disbursing Agent, or such Third Party Disbursing Agents as the Distribution Trustee may employ in its sole discretion, will make all distributions required under the Plan.  Each Disbursing Agent may serve without bond, and any Disbursing Agent may employ or contract with other entities to assist in or make the distributions required by the Plan if approved by the Distribution Trustee.

**C.**      **Compensation and Reimbursement for Services Related to Distributions**

        Each Third Party Disbursing Agent providing services related to distributions pursuant to the Plan will receive from the Distribution Trustee, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses (including reasonable attorneys' fees and disbursements) incurred in connection with such services, to be paid as a General Distribution Trust Expense.

**D.**      **Investment of Trust Accounts**

        To assist in making distributions under the Plan, the applicable Trust Accounts may be held in the name of the Distribution Trustee or in the name of one or more Third Party Disbursing Agents for the benefit of holders of Allowed Claims under the Plan, or a secondary Trust Account may be created in the name of the Third

Party Disbursing Agent for the purpose of making disbursements.  The Distribution Trustee shall invest, or shall direct the Third Party Disbursing Agents to invest, Cash in the Trust Accounts, subject to the limitations established by the Distribution Trust Agreement; provided, however, that should such Distribution Trustee determine, in its sole discretion, that the administrative costs associated with such investment will exceed the return on such investment, it may direct the Third Party Disbursing Agent not to invest such Cash.  Distributions of Cash from accounts held by Third Party Disbursing Agents will include a Pro Rata share of any interest or other proceeds, if any, from such investment of Cash, net of any Taxes payable with respect thereto.

**E.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

   1.      **Delivery of Distributions**

Distributions to holders of Allowed Claims will be made by a Disbursing Agent:  (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims or request for payment of Administrative Claim, as applicable; (b) at the address for a Claim transferee set forth in a valid and timely notice of transfer of Claim Filed with the Bankruptcy Court; (c) at the addresses set forth in any written notice of address change Filed with the Bankruptcy Court or delivered to the Disbursing Agent after the date of Filing of any related proof of Claim; (d) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address; or (e) if clauses (a) through (d) are not applicable, at the last address directed by such holder after such Claim becomes an Allowed Claim.

   2.      **Undeliverable Distributions Held by Disbursing Agents**

      a.      **Holding of Undeliverable Distributions**

Subject to Section V.E.2.c, distributions returned to a Disbursing Agent or otherwise undeliverable will remain in the possession of the applicable Disbursing Agent pursuant to this Section V.E.2.a until such time as a distribution becomes deliverable.  Any Disbursing Agent holding undeliverable Cash will invest such Cash in a manner consistent with the Distribution Trust Agreement.

      b.      **After Distributions Become Deliverable**

On each Distribution Date, the applicable Disbursing Agents will make all distributions that became deliverable to holders of Allowed Claims after the most recent Distribution Date but prior to the Interim Distribution Bar Date.

      c.      **Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert its right to an undeliverable distribution prior to the date that is 90 days prior to the Final Distribution Date will be forever barred from asserting any such claim against the Debtors, the Distribution Trustee, their respective property or the Trust Accounts.  In such cases, unclaimed distributions will be maintained in the applicable Trust Account for redistribution to other claimants entitled to distribution from such Trust Account.

**F.      Distributions on Account of Allowed Claims in Class 1 and Class 2**

Distributions to be made to holders of Allowed Claims classified in Class 1 or Class 2 under the Plan shall be made within 45 days of such claim becoming an Allowed Claim.

**G.      Distributions on Account of Certain Noteholder Claims in Class 4**

   1.      **Status of Indentures; Role of 2012 Indenture Trustee and 2013 Indenture Trustee**

Distributions on account of Allowed 2013 Senior Note Claims and Allowed 2012 Senior Subordinated Note Claims shall be made to the 2013 Indenture Trustee and the 2012 Indenture Trustee, respectively,

and shall be made in accordance with this Plan.  If distributions are made pursuant to the distribution provisions set forth in the respective indentures, the 2013 Indenture Trustee and the 2012 Indenture Trustee shall be entitled to retain and enforce against such distributions any charging liens and payment priorities under their respective indentures.

