## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

|  |  |
|---|---|
| **In re** | : **Chapter 11 Case No.** |
|  | : |
| **Metaldyne Corporation, et al.,** | : **09-13412 (MG)** |
|  | : |
| **Debtors.** | : **(Jointly Administered** |

---------------------------------------------------------x

## SECOND AND FINAL FEE APPLICATION OF LAZARD FRÈRES & CO. LLC, DEBTORS' INVESTMENT BANKER FOR ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSE INCURRED FOR THE PERIOD FROM MAY 27, 2009 THROUGH OCTOBER 16, 2009

| | |
|---|---|
| Name of Applicant: | **Lazard Frères & Co. LLC** |
| Authorized to Provide Professional Services to: | **Debtors and Debtors-in-Possession** |
| Date of Retention: | **June 22, 2009 *nunc pro tunc* May 27, 2009** |
| Period for which compensation and/or reimbursement is sought: | **May 27, 2009 through October 16, 2009** |
| Amount of Compensation Requested: | **$3,375,806.77** |
| Amount of Expenses Reimbursement Requested: | **$45,606.88** |
| Less: Amount Paid | ($3,269,569.73) |
| Net Amount of Compensation Requested: | **$151,843.92** |

This is a(n):  _____ monthly  _____ interim  __X__ final application

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **Metaldyne Corporation, et al.,** | : | **09-13412 (MG)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered** |

-------------------------------------------------------x

## SECOND AND FINAL FEE APPLICATION OF LAZARD FRÈRES & CO. LLC, DEBTORS' INVESTMENT BANKER FOR ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSE INCURRED FOR THE PERIOD FROM MAY 27, 2009 THROUGH OCTOBER 16, 2009

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lazard Frères & Co. LLC, ("Lazard"), Investment Banker to Metaldyne Corporation ("Metaldyne") and its affiliated debtors (collectively the "Debtors"), hereby submits its Second and Final Fee Application (the "Interim Application") pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code) for an allowance of compensation for professional services rendered to the Debtors and for reimbursement of actual and necessary expenses incurred in connection with such services from May 27, 2009 through and including October 16, 2009 (the "Compensation Period") as set forth in their engagement letter (the "Engagement Letter"), attached hereto as **Exhibit A**.

## BACKGROUND

1.   On May 27, 2009 (the "Petition Date"), the Debtors commenced a case under chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to sections 105(a) and 331 of chapter 11 of title 11 of the United States the Bankruptcy Code.

2.    This Application is submitted pursuant to the terms of the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members dated June 23, 2009 (the "Administrative Order"). Pursuant to the Administrative Fee Order, Lazard is seeking (i) the final allowance of $701,613.55 for Monthly Fees[1] during the Compensation Period, plus (ii) $2,674,193.22[2], for its net Restructuring Fee and (iii) reimbursement of $45,606.88 for expenses relating to services rendered on behalf of the Debtors during the Compensation Period.

3.    On June 22, 2009, this Court entered certain Order Pursuant to sections 327 and 328(a) of title 11 of the United States Code, 11 U.S.C §§ 101-1532 (as amended the "Bankruptcy Code") and rule 2014(a) the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules') and rule 2014-1 of the Local Bankruptcy Rules of the Southern District of New York (the "Local Rules") authorizing the retention and employment of Lazard Freres & Co. LLC as Investment Bankers for the Debtors *nunc pro tunc* to May 27, 2009 (the "Retention Order"), attached hereto as **Exhibit B**.

4.    All services for which Lazard requests compensation were performed for or on behalf of the Debtor.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.
2 On October 20, 2009 Lazard received a Sale Transaction Fee pursuant to Paragraph 7 of the Retention Order provides that, "in accordance with footnote 5 in the Interim DIP Order, the full amount of any Sale Transaction Fee or Minority Sale Transaction Fee will be paid from the gross proceeds of any such sales as a cost of any such sale before net proceeds are made available for distribution to secured creditors."