The 2012 Indenture Trustee and the 2013 Indenture Trustee shall not be required to give any bond, surety, or other security for the performance of its duties with respect to the administration and implementation of distributions.

Any and all distributions on account of Allowed 2012 Senior Subordinated Note Claims and Allowed 2013 Senior Note Claims shall be subject to the rights of the 2012 Indenture Trustee and the 2013 Indenture Trustee to exercise their rights and remedies under the applicable indenture against such distribution for any unpaid fees and expenses incurred prior to the Effective Date and any fees and expenses incurred in making distributions pursuant to this Plan.

The 2013 Senior Note Indenture and the 2012 Senior Subordinated Note Indenture shall continue to remain in effect after the Effective Date solely for the following purposes:

a.  allowing distributions to be made under the Plan pursuant to the applicable indenture and to permit the 2012 Indenture Trustee and the 2013 Indenture Trustee to perform such other necessary functions with respect thereto;

b.  permitting the 2012 Indenture Trustee and the 2013 Indenture Trustee to maintain or assert any charging lien they may have with respect to the distributions pursuant to the terms of the Plan for the fees and expenses of the 2012 Indenture Trustee or the 2013 Indenture Trustee, respectively;

c.  permitting the 2012 Indenture Trustee or the 2013 Indenture Trustee to exercise their rights and obligations relating to the interests of the 2012 Senior Subordinated Note Claims and the 2013 Senior Note Claims, respectively, including the right to appear and be heard in the Chapter 11 Cases and in any appeals; and

d.  permitting the exercise by the 2012 Indenture Trustee or 2013 Indenture Trustee of their rights under the subordination provisions of the 2012 Senior Subordinated Note Indenture and other applicable agreements.

2.     **Implementation of Indenture Provisions and Subordination Rights**

To implement payment priorities, preserve the subordination rights of the holders of 2013 Senior Notes and to comply with the fee and expense provisions of the 2013 Senior Note Indenture and the 2012 Senior Subordinated Note Indenture, the following provisions will apply to distributions to be made under Class 4 to holders of Allowed 2013 Senior Note Claims and holders of Allowed 2012 Senior Subordinated Note Claims:

a.     At least 21 days prior to a Distribution Date, the Distribution Trustee shall advise the 2012 Indenture Trustee and the 2013 Indenture Trustee in writing of the amounts proposed to be distributed on account of 2012 Senior Subordinated Notes and 2013 Senior Notes.

b.     At least seven days prior to the Distribution Date, the 2012 Indenture Trustee shall provide the Distribution Trustee and the 2013 Indenture Trustee with invoices documenting its Unpaid Indenture Trustee Fee Amount.

c.     On the Distribution Date, distributions to be made to holders of Allowed 2012 Senior Subordinated Note Claims shall be made to the 2012 Indenture Trustee only to the extent necessary to satisfy any Unpaid Indenture Trustee Fee Amount for the 2012 Indenture Trustee.  If any amount remains after the Unpaid Indenture Trustee Fee Amount for the 2012 Indenture Trustee has been satisfied, any excess shall be distributed to the 2013 Indenture Trustee on the Distribution Date.

d.      Any amounts paid to the 2013 Indenture Trustee shall be utilized first to satisfy any Unpaid Indenture Trustee Fee Amount for the 2013 Indenture Trustee.  Any excess shall then be distributed by the 2013 Indenture Trustee Pro Rata to the holders of Allowed 2013 Senior Note Claims or otherwise in accordance with the terms of the 2013 Senior Note Indenture.

e.      If the holders of Allowed 2013 Senior Note Claims have been paid in full as calculated by the Distribution Trustee (and agreed to by the 2013 Indenture Trustee or, if not such agreement is reached, determined by order of the Bankruptcy Court), including payment of interest calculated at the default rate under the terms of the 2013 Senior Notes, then the provisions of subsections (c) and (d) above shall no longer apply, and, instead (1) no further distributions shall be made to any party on account of Allowed 2013 Senior Note Claims and (2) all distributions on account of Allowed 2012 Senior Subordinated Note Claims shall be made to the 2012 Indenture Trustee, first for the satisfaction of its valid Unpaid Indenture Trustee Fee Amounts and, second, to be distributed by the 2012 Indenture Trustee Pro Rata to the holders of Allowed 2012 Senior Subordinated Note Claims or otherwise in accordance with the terms of the 2012 Senior Subordinated Note Indenture.