## COMPENSATION REQUEST

5. Lazard seeks allowance of compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $3,375,806.77. Lazard expended a total of approximately 1,407.3 hours for which compensation is requested.

6. For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a summary setting forth the name of each professional for whose work on these reorganization cases compensation is sought.

7. In addition, Lazard is seeking reimbursement of expenses incurred in connection with the rendition of services rendered during the Compensation Period in the aggregate amount of $45,606.88 (the "Expenses").

8. Prior Monthly Applications for the Compensation Period

| Date Filed | Period Covered | Requested | | Amounts Paid | | Net Requested |
|---|---|---|---|---|---|---|
| | | **Fees** | **Expenses** | **Fees** | **Expenses** | |
| 09/28/09 | 05/27/09 - 06/30/09 | $174,193.55 | $954.46 | $174,193.55 | $954.46 | $0.00 |
| 09/30/09 | 07/01/09 - 07/31/09 | 150,000.00 | 3,138.56 | 150,000.00 | 3,138.56 | 0.00 |
| 10/07/09 | 08/01/09 - 08/31/09 | 150,000.00 | 3,379.94 | 150,000.00 | 3,379.94 | 0.00 |
| 10/20/09 | 09/01/09 - 09/30/09 | 150,000.00 | 11,798.73 | 75,000.00 | 0.00 | 86,798.73 |
| TBD | 10/01/09 - 10/16/09 | 77,420.00 | 26,335.19 | 38,710.00 | 0.00 | 65,045.19 |
| TBD | Restructuring Fee | 2,674,193.22[3] | 0.00 | 2,674,193.22 | 0.00 | 0.00 |
| **TOTAL** | | **$3,375,806.77** | **$45,606.88** | **$3,262,096.77** | **$7,472.96** | **$151,843.92** |

---

[3] Amount reflects Lazard's $3,250,000 Gross Restructuring Fee less applicable credits totaling $575,806.78 as detailed in Exhibit E attached hereto.

## SUMMARY OF SERVICES

9.    During the Compensation Period, the Debtors relied heavily on the experience and expertise of Lazard's professionals in dealing with matters described in Paragraph 9.   As a result, Lazard's highly skilled restructuring professionals devoted significant time and effort to perform properly and expeditiously the required professional services.

10.    A summary of some of the services rendered by Lazard during the Compensation Period are as follows:

a)  *Assistance with General Bankruptcy:* Lazard professionals have participated on a daily basis in planning sessions and other periodic meetings with the Debtors and their legal counsel concerning process and issues related to the bankruptcy. Lazard professionals also worked with the Debtors to prepare court filings and provide testimony on several occasions relating to the sale processes and a variety of other matters.

b)  *Review of Business Plan:* Lazard professionals assisted the Debtors' management in preparing various presentations and analyses related to the financial projections, business plan and cash flow forecasts and coordinated various parties-in-interest due diligence efforts with respect to these projections.

c)  *Solicitation of and Assistance in Procuring DIP Financing:* Leading up to the Debtors' bankruptcy filing, Lazard professionals contacted a broad range of potential lenders on the Debtors' behalf to solicit DIP financing proposals.  Lazard professionals subsequently assisted the Debtors in structuring and negotiating the terms of the DIP financing and in getting the DIP financing approved by the court.   Lazard professionals participated in calls with the DIP lenders and assisted in the preparation of reporting information as required by the DIP financing.

d)  *Preparation for and Participation in Meetings with Creditors:* Lazard professionals prepared, reviewed, advised and assisted in the preparation of presentation materials for the Debtors' creditor constituents.  In addition, Lazard professionals engaged in regular conversations with many of the Debtors' creditors and their advisors, including the advisors to certain customers.  Multiple meetings were

conducted between the Lazard professionals and the Debtors' creditors and their advisors.

e) *Recovery Analysis:* Lazard professionals worked with the Debtors to analyze the distribution of proceeds and potential recoveries associated with the Debtors' sale processes. In addition, Lazard professionals coordinated various parties-in-interest due diligence efforts with respect to this analysis and facilitated multiple discussions with each major creditor constituency. Due to the complexity of the capital structure and issues related to the cross-collateralization of the secured debt, many iterations of the analysis were performed based on the discussions with Debtors' counsel and creditor and customer advisors.