**H.      Selection of Distribution Dates for Class 3 Claims and Class 4 Claims and Provision of Notice Thereof**

Except where this Plan requires the making of a distribution on account of a particular Allowed Claim within a particular time, the Distribution Trustee shall have the authority to select Distribution Dates that, in the judgment of the Distribution Trustee, provide holders of Allowed Claims with payments as quickly as reasonably practicable while limiting the costs incurred by the distribution process; provided, however, that, unless the Oversight Committee directs otherwise, the first Distribution Date after the Effective Date must occur prior to December 31, 2010 and a Distribution Date must occur at least once every twelve months thereafter, if any amounts are available for distribution on such date.  Upon the selection of a Distribution Date by the Distribution Trustee, the Distribution Trustee may file a notice of such Distribution Date with the Bankruptcy Court that provides information regarding the distribution to be made.  If applicable, distributions also shall be made to MD Investors on the Distribution Dates.

**I.      Calculation of Amounts to Be Distributed to Holders of Class 3 Claims and Class 4 Claims**

1.      Reserve for Certain Claims Senior to Class 3 Claims and Class 4 Claims

Prior to any distribution to holders of Allowed Class 3 Claims or Allowed Class 4 Claims, the Distribution Trustee shall estimate the amount of Net Recovery Action Asset Cash and Net Other Asset Cash that will remain after payment of all Distribution Trust Expenses and the resolution and payment of all Administrative Claims, Cure Amount Claims, Priority Tax Claims, Priority Claims in Class 1 and Secured Claims in Class 2.  Such estimations shall utilize assumptions that the Distribution Trustee will be unsuccessful in litigation with claimants with respect to any issue that is being reasonably contested.  Such estimations shall also assume that any unresolved Recovery Actions shall result in no recovery for the Debtors' Estates and that remaining non-Cash assets shall produce no recovery for the Estates.  Only if, after applying such assumptions, the estimated Net Recovery Action Asset Cash and Net Other Asset Cash is greater than zero shall the Distribution Trustee be permitted to make any distributions to holders of Allowed Class 3 Claims or Allowed Class 4 Claims.

2.      Allowed Class 3 Claims and Allowed Class 4 Claims

On each Distribution Date, each holder of an Allowed Claim in Class 3 or Class 4 will receive a distribution of any Net Recovery Action Asset Cash and Net Other Asset Cash that has been determined to be available for distribution in accordance with Section V.I.1 such that each holder of an Allowed Claim is such classes has received, in the aggregate, its Pro Rata share of the amounts of Net Recovery Action Asset Cash and Net Other Asset Cash that are made available for distribution to such Claim holders under Sections II.B.3 and II.B.4.  All distributions shall be made pursuant to the terms and conditions of the Plan and the Distribution Trust Agreement, and shall be subject to the Debtors' or the Distribution Trustee's rights of setoff or deduction.

3.	De Minimis Distributions

On each Distribution Date prior to the Final Distribution Date, the Disbursing Agent shall not distribute cash to the holder of an Allowed Class 3 Claim or an Allowed Class 4 Claim if the amount of Cash to be distributed on account of such Claim is less than $25 in the aggregate.  Any Cash not distributed pursuant to this Section V.I.3 will be returned to the applicable Trust Account until the next Distribution Date.  On the Final Distribution Date, if the aggregate amount of distributions to be made to such claimant is $25 or greater, such distribution shall be made.  Otherwise, the amount shall be redistributed to other holders of Allowed Claims in such Class and such holder of an Allowed Claim will be forever barred from asserting its Claim for such distribution against the Distribution Trust or its property.

## J.	Other Provisions Applicable to Distributions in All Classes

1.	Postpetition Interest

No interest shall accrue on any Claims on and after the Effective Date.

2.	Compliance with Tax Requirements

a.	Each Disbursing Agent will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements.  The Distribution Trustee and any Disbursing Agent will be authorized to take any actions that it determines, in its reasonable discretion, to be necessary or appropriate to comply with such withholding and reporting requirements.

b.	Notwithstanding any other provision of the Plan or the Distribution Trust Agreement, each Person receiving or deemed to receive a distribution pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax imposed on such Person on account of such distribution.