f) *M&A Process:* Lazard professionals conducted multiple M&A processes for the Debtors that included the preparation of marketing materials, selecting and contacting potential buyers, multiple rounds of bidding, detailed due diligence and site visits as well as negotiations with potential acquirers. These processes required Lazard professionals to respond to a host of inquiries from various potential buyers and creditors, to facilitate due diligence processes on behalf of numerous interested parties, and to assist in the negotiation of multiple purchase agreements with the stalking horse bidders. During the month of August 2009, Lazard assisted in conducting multiple auctions, including the final auction to sell substantially all of the Debtors' assets to MD Investors Corporation.

g) *Support to the Board of Directors and the Special Committee:* Lazard professionals provided advice to the Debtors' Special Committee and prepared numerous presentations to the Debtors' Board of Directors and Special Committee as they considered M&A alternatives prior to and during the pendency of the case. Lazard professionals also assisted in negotiating transaction terms and documentation, and in analyzing the consideration and terms provided for in the proposals received from prospective acquirers for the Special Committee and/or Board of Directors' review.

## ACTUAL AND NECESSAY DISBURSEMENTS OF LAZARD

11. As set forth on **Exhibit D** annexed hereto, Lazard has disbursed $45,606.88 as expenses incurred in providing professional services during the Compensation Period. Lazard has maintained detailed records of actual and necessary expenses incurred during the Compensation Period. With respect to expenses, it should be noted that Lazard has absorbed certain expenses customarily charged by other

professionals in bankruptcy cases. For example, Lazard does not allocate office telephonic charges by client and thus these costs are absorbed by Lazard in its overhead and not charged to the Debtors' estate. Lazard respectfully submits that the expenses for which it seeks allowance during the Compensation Period are necessary and reasonable both in scope and amount.

## CONCLUSION

12.    It is respectfully submitted that the amount requested by Lazard is fair and reasonable given (a) the complexity of the issues presented, (b) the time and labor required, (c) the skill necessary to perform the financial advisory services, (d) the preclusion of other employment, and (e) the customary fees charged to clients in bankruptcy and non-bankruptcy situations.


WHEREFORE Lazard respectfully requests (i) final allowance of compensation for professional services rendered during the Compensation Period in the amount of $3,375,806.77; (ii) authorization of reimbursement for actual and necessary expenses Lazard incurred during the Compensation Period in the amount of $45,606.88 and (iii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Lazard's right to seek additional compensation for services performed and expenses incurred to during the Compensation Period which were not processed at the time of this Application; and (iv) such other and further relief as is just

Dated: New York, New York
       May 31, 2010

Eric Mendelsohn
Managing Director
LAZARD FRÈRES & CO. LLC
30 Rockefeller Plaza
New York, New York 10020
(212) 632-6000
Investment Banker for the Debtors and
Debtors in Possession

# EXHIBIT A

Engagement Letter

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

As of February 1, 2009

Metaldyne Corporation
47659 Halyard Drive
Plymouth, MI 48170-2429

Attention:    Thomas Amato
              Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Metaldyne Corporation and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Financing and/or Sale Transaction (each as defined below) on the terms and conditions set forth herein. As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a portion of the Company's outstanding indebtedness, including bank debt, bond debt, and other on and off balance sheet indebtedness, trade claims, leases (both on and off balance sheet), litigation related claims and obligations, or other liabilities (collectively, the "Existing Obligations") that is achieved through and/or may involve, without limitation, a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets (which sale or disposition is completed as a means to effect a restructuring transaction), or other similar transaction or series of transactions. By signing this Agreement, we hereby accept our appointment as your investment banker under the terms hereof.