3.	Allocation of Distributions

All distributions to a holder of an Allowed Claim that has components of principal and interest will be deemed to apply first to the principal amount of such Claim until such principal amount is paid in full, and then the remaining portion of such distributions, if any, will be deemed to apply to any applicable accrued interest included in such Claim to the extent interest is payable under this Plan.

## K.	Distribution Record Date

1.	As of the close of business on the Distribution Record Date, the transfer registers for the Prepetition Notes will be closed.  The applicable Disbursing Agent (including any indenture trustee and the DTC) will have no obligation to recognize the transfer or sale of any Prepetition Notes that occurs after the close of business on the Distribution Record Date and will be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.

2.	Transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 for which a notice of transfer has been Filed on or prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.  No transfers Filed with the Bankruptcy Court after the Distribution Record Date shall be recognized by the Distribution Trustee or any Disbursing Agent.

3.	The Distribution Trustee shall have the authority, but no obligation, to recognize transfers of Claim made after the deadlines set forth in Sections V.K.1 and V.K.2 above in its sole and absolute discretion.

### L.    Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to the Plan will be in U.S. currency by checks drawn on a domestic bank selected by the Distribution Trustee or, at the option of the Distribution Trustee, by wire transfer, electronic funds or ACH from a domestic bank; provided, however, that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Distribution Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### M.    Surrender of Canceled Instruments or Securities

The Distribution Trustee shall determine, in its sole discretion, if any requirement for surrendering canceled instruments or securities shall be applicable to the holders of Prepetition Notes or Customer Notes and, if so determined, shall File such requirement in the Bankruptcy Court and advise all known holders of Prepetition Notes or Customer Notes of such requirements and how they may comply with such requirements.  Absent such a Filing, holders of Prepetition Notes or Customer Notes need not surrender their canceled instruments in order to be entitled to distributions under the Plan.

### N.    Setoffs

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disbursing Agents or a Third Party Disbursing Agent, as instructed by the Distribution Trustee pursuant to section 558 of the Bankruptcy Code or applicable nonbankruptcy law, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor or the Distribution Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor or the Distribution Trustee of any claims, rights and causes of action that the Debtor or Debtors or the Distribution Trustee may possess against such a Claim holder, which are expressly preserved under section III.G.1.


## ARTICLE VI.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Treatment of Disputed Claims

#### 1.    Tort Claims

Each Tort Claim will remain a Disputed Claim until it becomes an Allowed Claim.  The amount of a Tort Claim that is not otherwise settled and resolved by a Stipulation of Amount and Nature of Claim shall be determined and liquidated, in the discretion of the Distribution Trustee in either (a) the administrative or judicial tribunal of appropriate jurisdiction or (b) the United States District Court for the Southern District of New York. The Distribution Trustee shall provide written notice of its selection of the appropriate forum promptly after the Effective Date.  Such judicial tribunal shall determine the amount of the Tort Claim, but shall not enter or enforce a judgment against the Debtors, their Estates or the Distribution Trust, as all distributions on account of Tort Claims resolved in accordance with this Section VI.A.1 shall be subject to and made in accordance with the Plan.  All claims, demands, rights, defenses and causes of action that the Debtors may have against any Person in connection with or arising out of any Tort Claim are expressly retained and preserved.

#### 2.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.  In lieu of distributions under the Plan to holders of Disputed Claims on the Effective Date, the Distribution Trustee shall, in accordance with the Distribution

Trust Agreement, establish appropriate disputed claims reserves for all Disputed Claims, with such reserves held in the applicable Trust Accounts.

**B.      Objections to Claims**

1.      **Authority to Prosecute**

The Distribution Trustee may object to any Claims it believes warrant the Filing of an objection prior to the Claims Objection Bar Date.  After the Effective Date, only the Distribution Trustee will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.  After the Effective Date, the Distribution Trustee may settle or compromise any Disputed Claim or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

2.      **Pending Objections**

To the extent that the Debtors have filed objections to Claims that remain pending as of the Effective Date, the Distribution Trustee shall be substituted as the objecting party without further action of the parties or order of the Court.