*Description of Services:*

1.      Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

(a)   Reviewing and analyzing the Company's business, operations and financial projections;

(b)   Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)   Assisting in the determination of a capital structure for the Company;

(d)   Assisting in the determination of a range of values for the Company on a going concern basis;

(e)   Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)   Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)   Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h)   Advising and assisting the Company in evaluating a potential Financing[1] transaction by the Company, and, subject to Lazard's agreement to so act (except with respect to a potential Financing transaction involving debtor-in-possession financing, pre-chapter 11 rescue financing and, if a chapter 11 case is filed, exit financing) and, if requested by Lazard to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i)   Assisting the Company in preparing documentation or presentations within our area of expertise that is required in connection with the Restructuring;

---

[1]   As used in this Agreement, the term "Financing" means any new public or private issuance, sale, or placement of equity, equity-linked or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code; provided, that the term "Financing" does not include any equity or debt offering solely between or among the Company and (i) its direct or indirect equityholders or (ii) its customers.

(j)     Subject to Lazard's agreement to so act, assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[2];

(k)     Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court; and

(m)     Providing the Company with other financial restructuring advice.

*Fees:*

2.     As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee of $150,000 per month (the "Monthly Fee"), payable upon execution of this Agreement and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10.  One-half of all Monthly Fees paid in respect of this engagement shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee, or Financing Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved by the Bankruptcy Court, if applicable.

(b)     A fee equal to $3.25 million, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; provided, further, that in the event that Lazard is paid a fee in

---

[2]  As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) any merger, consolidation, reorganization or other business combination pursuant to which the Company and a third party and/or all or a significant portion of their respective businesses, product lines or divisions are combined, or (b) the direct or indirect sale, transfer or other disposition of all or a significant portion of the capital stock (outstanding prior to commencement of chapter 11 cases), assets or other interests of the Company to a third party (other than a transaction solely involving the sale of the Company's Niles and Middleville facilities, preparations for which are already underway) by way of tender or exchange offer, option, negotiated purchase, leveraged buyout, minority investment or partnership, joint or collaborative venture or otherwise.

connection with a "pre-packaged" or "pre-arranged" plan and such plan is not consummated, Lazard shall return such fee to the Company.

(c)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities (outstanding prior to commencement of chapter 11 cases) of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee; provided, that, in the event of any such Sale Transaction that involves an affiliate of the Company as the buyer, the Sale Transaction Fee shall be equal to the Restructuring Fee.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto. One-half of any fee paid under this Section 2(c)(ii) shall be credited against any fees subsequently payable under Section 2(b) or Section 2(c)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction; provided, that no Sale Transaction Fee or Minority Sale Transaction Fee shall be payable with respect to a specific Sale Transaction if Lazard provides the Company with a written confirmation of its decision not to provide the Company with advice and assistance in connection with such Sale Transaction.

(d)    A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). One-half of any Financing Fee(s) paid shall be credited against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(e)    For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above; provided that if more than one fee is or could be payable pursuant to clause (b), (c) or (d) in connection with a single transaction, the highest of such fees shall be the only such fee paid to Lazard for such single transaction; and provided further that only one fee shall be payable pursuant to Section 2(b) (regardless of whether more than one Restructuring occurs).

(f)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, and after the receipt of reasonably detailed documentation thereof, the Company shall promptly reimburse Lazard for

all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) incurred by Lazard in connection with the services required by this engagement and (B) other reasonable fees and expenses, including expenses of counsel, if any, incurred by Lazard in connection with the services required by this engagement.

(g) On October 1, 2008, the parties hereto entered into an indemnification letter (the "Indemnification Letter"), which remains in full force and effect, shall also apply to Lazard's engagement hereunder, and shall be incorporated herein in its entirety;

(h) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Restructuring Fee, Sale Transaction Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder.