3.      **Application of Bankruptcy Rules**

To facilitate the efficient resolution of Disputed Claims, the Distribution Trustee shall, notwithstanding Bankruptcy Rule 3007(c), be permitted to file omnibus objections to claims in accordance with the order of the Bankruptcy Court dated October 30, 2009.

4.      **Authority to Amend Schedules**

The Debtors and the Distribution Trustee, as applicable, will have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules (if no proof of claim is timely filed in response thereto) without approval of the Bankruptcy Court.  If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors or the Distribution Trustee will provide the holder of such Claim with notice of such amendment and such parties will have 30 days to File an objection to such amendment in the Bankruptcy Court.

5.      **Request for Extension of Claims Objection Bar Date**

Upon motion to the Bankruptcy Court, the Distribution Trustee may request, and the Bankruptcy Court may grant, an extension to the Claims Objection Bar Date generally or with respect to a specific list of Claims. Any extension granted by the Bankruptcy Court shall not be considered to be a Plan modification under section 1127 of the Bankruptcy Code.

**C.      Distributions on Account of Disputed Class 4 Claims Once Allowed**

On each Distribution Date, the applicable Disbursing Agent will make all distributions on account of any Disputed Class 4 Claim that has become an Allowed Claim since the most recent Distribution Date.  The timing and amount of such distribution shall be determined in accordance with sections V.G, V.H and V.I above.

## ARTICLE VII.
## SUBSTANTIVE CONSOLIDATION

### A.        Substantive Consolidation of the Debtors

Pursuant to the Confirmation Order, the Bankruptcy Court will approve the substantive consolidation of the Debtors for all purposes, including for the purpose of implementing the Plan, for purposes of voting, for assessing whether Confirmation standards have been met, for calculating and making distributions under the Plan and for filing post-Confirmation reports and paying quarterly fees to the Office of the United States Trustee. Pursuant to such order, as of the Effective Date:  (A) all assets and liabilities of the Debtors will be deemed merged; (B) all guarantees by one Debtor of the obligations of any other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors will be deemed to be one obligation of the consolidated Debtors; (C) each and every Claim Filed or to be Filed in the Chapter 11 Case of any Debtors will be deemed Filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors, and the Debtors may file and the Bankruptcy Court will sustain objections to Claims for the same liability that are Filed against multiple Debtors; and (D) Intercompany Claims between Debtors will be eliminated and extinguished.  Such substantive consolidation will not affect (A) the legal and corporate structures of the Debtors, subject to the right of the Debtors to complete the Dissolution Transactions; (B) the vesting of assets in the Distribution Trust; (C) the right to distributions from any insurance policies or proceeds of such policies; or (D) the rights of the Debtors or the Distribution Trustee to contest alleged setoff or recoupment efforts by creditors on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and otherwise applicable law.

### B.        Order Granting Substantive Consolidation

This Plan will serve as a motion seeking entry of an order substantively consolidating the Debtors, as described and to the extent set forth in Section VII.A above.  Unless an objection to such substantive consolidation is made in writing by any creditor or claimant affected by the Plan, Filed with the Bankruptcy Court and served on the parties listed in Section X.F on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court.  In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.  Notwithstanding this provision, nothing herein shall affect the obligation of the substantively consolidated Debtors to (1) pay a single quarterly fee to the Office of the United States Trustee in accordance with 28 U.S.C. § 1930 based upon the consolidated disbursements made by the substantively consolidated Debtors or (2) seek the closing of their substantively consolidated Chapter 11 Case.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN; EFFECT OF CONFIRMATION

### A.        Conditions to Confirmation

The Bankruptcy Court will not be requested to enter the Confirmation Order, unless and until the following condition has been satisfied or duly waived pursuant to Section VIII.C:

1.        The Plan shall not have been materially amended, altered or modified from the Plan as Filed on _____, 2010, unless such material amendment, alteration or modification has been made in accordance with Section X.A.

2.        The obligation the Debtors to make payments of retiree benefits (as such term is defined in section 1114(a) of the Bankruptcy Code), to the extent that such obligations have not been assumed and assigned to a third party by a Final Order as of the Confirmation Hearing, shall have been terminated.