*Other:*

4.     No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Lazard.

5.     The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard reasonably may request in connection with this engagement (the "Information"). The Company represents and warrants to Lazard that, to the best of the Company's knowledge, (a) all of the foregoing information that has been made available to Lazard as of the date hereof other than the Projections (as defined below), when taken as a whole, is, and in the case of Information made available after the date hereof, when taken as a whole with all other Information previously furnished, will be accurate in all material respects at the time it is furnished and (b) all financial projections that have been made available to Lazard by the Company or any of its representatives in connection with the transactions contemplated hereby (the "Projections") have been or, in the case of Projections made available after the date hereof, will be prepared in good faith based upon assumptions believed by the Company to be reasonable at the time, it being understood that actual results may vary materially from such Projections. The Company also agrees to use its commercially reasonable efforts to keep Lazard advised of all developments materially affecting the Company or its financial position, to the extent of information available to the Company. In performing its services pursuant to this Agreement, including in connection with any valuation of the Company, Lazard shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors of the Company, to the Company or to management or shareholders with respect thereto.

6.     In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice (other than the financial advice contemplated hereby).

7.     It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8.     The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate Lazard's efforts on behalf of the Company during the period of Lazard's engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, Lazard will promptly inform the Company of such inquiry.

10. Lazard's engagement hereunder may be terminated by the Company or Lazard at any time by providing written notice and without liability or continuing obligation to the Company or Lazard, except that following such termination and any expiration of this Agreement (a) Lazard shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company (other than due to Lazard's bad faith or gross negligence) and any expiration of this Agreement, Lazard shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Restructuring, Financing, and/or Sale Transaction announced or for which a definitive agreement is executed during the period from the date hereof until nine months following such termination or expiration, as the case may be.

11. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring or other transaction. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent of Lazard, which consent shall not be unreasonably withheld; provided, that, in the event that disclosure of such information is required by applicable law, regulation or stock exchange requirement or by a court, governmental or regulatory agency, stock exchange or similar body, the Company may disclose such information only to the extent so required; provided, further, that the Company consults with Lazard prior to such disclosure, uses commercially reasonable efforts to minimize the information required to be disclosed and to ensure that the information is disclosed on a confidential basis, and discloses such information in an accurate and complete manner. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a

fiduciary relationship between Lazard and the Company or its Board of Directors or any other person or entity.

12.     Lazard agrees to keep confidential the existence and terms of this engagement and to use all non-public information provided to it by or on behalf of the Company hereunder solely for the purpose of providing the services which are the subject of this letter agreement and to treat all such information confidentially, provided that nothing herein shall prevent Lazard from disclosing any such information (a) with the Company's consent, (b) as required by applicable law or regulation, (c) pursuant to the order of any court or regulatory authority of competent jurisdiction, (d) to the extent that such information was or becomes publicly available other than by reason of disclosure by Lazard and its affiliates in violation of this Section 12 or was or becomes available to Lazard or its affiliates from a source which is not known by Lazard to be subject to a confidentiality obligation to the Company, or (e) to such of Lazard's employees, legal counsel, independent auditors and other experts or agents ("Representatives") as Lazard determines to have a need to know such information in connection with any services provided by Lazard or its affiliates to the Company and its affiliates.  Lazard will obtain the Company's consent before disclosing such information to potential counterparties.  Lazard accepts responsibility for compliance by its affiliates and Representatives with the provisions of this Section 12.  This Section 12 shall survive any termination or expiration of this Agreement for a period of two years from the date of such termination or expiration, as the case may be.

13.     In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any non-public information confidential in accordance with the provisions of Section 12 hereof relating to nonpublic information.  Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

14.     The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter.  You agree that the Company's obligations pursuant to this Agreement shall be joint and several.  This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.

15.     This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. Each of Lazard and the Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the

choice of forum provision is or has become unreasonable in any legal proceeding. Each of Lazard and the Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

16.     Metaldyne Corporation shall, upon Lazard's request, cause any controlled subsidiary of Metaldyne Corporation to execute this Agreement as of the date hereof.

17.     This Agreement amends and restates in its entirety the engagement letter between Lazard and the Company dated October 1, 2008 (the "Prior Agreement"). For the avoidance of any doubt, we shall remain entitled to any fees accrued, and to reimbursement of any expenses incurred, under the Prior Agreement as in effect prior to the date hereof.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
Jim Millstein
Managing Director

By: _____
Mark McMaster
Managing Director

Accepted and Agreed to as of the date first written above.