**B.**     **Conditions to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated unless and until the following conditions have been satisfied or duly waived pursuant to Section VIII.C:

1.     The Bankruptcy Court shall have entered the Confirmation Order.

2.     The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors to take all actions necessary or appropriate to implement the Plan, including completion of the Dissolution Transactions, the transfer of the assets of the Debtors to the Distribution Trust and the implementation and consummation of the contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

3.     The Distribution Trust Agreement shall be executed, the Distribution Trust shall be created and the Distribution Trustee shall have been appointed and accepted such appointment.

4.     The Trust Accounts shall be created.

5.     The Plan and all exhibits to the Plan shall have been Filed and shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section X.A.

**C.**     **Waiver of Conditions to Confirmation or the Effective Date**

All conditions to Confirmation and the conditions to the Effective Date set forth in Sections VIII.B.4 through VIII.B.6 above may be waived in whole or part at any time by the Debtors without an order of the Bankruptcy Court.

**D.**     **Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.C within 60 days of the entry of the Confirmation Order, then upon motion by the Debtors or any party in interest made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied or waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section VIII.D, then (1) the Plan will be null and void in all respects; and (2) the Distribution Trust shall be promptly dissolved.

**E.**     **Request for Waiver of Stay of Confirmation Order**

This Plan will serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed with the Bankruptcy Court and served on the parties listed in Section X.F on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.

**ARTICLE IX.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date to the full extent legally permissible, including jurisdiction to:

1.     Allow, disallow, estimate, determine, liquidate, reduce, classify, re–classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims or Interests;

2.     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

3.     Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

4.     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Distribution Trust Agreement;

5.     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor or Estate that may be pending on the Effective Date or brought thereafter;

6.     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Distribution Trust Agreement;

7.     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, including the Distribution Trust Agreement, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

8.     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

9.     Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

11.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.     Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

13.     Enter a final decree closing the Chapter 11 Cases;

14.     Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes; and

15.     Hear any other matter over which the Bankruptcy Court has jurisdiction under the provisions of the Bankruptcy Code and the Bankruptcy Rules.


# ARTICLE X.
## MISCELLANEOUS PROVISIONS

**A.      Modification of the Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before the Effective Date.

**B.      Revocation of the Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will:  (1) constitute a waiver or release of any claims by or against, or any Interests in, any Debtor; (2) prejudice in any manner the rights of any Debtor or any other party in interest; or (3) constitute an admission of any sort by any Debtor or any other party in interest.

**C.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.      Dissolution of Creditors' Committee**

On the Effective Date, the Creditors' Committee and any other official committees appointed in the Chapter 11 Cases will dissolve, and the members of the Creditors' Committee and their respective Professionals will cease to have any duty, obligation or role arising from or related to the Chapter 11 Cases.  The Professionals retained by the Creditors' Committee and the respective members thereof will not be entitled to assert any Fee Claim whatsoever for any services rendered or expenses incurred after the Effective Date in their capacity as professionals for the Creditors' Committee, except to the extent necessary to file, prepare and defend any fee application.

**E.      Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**F.      Service of Documents**

Any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the parties identified below must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

1.      **Counsel to the Debtors**

Richard H. Engman
JONES DAY
222 East 41st Street

New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

 - and -

Heather Lennox
Ryan T. Routh
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email:   hlennox@jonesday.com
         rrouth@jonesday.com


2.      **The Distribution Trustee**

Robert D. Katz, CTP, MBA, CPA
Managing Director
Executive Sounding Board Associates Inc.
2 Penn Center, 1500 JFK Blvd, Suite 1730
Philadelphia, PA 19102
Telephone: (215) 568-5788

3.      **Counsel to the Creditors' Committee**

Mark D. Silverschotz
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Email: MSilverschotz@ReedSmith.com

Kurt F. Gwynne
Mark W. Eckard
Reed Smith LLP
1201 Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
Email:    KGwynne@ReedSmith.com
          MEckard@ReedSmith.com


4.      **Counsel to the 2012 Indenture Trustee**

Tina N. Moss
Pryor Cashman LLP
7 Times Square
New York, New York 10036-6569
Telephone:  (212) 421-4100
Facsimile: (212) 798-6355
Email: tmoss@pryorcashman.com

5.      **Counsel to the 2013 Indenture Trustee**

        Lawrence P. Gottesman
        Bryan Cave LLP
        1290 Avenue of the Americas
        New York, New York 10104-3300
        Telephone: (212) 541-1193
        Facsimile: (212) 541-1493
        Email:  lawrence.gottesman@bryancave.com