METALDYNE CORPORATION
on behalf of itself and its controlled subsidiaries

By: _____
Thomas Amato
Chief Executive Officer

## SCHEDULE I

Fees for Sale Transactions

The following table outlines the fee schedule for a Sale Transaction. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding fee percentage. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration ($ in millions) | Fee % |
|---|---|
| $0  - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all other property paid and payable (including amounts paid into escrow) in connection with the transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of a sale of assets, all indebtedness for borrowed money and other liabilities assumed by a third party.  Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of a sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable.  For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt

or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed directly or indirectly by a third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the transaction.

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. For any Financing, the total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt | 1.50% |
| Senior Debt | 3.00% |
| Subordinated Debt | 3.50% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |

# EXHIBIT B

Retention Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
```
|                                          | :    |                         |
| ---------------------------------------- | ---- | ----------------------- |
| In re                                    | :    | Chapter 11              |
|                                          | :    |                         |
| Metaldyne Corporation, *et al.,*         | :    | Case No. 09-13412 (MG)  |
|                                          | :    |                         |
| Debtors.                                 | :    | (Jointly Administered)  |
```
-----------------------------------------------------------:
```
|                                          | x    |                         |

### ORDER, PURSUANT TO SECTIONS 327 AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a) AND LOCAL BANKRUPTCY RULE 2014-1, AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY AND RETAIN LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKERS, *NUNC PRO TUNC* AS OF THE PETITION DATE

Upon the application (the "Application")[1] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for an order, pursuant to sections 327 and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the Debtors to employ and retain Lazard Frères & Co. LLC ("Lazard") as their investment banker effective *nunc pro tunc* to May 27, 2009 (the "Petition Date"), pursuant to the terms of the engagement letter between the Debtors and Lazard, dated as of February 1, 2009 (the "Engagement Letter"), and related indemnification agreement between the Debtors and Lazard, dated October 1, 2008 (the "Indemnification Letter" and, together with the Engagement Letter, the "Lazard Agreement"); and the Court having jurisdiction to consider the

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application or the Mendelsohn Declaration.

Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of

the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C § 1408 and 1409; and

the Court being satisfied that notice of the Application and opportunity for a hearing on the

Application was appropriate under the particular circumstances and that no other or further

notice need be provided; and the Court having reviewed the Application and determined that

the employment of Lazard by the Debtors is necessary and in the best interests of the Debtors'

estates, their creditors, and other parties in interest, and that the terms of the Lazard Agreement

are reasonable terms for purposes of section 328(a) of the Bankruptcy Code; and the Court

having considered the declaration of Eric Mendelsohn, a Managing Director of Lazard

(the "Mendelsohn Declaration") filed in support of the Application; and the Court being

satisfied that Lazard neither holds nor represents any interest adverse to the Debtors' estates

with respect to the matters upon which it is to be employed; and the Court having determined

that Lazard is a "disinterested person" as that term is defined in section 101(14) of the

Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in

the Application establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefore, it is hereby