6.      **Counsel to Asahi Tec Corporation**

        Evan Jones
        O'Melveny & Myers LLP
        400 South Hope Street
        Los Angeles, CA 90071
        Telephone: (213) 430-6000
        Facsimile: (213) 430-6407
        Email: ejones@omm.com

7.      **Counsel to RHJI**

        Thomas E. Dunn
        Richard Levin
        Cravath Swaine & Moore, LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10010
        Telephone: (212) 474-1000
        Facsimile: (212) 474-3700
        Email: tdunn@cravath.com
        Email: rlevin@cravath.com

Dated:  January 11, 2010

Respectfully submitted,

OLDCO M CORPORATION, on its own behalf and on behalf of each affiliate Debtor

Filed by:

  /s/Ryan T. Routh                                
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Richard H. Engman

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox
Ryan T. Routh

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

By:        /s/G. Larry Carroll                              
Name:   G. Larry Carroll
Title:     Chief Liquidating Officer

## DEBTORS IN THE CHAPTER 11 CASES
## EXHIBIT I.A.32

| Case No | Original Debtor Name | Revised Debtor Name |
|---------|----------------------|---------------------|
| 09-13432 | ER Acquisition Corp. | No Change |
| 09-13433 | GMTI Holding Company | No Change |
| 09-13434 | Halyard Aviation Services, Inc. | No Change |
| 09-13435 | MascoTech Saturn Holdings, Inc. | No Change |
| 09-13436 | MASG Disposition, Inc. | No Change |
| 09-13437 | MASX Energy Services Group, Inc. | No Change |
| 09-13411 | MD Products Corp. | No Change |
| 09-13425 | Metaldyne Asia, Inc. | Oldco M Asia, Inc. |
| 09-13414 | Metaldyne Company LLC | Oldco M Company LLC |
| 09-13412 | Metaldyne Corporation | Oldco M Corporation |
| 09-13426 | Metaldyne Driveline Co., LLC | Oldco M Driveline Co., LLC |
| 09-13418 | Metaldyne DuPage Die Casting Corporation | Oldco M DuPage Die Casting Corporation |
| 09-13413 | Metaldyne Engine Co., LLC | Oldco M Engine Co., LLC |
| 09-13427 | Metaldyne Europe, Inc. | Oldco M Europe, Inc. |
| 09-13441 | Metaldyne Intermediate Holdco, Inc. | Oldco M Intermediate Holdco, Inc. |
| 09-13415 | Metaldyne Lester Precision Die Casting, Inc. | Oldco M Lester Precision Die Casting, Inc. |
| 09-13420 | Metaldyne Light Metals Company, Inc. | Oldco M Light Metals Company, Inc. |
| 09-13419 | Metaldyne Machining and Assembly Company, Inc. | Oldco M Machining and Assembly Company, Inc. |
| 09-13428 | Metaldyne Precision Forming - Fort Wayne, Inc. | Oldco M Precision Forming - Fort Wayne, Inc. |
| 09-13429 | Metaldyne Services, Inc. | Oldco M Services, Inc. |
| 09-13416 | Metaldyne Sintered Components, LLC | Oldco M Sintered Components, LLC |
| 09-13430 | Metaldyne Sintered Components of Indiana, Inc. | Oldco M Sintered Components of Indiana, Inc. |

| 09-13421 | Metaldyne Sintered Components St. Marys, Inc. | Oldco M Sintered Components St. Marys, Inc. |
|----------|-----------------------------------------------|---------------------------------------------|
| 09-13417 | Metaldyne Tubular Products, Inc. | Oldco M Tubular Products, Inc. |
| 09-13431 | Metaldyne U.S. Holding Co. | Oldco M U.S. Holding Co. |
| 09-13422 | NC-M Chassis Systems, LLC | No Change |
| 09-13438 | Precision Headed Products, Inc. | No Change |
| 09-13423 | Punchcraft Company | No Change |
| 09-13439 | Stahl International, Inc. | No Change |
| 09-13440 | W.C. McCurdy Co. | No Change |
| 09-13424 | Windfall Specialty Powders, Inc. | No Change |