       1.     ORDERED, that the Application is granted as set forth herein, nunc pro

tunc to the Petition Date; and it is further

       2.     ORDERED, that the Debtors are authorized, pursuant to sections 327 and

328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, to employ and

retain Lazard as their investment banker in accordance with the terms and conditions set forth in the Lazard Agreement, effective nunc pro tunc; and it is further

3. ORDERED, that all of Lazard's compensation set forth in the Lazard Agreement, including, without limitation, the Monthly Fee, the Restructuring Fee, the Sale Transaction Fee, the Minority Sale Transaction Fee and the Financing Fee (each as defined in the Lazard Agreement), is approved pursuant to section 328(a) of the Bankruptcy Code and Lazard shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Lazard Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court; and it is further

4. ORDERED, that Lazard shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code. Notwithstanding anything to the contrary set forth above, the United States Trustee retains all rights to object to Lazard's interim and final fee applications (including expense reimbursement) on all grounds including the reasonableness standard provided for in section 330 of the Bankruptcy Code; and it is further

5. ORDERED, that Lazard shall be excused from keeping time records for services rendered in one-tenth of an hour increments, and instead shall only be required to maintain time records in half hour increments; and it is further

6. ORDERED, that none of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law; and it is further

7. ORDERED that, in accordance with footnote 5 in the Interim DIP Order, the full amount of any Sale Transaction Fee or Minority Sale Transaction Fee will be paid from

the gross proceeds of any such sales as a cost of any such sale before net proceeds are made available for distribution to secured creditors; and it is further

8. ORDERED, that the terms of the Lazard Agreement are approved in all respects except as limited or modified herein; and it is further

9. ORDERED, that Section 11 of the Engagement Letter is hereby amended by deleting the portion of the last sentence thereof, starting with the words "nothing herein is intended . . . ." Notwithstanding any provision to the contrary in the Engagement Letter, Lazard is being engaged as and shall be deemed to be an independent contractor, it being understood that Lazard shall have no authority to bind, or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Debtors, nor shall Lazard have the authority to manage money or property of the Debtors.

10. ORDERED, that in the event Lazard seeks reimbursement for attorneys' fees pursuant to the terms of the Lazard Agreement, the invoices and supporting time records from such attorneys shall be included in Lazard's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code; and it is further

11. ORDERED, that the Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Lazard Agreement and will indemnify and hold harmless Lazard and its affiliates, and its and their respective directors, officers, members, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons"), pursuant to the Lazard

Agreement and, during the pendency of these chapter 11 cases, subject to the following conditions:

(a)　　All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Lazard Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Lazard Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;

(b)　　In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Lazard Agreement if the Debtors, their estates or the official committee of unsecured creditors assert a claim, to the extent that the Court determines by final order that such claim resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person; and

(c)　　In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Lazard Agreement, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

(d)　　The word "primarily" shall be stricken in all instances from the first paragraph of the Indemnification Letter; and

(e)　　The period at the end of the second sentence of the second paragraph of the Indemnification Letter shall be stricken and replaced with the following: ", except to the extent that any such claim for contribution from us relates to any loss, claim, damage, liability or expense that that is finally judicially determined to have resulted from any Indemnified Person's bad faith or gross negligence"; and it is further

12.     ORDERED, that the period at the end of Section 2(f) of the Engagement Letter is stricken and replaced with the following: "except to the extent that any such fees and expenses relate to (i) any loss, claim, damage, liability or expense for which any party shall or may seek indemnification, reimbursement or contribution pursuant to the terms of the Indemnification Letter or (ii) any loss, claim, damage, liability or expense that is finally judicially determined to have resulted from any Indemnified Person's bad faith or gross negligence."

13.     ORDERED, that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order; and it is further

14.     ORDERED, that to the extent this Order is inconsistent with the Lazard Agreement, this Order shall govern; and it is further

15.     ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  **June 22, 2009**
        New York, New York

_____**/s/Martin Glenn**_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## Summary of Hours Expended

# Metaldyne Corporation
## Lazard Frères & Co. LLC
### Summary of Services Rendered by Project

**May 27, 2009 - October 16, 2009**

| Project # | Project Description | Total |
|:---:|---|---:|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 368.8 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 121.3 |
| 3 | Preparation and/or Review of Court Filings | 55.5 |
| 4 | Court Testimony/Deposition and Preparation | 127.0 |
| 5 | Valuation Analysis | 2.0 |
| 6 | Capital Structure Review and Analysis | 109.0 |
| 7 | Merger & Acquisition Activity | 568.8 |
| 8 | Financing Including DIP and Exit Financing | 10.5 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 11.0 |
| 10 | Fee Application, Engagement | 32.5 |
| 11 | Employee Retention Program | 1.0 |
| **TOTAL** | | **1,407.3** |

### Summary of Services Rendered by Professional

| Name | Total |
|---|---:|
| Eric Mendelsohn, Managing Director | 252.5 |
| Michael Macakanja, Director | 501.5 |
| Neil Weinstein, Vice President | 75.0 |
| Jason Wooten, Associate | 393.0 |
| Alice Chong, Associate | 153.5 |
| David Adamse, Summer Associate | 31.8 |
| **TOTAL** | **1,407.3** |

# EXHIBIT D

# Summary of Expenses

## Metaldyne Corporation
## Lazard Frères & Co. LLC
### Summary of Services Rendered by Project

| Item | May-Jun | Jul | Aug | Sep | Oct | Total |
|------|--------:|----:|----:|----:|----:|------:|
| Car Services and Taxis | $648.90 | $352.18 | $1,220.35 | $569.15 | $212.50 | $3,003.08 |
| Courier/Shipping | 0.00 | 17.00 | 0.00 | 0.00 | 178.52 | 195.52 |
| Electronic Information Service | 0.00 | 31.43 | 15.76 | 0.00 | 285.88 | 333.07 |
| Employee Meals | 179.14 | 373.70 | 167.98 | 0.00 | 50.98 | 771.80 |
| Legal Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 174.45 | 174.45 |
| Legal Fees | 0.00 | 0.00 | 0.00 | 0.00 | 25,432.86 | 25,432.86 |
| Meals-Meetings/Travel | 10.54 | 93.93 | 51.10 | 39.00 | 0.00 | 194.57 |
| Telephone/Telex/Fax-Usage | 0.00 | 0.00 | 129.78 | 308.34 | 0.00 | 438.12 |
| Temporary Wages | 115.88 | 0.00 | 0.00 | 0.00 | 0.00 | 115.88 |
| Travel | 0.00 | 2,270.32 | 1,794.97 | 10,882.24 | 0.00 | 14,947.53 |
| **TOTAL** | **$954.46** | **$3,138.56** | **$3,379.94** | **$11,798.73** | **$26,335.19** | **$45,606.88** |

# EXHIBIT E

# Detailed Fee Calculation

# Metaldyne Fee Calculation

| Monthly Fee and Expenses | | | |
|---|---|---|---|
| | **Monthly Fee** | **Expenses** | **Total Invoice** |
| May-09 | $24,193.55 | $0.00 | $24,193.55 |
| Jun-09 | 150,000.00 | 954.46 | 150,954.46 |
| Jul-09 | 150,000.00 | 3,138.56 | 153,138.56 |
| Aug-09 | 150,000.00 | 3,379.94 | 153,379.94 |
| Sep-09 | 150,000.00 | 11,798.73 | 161,798.73 |
| Oct-09 | 77,420.00 | 26,335.19 | 103,755.19 |
| **Total** | **$701,613.55** | **$45,606.88** | **$747,220.43** |

| Restructuring Fee | | |
|---|---|---|
| Gross Restructuring Fee | | $3,250,000.00 |
| Credits from Monthly Fees | Gross | Credits |
| Feb-09 | $150,000.00 | (75,000.00) |
| Mar-09 | 150,000.00 | (75,000.00) |
| Apr-09 | 150,000.00 | (75,000.00) |
| May-09 | 24,193.55 | (12,096.77) |
| Jun-09 | 150,000.00 | (75,000.00) |
| Jul-09 | 150,000.00 | (75,000.00) |
| Aug-09 | 150,000.00 | (75,000.00) |
| Sep-09 | 150,000.00 | (75,000.00) |
| Oct-09 | 77,420.00 | (38,710.00) |
| Total Credits | | (575,806.77) |
| **Net Restructuring Fee** | | **$2,674,193.22** |

| Amounts Paid at Close | |
|---|---|
| Gross Restructuring Fee | $3,250,000.00 |
| Credits from Monthlies (Feb-09 to Apr-09) (a) | (225,000.00) |
| **Amount to be Paid on Close** | **$3,025,000.00** |

(a) Reflects credit for monthly fee amounts received as of October 9.